**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

---

|  |  |
|---|---|
| MARY MORGAN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 3:12-cv-00373-JAG |
| v. | ) |
| | ) |
| RICHMOND SCHOOL OF HEALTH AND | ) |
| TECHNOLOGY, INC., | ) |
| | ) |
| Defendant. | ) |

---

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF
PROPOSED CLASS ACTION SETTLEMENT, PROVISIONAL CERTIFICATION OF
CLASS AND APPROVAL OF NOTICE**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ...........................................................................................................1

BACKGROUND .............................................................................................................2

    I.     THE LITIGATION BETWEEN PLAINTIFFS AND RSHT.................................2

    II.    THE INSURANCE COVERAGE LITIGATION BETWEEN
         RSHT AND NATIONWIDE.................................................................................3

    III.   THE MEDIATION AND RESULTING SETTLEMENT AGREEMENT..............4

         A.  Monetary Terms of Settlement ...............................................................6

         B.  Non-Monetary Terms of Settlement .......................................................7

ARGUMENT ..................................................................................................................8

    I.     PRELIMINARY APPROVAL SHOULD BE GRANTED
         BECAUSE THE SETTLEMENT AGREEMENT IS IN THE
         RANGE OF POSSIBLE APPROVAL ................................................................8

         A.  The Fairness Factors ...............................................................................9

              1.  Posture of the Case.......................................................................9

              2.  Extent of Discovery ...................................................................10

              3.  Circumstances Surrounding Negotiations..................................11

              4.  Experience of Counsel ...............................................................12

          B.  The Adequacy Factors ..........................................................................12

              1.  Relative Strength of Plaintiffs' Case on the Merits and
                  Difficulties of Proof or Strong Defenses Likely at Trial .......13

              2.  Duration and Expense of Additional Litigation....................14

              3.  Solvency of Defendant and Likelihood of Recovery
                    on a Litigated Judgment.........................................................15

              4.  Degree of Opposition................................................................16

i

    C. Reasonableness ................................................................................16

        1. The Size of the Recovery is Reasonable ..................................16

        2. The Incentive Awards for the Named Plaintiffs are Reasonable ..........17

        3. The Incentive Awards for the Declarants are Reasonable ....................18

        4. The Attorneys' Fees and Costs are Reasonable ....................................18

II.    A SETTLEMENT CLASS SHOULD BE PROVISIONALLY
      CERTIFIED UNDER RULE 23(b)(2) AND RULE 23(b)(3) ...............................19

    A. Rule 23(a) Is Satisfied ....................................................................20

        1. Rule 23(a)(1) – Numerosity ..................................................20

        2. Rule 23(a)(2) – Commonality ................................................20

        3. Rule 23(a)(3) – Typicality ..................................................... 26

        4. Rule 23(a)(4) – Adequacy of Representation ........................... 28

    B. Rule 23(b)(2) Is Satisfied ..................................................................29

    C. Rule 23(b)(3) Is Satisfied ..................................................................29

    D. Plaintiffs' Counsel Satisfy the Requirements of Rule 23(g) ............................31

III.   THE PROPOSED CLASS NOTICE SHOULD BE
      DISSEMINATED TO THE CLASS ....................................................................31

IV.   PROPOSED SCHEDULE RELATED TO FINAL APPROVAL..........................33

CONCLUSION....................................................................................................34

# TABLE OF AUTHORITIES

Cases

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...........................................................28, 30

*Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 (PKC),
    2011 WL 2207586 (S.D.N.Y. June 2, 2011) ............................................................32, 33

*Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-cv-00400-BR,
    2009 WL 2208131 (E.D.N.C. July 22, 2009) .......................................................9, 11, 19

*Benway v. Res. Real Estate Servs., LLC*, No. WMN-05-3250,
    2011 WL 1045597 (D. Md. Mar. 16, 2011)...................................................................8, 9

*Bicking v. Mitchell Rubenstein & Assoc. P.C.*, No. 3:11-cv-78-HEH,
    2011 WL 5325674 (E.D. Va. Nov. 3, 2011) ...................................................................15

*Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538 (E.D. Va. 2000) .................................... *passim*

*Chisholm v. United States Postal Service*, 665 F.2d 482 (4th Cir. 1981) .....................................21

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ..........................................16, 24

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006) .......................................21, 26, 28

*Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466 (W.D. Va. 2011)....................................19

*Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443 (E.D. Va. 2009) .................................24

*Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997) ...................................................................20

*Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201 (E.D. Va. 2003) ..........................20, 21, 26

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. cv-08-1365,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...............................................................17

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) ........................................28, 29

*Helmick v. Columbia Gas Transmission*, No. 2:07-cv-00743,
    2010 WL 2671506 (S.D.W.V. July 1, 2010) .................................................................17

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    855 F. Supp. 825 (E.D.N.C. 1994).........................................................................8, 9, 10

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001).......................................................18

*In re A.H. Robins Co., Inc.*, 880 F.2d 709 (4th Cir. 1989) ............................................................ 20

*In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534 (E.D. Va. 2006) .................................. *passim*

*In re Jiffy Lube Secs. Litig.*, 927 F.2d 155 (4th Cir. 1991) .................................................. 9, 10, 13

*In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654 (E.D. Va. 2001) ........................ *passim*

*In re Red Hat Inc. Sec. Litig.*, No. 5:04-cv-473-BR(3),
    2010 WL 2710517 (E.D.N.C. June 11, 2010) ................................................................. 10

*In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221 (S.D.W.V. 2005) ............................................ 32

*In re The Mills Corp. Secs. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009) .................................... *passim*

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) .................................................................... 21

*Minter v. Wells Fargo Bank, N.A.*, 283 F.R.D. 268 (D. Md. 2012) ........................................ 32, 33

*Muhammad v. Nat'l City Mortg.*, No. 2:07-0423,
    2008 WL 5377783 (S.D.W.V. Dec. 19, 2008) ................................................................. 19

*Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438 (E.D. Va. 2004) ................................................ 30

*Strang v. JHM Mortg. Sec. Ltd. P'Ship*, 890 F. Supp. 499 (E.D. Va. 1995) ................................ 11

*Sullivan v. DB Inv., Inc.*, 667 F.3d 273 (3d Cir. 2011) ................................................................ 29

*Temp. Servs., Inc. v. Am. Int'l Group, Inc.*, 3:08-CV-00271-JFA,
    2012 WL 4061537 (D.S.C. Sept. 14, 2012) ............................................................... 18, 19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ........................................................ 20, 29

Statutes and Rules

Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq.* ............................................................ 2

Fed. R. Civ. P. 23 ..................................................................................................................... *passim*

Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq.* ......................................... 2

Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq.* ...................................... 2

Other Authorities

*Manual for Complex Litig.* (Fourth) (Federal Judicial Center 2004)..............................................8

# INTRODUCTION

Plaintiffs Mary Morgan, Amanda Smith, Sade Battle, La-Deva Dabney, Kyra Franklin, Ashley Thomas, Loretta Towns, and Tammara Herbert ("Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for an order pursuant to Federal Rule of Civil Procedure 23: (1) preliminarily approving the proposed Settlement Agreement, a copy of which is attached hereto as Exhibit 1; (2) conditionally certifying a settlement class; and (3) approving the form and manner of giving notice of the settlement to members of the proposed settlement class.

After vigorous advocacy and negotiation, Plaintiffs, Defendant Richmond School of Health and Technology, Inc. ("RSHT"), and RSHT's insurer Nationwide Mutual Insurance Co. ("Nationwide") agreed on a settlement of the claims in this case and in the related insurance coverage declaratory judgment action pending before Judge Hudson. The proposed Settlement Agreement achieves both monetary and injunctive relief for approximately 3,938 former and current RSHT students. The parties negotiated the Settlement Agreement at arm's length under the auspices of mediator John Douglass, believe it achieves a fair and adequate resolution of Plaintiffs' claims, and that it merits preliminary approval by this Court.

# BACKGROUND

## I.    THE LITIGATION BETWEEN PLAINTIFFS AND RSHT

RSHT is a for-profit vocational college in the Richmond area. This litigation was brought by eight former RSHT students on behalf of themselves and all others similarly situated. Plaintiffs alleged, *inter alia*, that RSHT induced enrollment by making material misrepresentations about the quality and characteristics of the education provided, did not satisfy its contractual obligations, and discriminated on the basis of race by targeting African-Americans

and for enrollment. Plaintiffs asserted claims for fraudulent inducement to contract; breach of contract based on the implied covenant of good faith and fair dealing; violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq*. ("VCPA"); violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq*.; and violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq*.

Defendant has at all times denied these allegations.

The case was originally filed in the United States District Court for the District of Columbia on June 8, 2011. RSHT filed a Motion to Dismiss or Transfer. The motion was granted with respect to improper venue (based on lack of personal jurisdiction over RSHT) and transferred to this Court.

On June 15, 2012, RSHT filed an Answer denying all material allegations in the Civil Action and interposing affirmative defenses. That same day, RSHT also filed a Motion to Dismiss the two federal claims under Fed. R. Civ. P. 12(b). The Motion to Dismiss was fully briefed. In light of the Settlement, it was denied as moot on February 28, 2013, with leave for Defendant to refile it if the Settlement is not approved by the Court.

RSHT filed a Motion for Judgment on the Pleadings with respect to the three state law claims on August 17, 2012. That motion was also fully briefed but denied as moot on February 28, 2013, with leave for Defendant to refile if the Settlement is not approved by the Court.

As a result of informal investigation by Plaintiffs, without the benefit of discovery, Plaintiffs obtained sworn declarations regarding the merits of their claims from 75 former and current students who are members of the proposed class (but are not named Plaintiffs), and from twelve former RSHT employees. Forty-eight of these declarations were attached to the Second

Amended Complaint, and all were provided to RSHT. Plaintiffs interviewed over 200 witnesses and reviewed over 4,500 pages of documents as part of their informal investigation.

On June 28, 2012, the Court entered an Initial Pretrial Order providing for discovery regarding class certification issues. Pursuant to that Order, the parties took eleven depositions: a Rule 30(b)(6) deposition of RSHT, depositions of five of the Plaintiffs, and depositions of five of the student declarants. RSHT produced over 20,000 pages of documents, as well as audio and video recordings, and Plaintiffs produced over 2,000 pages as part of the class certification discovery. RSHT produced over 8,500 additional pages and additional audio and visual recordings as part of its Rule 26 initial disclosures. Plaintiffs also answered RSHT's class certification interrogatories.

Plaintiffs were prepared to file their class certification motion on October 1, 2012, but all deadlines were stayed that day pursuant to the parties' joint motion because they and Nationwide reached an agreement in principle to settle the two cases on September 28, 2012.

## II.     THE INSURANCE COVERAGE LITIGATION BETWEEN
## RSHT AND NATIONWIDE

RSHT purchased comprehensive general liability ("CGL") and umbrella insurance policies from Nationwide with combined limits of $24 million. RSHT tendered a claim to Nationwide after Plaintiffs filed their initial Complaint, and Nationwide has provided a defense to RSHT under a reservation of rights.

Nationwide filed a declaratory judgment action against RSHT in this Court on November 21, 2011. *See Nationwide Mut. Ins. Co. v. Richmond Sch. of Health & Tech., Inc.*, No. 3:11-cv-00768 (E.D. Va.). Nationwide requested a declaration that its policies do not provide any coverage to RSHT for any the claims asserted herein by Plaintiffs. Specifically, Nationwide asserted that its policies do not apply for ten reasons: (1) the claims do not constitute

"occurrences," (2) the claims are not for "bodily injury" or "property damage," (3) the claims are not for "personal and advertising injury," (4) the policies exclude coverage for breach of contract claims, (5) the policies exclude coverage for expected or intended injury, (6) the policies exclude coverage for claims based on the knowing violation of the rights of another, (7) the policies exclude coverage for claims based on the distribution of material or information in violation of statute, ordinance or regulation, (8) the policies exclude coverage for claims based on the knowingly false publication of material, (9) late notice, and (10) the events at issue occurred outside the policy period. Not all of the reasons set forth by Nationwide apply to every policy or underlying cause of action, but if just some of these reasons were accepted, it would eliminate all coverage for all claims under all policies. Summary judgment briefs were due to be filed in November, but the case has been stayed as a result of the successful mediation described in the following section. *See id.* at Docket Nos. 20 & 21 (Nov. 26 & 27, 2012).

RSHT provided copies of the Nationwide polices to Plaintiffs' counsel over a year ago.

RSHT stated in its initial disclosures that it does not have any potentially applicable insurance coverage apart from the Nationwide policies.

## III.     THE MEDIATION AND RESULTING SETTLEMENT AGREEMENT

Plaintiffs' counsel, RSHT's corporate and litigation counsel, RSHT's President, and RSHT's Chief Executive Officer met in Richmond on August 23, 2011, to discuss a possible negotiated settlement of this matter. They were not successful, and RSHT filed the Motion to Dismiss or Transfer noted above soon thereafter.

On June 28, 2012, the Court ordered Plaintiffs and RSHT to engage in mediation prior to the deadline for the filing of Plaintiffs' class certification motion. This Order was based on the understanding that Nationwide would also participate.

The parties agreed to engage John Douglass as mediator through The McCammon Group. Professor Douglass is an experienced mediator and litigator and formerly served as Dean of the T.C. Williams School of Law at the University of Richmond, where he currently teaches. An all-day mediation was held in Richmond on September 28, 2012. It was attended by Nationwide's outside counsel and two Nationwide adjusters (one by phone); RSHT's corporate counsel, its litigation counsel, its President, and its Chief Executive Officer; and by Plaintiffs' counsel and two of the Plaintiffs.

An agreement in principle was reached in the mediation. The agreement in principle provided for a payment of $5 million by Nationwide on RSHT's behalf to resolve the matter through a class action settlement, and for RSHT to take non-monetary steps, including steps to allow prospective students to have greater information about RSHT and its programs when deciding whether to enroll. The agreement in principle was subsequently ratified by the six Plaintiffs who were not in attendance at the mediation.

The parties and Nationwide have since engaged in additional negotiations regarding the details of the agreement, particularly with respect to the non-monetary terms, and to reduce their agreement to writing. There have also been additional phone conversations with the mediator. The Settlement Agreement, including the several documents attached to it, is the result of these negotiations.

The parties have agreed, through the Settlement Agreement, to seek certification of a Settlement Class comprised of all persons who have been enrolled at RSHT at any time from July 1, 2004, though February 28, 2013 (the "Class Period"). The parties estimate that there are approximately 3,938 members of the proposed class.

## A.    Monetary Terms of Settlement

The Settlement Agreement provides for three levels of monetary compensation to class members.  The total amount of compensation for the class members is $3,250,000.

First, the eight named Plaintiffs will each receive as an incentive award the outstanding balance, as of their most recent loan statement, of the loans they took out to attend RSHT, plus an additional $10,000.  This totals $195,905.84.  *See* Settlement Agreement Section III.

Second, the seventy-five student declarants will each receive $3,000 as an incentive award.  This totals $225,000.  *See id.*

Third, for each person who opts out of the settlement, $5,000 will be held in reserve for RSHT to use for defense costs or settlement in the event that any opt-outs pursue independent claims against RSHT based on allegations similar to those asserted here.  *See* Settlement Agreement ¶ 6(c).

Fourth, the remaining funds available, after additional deductions for attorneys' fees and costs and for administration of the settlement, will be distributed equally among the remaining class members who file a valid claim form.  The parties estimate that there will be approximately $2,829,000 for distribution to these class members.  If all of these class members submit a valid claim form, this would result in a payment of approximately $718 to each.  If seventy percent of these class members submit a valid claim form, it would result in a payment of approximately $1,026 to each.[1]

---

[1] Should the response rate be such that each of these class members would otherwise receive over $2,000, then each will receive $2,000; each declarant will receive $3,000; and the remaining funds will be shared equally among both groups (that is, among all class members except for the eight named Plaintiffs).  *See* Settlement Agreement ¶ 7.

The Settlement Agreement further provides that Brown Greer, PLC will be retained as Claims Administrator to distribute the notice, distribute the claim forms, process claims, prepare tax documents, and otherwise administer the settlement. *See* Settlement Agreement ¶ 1(d). Brown Greer is an experienced class action claims administrator located in Richmond. Information regarding the firm is attached as Exhibit 2. Based on consultation with the proposed claims administrator, the parties have agreed to set aside $100,000 from the settlement fund for these costs, but have also included a provision in the Settlement Agreement for excess administrative funds to be included in the funds distributed to class members.[2] *See* Settlement Agreement ¶¶ 4(c), 11.

On the basis of the well-established common fund doctrine, the Settlement Agreement further provides that Plaintiffs' counsel will receive 33% of the settlement funds (which equals $1,650,000) as compensation for attorneys' fees and costs incurred in the prosecution of this matter, which they have funded in its entirety and without any contribution toward fees or costs from Plaintiffs. *See id.* ¶¶ 4(b), 13. The lodestar of fees incurred by Plaintiffs' counsel as of January 31, 2013, was over $1,825,000, and it will increase during the course of the remaining proceedings herein. Plaintiffs' counsel has also incurred costs. The amount that counsel may seek in fees and costs, however, is fixed.

### B. Non-Monetary Terms of Settlement

The Settlement Agreement also provides for significant non-monetary injunctive relief. In addition to requiring Defendant to adhere to the law, the Settlement Agreement requires Defendant to make available important information about the school and the success of its

---

[2] Paragraph 18 of the proposed order submitted with this motion, and paragraph 20 of the proposed final approval order (exhibit 5 to the Settlement Agreement), both provide for a grant of immunity to the Claims Administrator for work performed in connection with the Settlement.

graduates and to adhere to the Cancellation and Refund policy promulgated by the Council on

Occupational Education.  *See* Settlement Agreement ¶ 16.  The information that the school must

make available includes the information reviewed by and provided to several entities that

accredit, audit, and/or regulate RSHT; those entities' reports and conclusions about RSHT; and

up to date statistics regarding the employment, earnings, and licensing/certification of RSHT's

students.  *See id.* ¶ 16(b) & (c).

**ARGUMENT**

The Settlement Agreement is a fair, reasonable and adequate resolution of the matter that

provides substantial and meaningful relief to members of the Class, results from extensive

litigation and arm's length negotiations by experienced counsel, and takes account of the added

complexity and risks caused by the related declaratory judgment action concerning RSHT's

insurance coverage.

**I.    PRELIMINARY APPROVAL SHOULD BE GRANTED BECAUSE THE
       SETTLEMENT AGREEMENT IS IN THE RANGE OF POSSIBLE APPROVAL**

Approval of a proposed class action settlement typically proceeds in two steps.  First, the

Court grants preliminary approval if it determines at a "preliminary approval or pre-notification

hearing . . . [that] the proposed settlement is within the range of possible approval or, in other

words, whether there is probable cause to notify the class of the proposed settlement."  *Horton v.

Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994) (internal

quotation marks and citation omitted); *see also, e.g.*, *Benway v. Res. Real Estate Servs., LLC*,

No. WMN-05-3250, 2011 WL 1045597, at *4 (D. Md. Mar. 16, 2011); *Manual for Complex

Litig.* (Fourth) § 21.632 (Federal Judicial Center 2004) ("*Manual*").  Second, after notice of the

settlement is provided to the class and the Court conducts a fairness hearing, the Court

determines whether the settlement is "fair, reasonable and adequate," as required under Fed. R.

Civ. P. 23(e)(2), such that final approval should be granted.  *See Horton*, 855 F. Supp. at 827; *Benway*, 2011 WL 1045597, at *4; *Manual* §§ 21.634-35.

The Fourth Circuit applies a four-factor fairness inquiry and a five-factor adequacy inquiry in determining whether a class action settlement should be approved.  *See, e.g.*, *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991) ("*Jiffy Lube*"); *In re The Mills Corp. Secs. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) ("*Mills*").  No specific factors must be considered in assessing reasonableness.  *See, e.g.*, *Mills*, 265 F.R.D. at 258; *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-cv-00400-BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009). The fairness factors are:

> (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the [relevant] area of . . . class action litigation.

*Mills*, 265 F.R.D. at 254 (quoting *Jiffy Lube*, 927 F.2d at 159).  The adequacy factors are:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Id.* (same).  Consideration of these factors demonstrates that the proposed settlement is in the range of possible approval.

## A.     The Fairness Factors

All of the fairness factors indicate that the Settlement Agreement should be preliminarily approved.

### 1.     Posture of the Case

This factor addresses principally "how far the case has come from its inception."  *Mills*, 265 F.R.D. at 254.  Settlement at a very early stage may suggest "collusion among the settling

parties" and that the proposed settlement is not legitimate. *Jiffy Lube*, 927 F.2d at 159; *see also Mills*, 265 F.R.D. at 254. Here there have been hard-fought motions over personal jurisdiction and whether Plaintiffs have stated a claim pursuant to any of their five causes of action, among other disputed motions. The vigorous litigation of these issues since the inception of the case demonstrates a clear lack of collusion.

The posture of the case also favors approval for the additional reason articulated in *Horton*:

> By reaching an agreement in principle prior to notification of the potential class members, the members could choose to be included or excluded based on the terms of the proposed settlement. If such agreement had been reached after notification, potential class members would have had to decide whether to opt-in or opt-out of the class without knowledge of the proposed settlement. Thus, the posture of the case at the time of the settlement favors final approval.

*Horton*, 855 F. Supp. at 829.

## 2. Extent of Discovery

As described above, there has been extensive formal discovery and informal investigation. *See supra* at 3. All discovery for class certification was completed prior to the September 28 mediation. Class certification discovery, standing alone, is sufficient for this factor to favor approval of the settlement. *See In re Red Hat Inc. Sec. Litig.*, No. 5:04-cv-473-BR(3), 2010 WL 2710517, at *2 (E.D.N.C. June 11, 2010). The discovery has also encompassed merits issues because, as the Court observed, no precise line between class certification and merits discovery was possible here. *See* Initial Pretrial Order (June 28, 2012) (Docket No. 46) ¶ 2(a). Moreover, the thousands of pages in initial disclosures produced by RSHT went in large part to the merits of the case. Informal investigation conducted by Plaintiffs through independent investigation included interviews with over 200 witnesses and review of over 4,500 pages regarding both class certification and merits issues. In *Jiffy Lube*, the Fourth Circuit held

that even though no formal discovery had taken place, informal discovery was an adequate substitute. *See* 927 F.2d at 159; *see also Strang v. JHM Mortg. Sec. Ltd. P'Ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995) (despite lack of any formal discovery, "Plaintiffs have conducted sufficient informal discovery and investigation to fairly evaluate the merits of Defendants' positions during settlement negotiations").

### 3. Circumstances Surrounding Negotiations

This factor serves to assure that the settlement is based on arm's-length negotiations based on counsel's informed understanding of the case. *See Mills*, 265 F.R.D. at 255. The circumstances here include a failed face-to-face attempt to resolve the matter over a year ago; a successful face-to-face mediation in September involving not only counsel for the parties but also Nationwide's litigation counsel and other Nationwide representatives; and additional telephone discussions and negotiations involving counsel and the mediator. The negotiations broke down for a year and, even since then, have been contentious at times. As in *Beaulieu*, this is "consistent with the tenor of counsel's filings . . . on contested matters, which have demonstrated zealous pursuit of their respective client's interests." 2009 WL 2208131, at *25. There was even substantial difficultly in reaching agreement on selection of a mediator, requiring an extension of time from the Court. Pls.' Mot. for Extension of Time to Identify & Contact Mediator (July 30, 2012) (Docket No. 56). The success in finally reaching an agreement has been based on a well-developed understanding of the factual and legal issues in both this case and the insurance coverage case, and has been achieved only through the involvement of Professor Douglass as mediator. All of these circumstances favor approval of the proposed settlement.

### 4. Experience of Counsel

Lead counsel Relman, Dane and Colfax PLLC ("RDC") is a civil rights law firm based in Washington, DC, with a national practice. *See* Ex. 3. RDC routinely litigates a wide range of discrimination cases in federal court including many cases, like this one, that involve lending and other consumer issues under both state and federal law. *See id.*

RDC currently serves as plaintiffs' counsel in two other class actions: *In re Black Farmers Discrimination Litigation*, No. 1:08-mc-00511-PLF (D.D.C. filed Aug. 7, 2008), a $1.25 billion dollar case against the United States on behalf of African-American farmers who were denied loans from the Department of Agriculture, and *Moore v. Napolitano*, No. 00-953 (D.D.C. filed May 3, 2000), in which the firm represents African-American Secret Service agents denied promotions. In appointing RDC as class counsel in *Moore*, the court stated that, "[t]here is no dispute as to whether the plaintiffs' class counsel are appropriate, and there is no indication that class counsel lack the experience and knowledge required to represent the class." *Moore v. Napolitano*, __ F. Supp. 2d. __, 2013 WL 659111, at *21 (D.D.C. Feb. 25, 2013). Lead undersigned counsel, John P. Relman, has served as lead counsel in a number of class action cases, including *Dyson v. Flagstar Corp.*, No. DKC93-1503 (D. Md.), a class action challenging discriminatory treatment in Denny's restaurants across the country that was settled for $17.725 million and non-monetary relief.

Counsel's experience gives substantial credence to their representation to the Court herein that the settlement is fair, reasonable and adequate. *See, e.g.*, *Mills*, 265 F.R.D. at 255.

### B. The Adequacy Factors

All of the fairness factors also indicate that the Settlement Agreement should be preliminarily approved.

### 1. Relative Strength of Plaintiffs' Case on the Merits and Difficulties of Proof or Strong Defenses Likely at Trial

The first two adequacy factors are often addressed in tandem. *See, e.g.*, *Mills*, 265 F.R.D. at 255-56. They consider "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *Id.* at 256. Undersigned counsel are very confident in the strength of Plaintiffs' case, particularly in light of the declarations obtained from students and former employees of RSHT, yet are cognizant of the Court's observation that, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *Id.* (internal quotation marks and citation omitted).

This case includes issues that are typically difficult to prove, an obstacle that is regularly noted when applying the first two adequacy factors. *See, e.g.*, *Jiffy Lube*, 927 F.2d at 159. These include scienter, materiality of misrepresentation, and reliance with respect to the state law fraudulent inducement and VCPA claims. *See Mills* at 256 (identifying these as significant barriers to proving fraud claim); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665-66 (E.D. Va. 2001) (same) ("*MicroStrategy*"). The Court described proving these elements in a fraud case as a "heavy burden." *MicroStrategy*, 148 F. Supp. 2d at 666. Plaintiffs' other state law claim, for breach of contract, would also present a difficult issue of proof. The contract claim is based on RSHT's alleged failure to provide an adequate education, *see* Sec. Am. Compl. ¶ 412, but RSHT would be able to present evidence that some students passed their licensing and certification examinations and found jobs in their field of study after attending the school. It is uncertain how a jury would view such evidence.

With respect to Plaintiffs' federal claims, they must prove discriminatory intent or impact. Here, too, there would be challenges. Plaintiffs would rely on jurors finding the

witnesses supporting the intent claim more credible than those who would sharply dispute it, and on jurors' willingness to draw inferences from other facts such as the over-representation of African Americans in the study body. RSHT would likely raise as a defense to the disparate impact claim that the school's education is geared toward low-income students, and that focusing on recruiting low-income students is a legitimate business practice despite any resulting over-representation of African Americans. This defense might appeal to a jury.

RSHT's two Rule 12 motions also demonstrate that there are considerable legal hurdles that Plaintiffs must overcome to prevail. Plaintiffs strongly believe that both motions should be denied were they to be refiled, but there would be no certainty.

In short, there would be genuine challenges in proving this case, which favors approval of the proposed settlement.

### 2. <u>Duration and Expense of Additional Litigation</u>

There is no doubt that litigation of this case through trial would require considerable additional time and expense. Merits discovery not encompassed within the discovery taken thus far would need to be conducted. This would likely include a very large number of fact deponents given the many students, teachers and administrators who have been enrolled at or employed by RSHT. *See* Aff. of C. Lake (Dec. 15, 2011) (Docket No. 22-2) ¶¶ 26-27 (estimating 300 employees and 2,715 students over prior five years). Trial would be lengthy because there could be a very large number of fact witnesses. There would also be dueling expert witnesses regarding vocational education, demographics, and possibly other subjects. Throughout all of this, there would be hard-fought motions practice, as indicated by the history of the litigation to date. And as in *MicroStrategy*:

> Nor is it likely that this litigation would have ended with a jury verdict; there is little doubt that a jury verdict for either side would only have ushered in a new

round of litigation in the Fourth Circuit and beyond, thus extending the duration of the case and significantly delaying any relief for plaintiffs.

148 F. Supp. 2d at 667.

### 3. Solvency of Defendant and Likelihood of Recovery on a Litigated Judgment

This factor is particularly salient because there is a significant risk that, no matter how successful Plaintiffs are at trial, they would not be able to collect anything of note. During the Class Period, students have paid RSHT approximately $26.1 million in tuition (approximately $21.4 million of which came through federal student loans). At trial, Plaintiffs would seek at least this much in out-of-pocket damages, in addition to compensation for non-economic harm and punitive damages. RSHT, however, does not have sufficient assets to fund any meaningful amount of a favorable verdict itself.

The only asset that might allow RSHT to fund a verdict is its Nationwide insurance policies. Without the proposed settlement, however, the potential for insurance coverage could be eliminated in its entirety later this year as a result of the declaratory judgment action pending before Judge Hudson. If Judge Hudson were to rule that there is no coverage for Plaintiffs' claims, the Class would as a practical matter have no realistic way of collecting on a verdict. Plaintiffs' counsel has analyzed all of the Nationwide policies and believes that there would be a significant risk of such a ruling if the settlement were not approved. If there is no coverage, the costs of defending the lawsuit alone could result in RSHT's bankruptcy. The inability to recover damages for these reasons is an important reason favoring settlement of class actions. *See Bicking v. Mitchell Rubenstein & Assoc. P.C.*, No. 3:11-cv-78-HEH, 2011 WL 5325674, at *5 (E.D. Va. Nov. 3, 2011) ("cost of proceeding with trial could render Defendants insolvent, and thus impede Plaintiffs' ability to recover a litigated judgment"); *MicroStrategy*, 148 F. Supp. 2d

at 667 (substantial verdict likely to cause defendant's bankruptcy, "leaving plaintiffs with nothing but a massive, unsecured claim against the company that might well lead to little or no recovery").

### 4.    Degree of Opposition

All of the Plaintiffs support the proposed settlement and no opposition has been identified.  If the instant motion is granted, Plaintiffs will address at the fairness hearing any opposition articulated after notice is mailed to members of the class.

### C.    Reasonableness

As noted above, there are no specific factors used to assess reasonableness in the Fourth Circuit.  Factors that Plaintiffs believe are relevant, however, all favor approval of the proposed settlement.

### 1.    The Size of the Recovery is Reasonable

The settlement achieves an excellent result for the class, especially in light of the legal and factual obstacles that Plaintiffs must overcome, the costs of proceeding through trial, and the possibility that even if Plaintiffs obtained a successful judgment they would not be able to collect anything.  The $5 million settlement fund represents approximately 19% of the tuition that the class members paid to RSHT.  In *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) – another class action by students against a vocational school that is the most analogous case anywhere in the country identified by Plaintiffs – the court approved a settlement for only 17% of the tuition paid by the students.[3]  *See id.* at 144, 148.  Courts have approved class action settlements reflecting much lower percentage recoveries.  *See, e.g.*, *MicroStrategy,* 148 F. Supp.

---

[3] The 19% and 17% figures both reflect the full recovery, *i.e.*, before any allocation for fees and costs.  In *Cullen*, the court approved fees equal to one-third of the recovery and also approved additional costs.  *See* 197 F.R.D. at 146-47.

2d at 666 n.22 (collecting cases).  The 19% recovery here is well within the bounds of reasonableness.

### 2.        The Incentive Awards for the Named Plaintiffs are Reasonable

The eight named Plaintiffs have all devoted substantial time and effort to the development and prosecution of the lawsuit.  They have met with counsel in-person and telephonically on numerous occasions, searched for and provided documents, answered interrogatories, and subjected themselves to public attention as this case has attracted significant media interest.  Five of the Plaintiffs were deposed and met with counsel to prepare for their depositions; the other three were ready and willing to be deposed but were not selected by Defendant.  Two of the Plaintiffs attended the in-person mediation, and all met with counsel on short notice to review and approve the tentative agreement in principle reached at the mediation.  The commitment of the named Plaintiffs has been steadfast and invaluable in achieving the settlement.

The incentive awards for the named Plaintiffs (which are in lieu of, not in addition to, what they would otherwise receive from the settlement) vary according to the outstanding balance of the loans they incurred to attend RSHT.  Each award is equal to the balance plus $10,000.  The individual totals range from $14,995.23 to $34,640.05.   These amounts are reasonable.  *See, e.g.*, *Helmick v. Columbia Gas Transmission*, No. 2:07-cv-00743, 2010 WL 2671506, at *3 (S.D.W.V. July 1, 2010) ($50,000 incentive award in addition to regular distribution from settlement proceeds); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. cv-08-1365, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases with incentive awards from $20,085 to $55,000).

### 3. The Incentive Awards for the Declarants are Reasonable

The seventy-five declarants all spent considerable time meeting with counsel to explain their experience with RSHT and to review and revise draft declarations. They all subjected themselves to public attention by providing evidence. Five of the declarants, selected by RSHT, were also deposed. The $3,000 incentive awards for the declarants are reasonable. *See Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $3,000 to affiants).

### 4. The Attorneys' Fees and Costs are Reasonable

Plaintiffs' attorneys invested considerable resources in this matter despite the risk of receiving no compensation. Among other things, they interviewed over 200 witnesses and obtained declarations from eighty-seven of them, reviewed tens of thousands of pages of documents, took or defended eleven depositions, and briefed contentious and complex issues regarding every cause of action. The compensation for counsel set forth in the Settlement Agreement is justified both by the effort expended on behalf of the class and by case law.

As in *Mills*, this settlement "results in the formation of a 'common fund' for the benefit of [the] entire class, and thus, reasonable attorneys' fees may be awarded from this 'common fund.'" 265 F.R.D. at 260. The "'percentage of recovery'" method is preferred to the "lodestar method" in awarding fees in common fund cases. *See id.*; *see also Temp. Servs., Inc. v. Am. Int'l Group, Inc.*, 3:08-CV-00271-JFA, 2012 WL 4061537, at *7 (D.S.C. Sept. 14, 2012) ("The percentage method also is widely believed preferable in a case such as this one where the Plaintiffs agreed to pay counsel on a contingency fee basis.") ("*Temp. Servs.*"). The Settlement Agreement uses the percentage method and allocates 33% of the $5 million fund to the two law firms representing Plaintiffs. This covers both fees and costs. Another court in this Circuit

recently surveyed awards in class action settlements and found that awards of one-third for fees alone are very common, and approved as reasonable a fee award of one-third of a $4 million common fund (as well as $230,589.11 in costs). *See Temp. Servs.*, 2012 WL 4061537 at *8-9, 10; *see also, e.g.*, *Beaulieu*, 2009 WL 2208131, at *26 (preliminary approval of 38% fee award); *Muhammad v. Nat'l City Mortg.*, No. 2:07-0423, 2008 WL 5377783, at *8-9 (S.D.W.V. Dec. 19, 2008) (final approval to one-third fee award).

Courts using the percentage method often perform a lodestar cross-check to confirm the reasonableness of the percentage award. *See, e.g.*, *Mills*, 265 F.R.D. at 264-65. The lodestar for Plaintiffs' counsel as of the end of January 2013 is over $1.825 million, demonstrating the reasonableness of a 33% award. Courts often approve a percentage that results in a fee recovery significantly greater than the lodestar figure, yet here Plaintiffs' counsel will request significantly less than their final lodestar. *See Domonoske v. Bank of Am., N.A.*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) (using percentage method resulting in lodestar multiplier of 1.8, and citing cases approving lodestar multipliers of 1.35 to 4.5).

In accordance with Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2), Plaintiffs will move for an award of fees in the amount of $1,650,000 as part of their motion for final approval of the settlement.

## II.     A SETTLEMENT CLASS SHOULD BE PROVISIONALLY CERTIFIED UNDER RULE 23(b)(2) AND RULE 23(b)(3)

The Settlement Agreement provides that the settlement will be effectuated through class action treatment, and the parties will support certification for this purpose. *See* Settlement Agreement Section II. Certification requires meeting the requirements of Fed. R. Civ. P. 23. *See, e.g.*, *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 537 (E.D. Va. 2006) ("*BearingPoint*"). This requires satisfying each of the four criteria set forth in Rule 23(a)(1)-(4),

but only one of the three subcategories of Rule 23(b). *See, e.g.*, *id.* "The practice in the Fourth Circuit is 'to give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application [that] will in the particular case best serve the ends of justice for affected parties and promote judicial efficiency.'" *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 210 (E.D. Va. 2003) (quoting *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989)).

The proposed Settlement Class satisfies the criteria of Rule 23(a), and satisfies Rule 23(b)(2) with respect to injunctive relief and Rule 23(b)(3) with respect to monetary relief. "Hybrid" certification for purposes of settlement is therefore appropriate. *See, e.g.*, *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997) (recognizing authority of district courts to grant hybrid certification under (b)(2) and (b)(3)).

### A. Rule 23(a) Is Satisfied

#### 1. Rule 23(a)(1) – Numerosity

The proposed class includes thousands of people. *See supra* at 15. This easily satisfies the Rule 23(a)(1) requirement that "the class is so numerous that joinder of all members is impracticable." *See, e.g.*, *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 559 (E.D. Va. 2000) (99 members "is in excess of that required").

#### 2. Rule 23(a)(2) – Commonality

To establish commonality, "even a single common question will do," as long as it is of the right type. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal quotation marks, brackets, and citation omitted). The question must be susceptible to "classwide resolution," meaning the answer "will resolve an issue that is central to the validity of each one of the claims in one stroke," and that it is "apt to drive the resolution of the litigation." *Id.* at

2551 (internal quotation marks and citation omitted).  There are numerous questions here that satisfy *Dukes* and Rule 23(a)(2).

The claims at issue in this suit concern RSHT's marketing, admissions and financial aid practices, and the quality of the education it provides.  The record demonstrates that RSHT goes to great lengths to assure uniformity in each of these areas, and courts consistently find commonality satisfied "when the defendants are alleged to have directed standardized conduct toward the putative class members . . . ."  *Chisolm*, 194 F.R.D. at 555 (internal quotation marks and citation omitted).  Standardization of conduct is RSHT's basic operating principle.  That there may be some modest differences in individual class member's exposure to such conduct does not undermine commonality.  *See, e.g.*, *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006); *BearingPoint*, 232 F.R.D. at 538; *Fisher*, 217 F.R.D. at 211-12.  Thus, in *Chisholm v. United States Postal Service*, 665 F.2d 482 (4th Cir. 1981), commonality was satisfied and a class certified even though the class members worked at different post office branches because they all worked under the centralized control of the Charlotte post office.  *See id.* at 492.  A class was likewise certified in *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992), another case brought by students challenging the adequacy of their vocational school, notwithstanding some differences among students with respect to enrollment period, student satisfaction, and whether they passed a state licensing examination.  *Id.* at 1015, 1017-18.

**Admissions and Financial Aid.**  RSHT assures that its admissions and financial aid personnel treat all prospective students in exactly the same way, regardless of the campus or program in which they are interested.  A detailed "Follow-Up Survey" completed by prospective students helps to "assure uniformity in the admissions process."  *See* Ex. 4 (Fed. R. Civ. P. 30(b)(6) Dep. of RSHT) ("30(b)(6) Dep.") at 159:24-160:24, 162:9-17; *id.* at Ex. 23.  Extensive

training, in particular by RSHT's Director of Marketing and Director of Financial Aid (corporate positions), serves the same purpose. *See* Ex. 5 (collection of declarations from students and ex-employees) at PL002243-44 (M. Holmes Decl. ¶¶ 4, 6, 9); *id.* at PL002247 (A. Wright Decl. ¶ 5); 30(b)(6) Dep. at 138:17-139:5, 144:12-145:2, 159:24-160:4, 194:25-196:11, 196:20-197:3, 222:25-223:17; *see also* 30(b)(6) Dep. at 40:2-13. RSHT believes it has succeeded in implementing a standardized process for all prospective students. *See id.* at 160:5-8, 160:25-161:5, 161:12-162:8.

The process begins with a script that RSHT receptionists follow when fielding phone calls from prospective students. *See id.* at 132:10-134:24; *id.* at Ex. 18. The receptionist then passes the call to an admissions officer, who also follows a script. *See id.* at 52:14-18, 136:5-21; *id.* at Ex. 19; *see also id.* at 134:25-135:25 (admissions officers are interchangeable). The same script has been used over time. *See id.* at 137:6-138:16. Admissions officers must follow a 60-page PowerPoint presentation (called a "flip chart") with prospective students who visit the school. *See id.* at 139:17-140:13, 140:17-141:21; Ex. 5 at PL002243 (Decl. of M. Holmes ¶ 4). They must also use the School Catalog to explain the school's admissions requirements. *See* 30(b)(6) Dep. at 143:12-144:16, 147:13-16. Admissions requirements do not differ by campus, have been consistent over time, and have only differed in minor respects between two programs (practical nursing and radiology) and the others.[4] *See id.* at 145:3-146:19, 147:7-12, 148:7-9; *id.* at Ex. 21 (School Catalog at RSHT0021819-20). Prospective students must also be given a campus tour. *See id.* at 159:12-19. Admissions officers follow these procedures in practice. *See id.* at 142:8-15, 147:17-20.

---

[4] It is "a rarity" that a prospective student is denied admission by RSHT. 30(b)(6) Dep. at 228:8-20. Former admissions officer Melanie Holmes states in her declaration that, "In fact, RSHT really did not have any admissions standards." *See* Ex. 5 at PL002244 (Decl. of M. Holmes ¶ 8).

Prospective students must also meet with a financial aid officer, *see id.* at 159:12-20, 194:4-12, and that process is likewise highly standardized, *see id.* at 194:25-195:16, 196:8-197:3, 197:24-198:24, 199:2-8, 200:12-201:3, 220:14-221:2, 222:25-223:17. Both the admissions officers and the financial aid officers use the same core documents with all students.[5]

Plaintiffs allege that as part of these standardized presentations, RSHT routinely makes certain promises about the school to induce enrollment which are knowingly false, including: that its programs prepare students to become certified or licensed in their fields of study, *see, e.g.*, SAC ¶¶ 92, 98; that it places students in valuable externships, includes externships they need to become certified and licensed; *see, e.g.*, *id.* ¶¶ 93, 101-02; and that its CHH program makes students eligible for certification in "community home health," a nonexistent credential, *see, e.g.*, *id.* ¶ 110. Substantial evidence adduced without formal merits discovery supports these allegations. *See, e.g.*, Ex. 5 at PL001825-26 (Decl. of B. Avington ¶¶ 5, 6, 7, 12), PL001830 (Decl. of V. Banks ¶ 5, 6), PL001835 (Decl. of M. Blaney ¶ 5, 6), PL001840 (Decl. of C. Champoco ¶ 6, 7), PL001844 (Decl. of S. Chavis ¶ 5, 6), PL001849-50 (Decl. of W. Clark ¶ 6, 7, 8, 13), PL002018-19 (Decl. of B. Drew ¶¶ 14-17), PL002037 (Decl. of D. Cosner ¶¶ 18-19), PL002044-48 (Decl. of S. Higgins ¶¶ 4-20), PL002060-61 (Decl. of T. Branch ¶¶ 9-12). Whether such knowingly false statements are part of RSHT's uniform treatment of prospective students raises a common question that is central to the fraudulent inducement and VCPA causes of action. *See Bobbitt v. Acad. of Court Reporting, Inc.*, 252 F.R.D. 327, 330 (E.D. Mich. 2008)

---

[5] *See, e.g.*, 30(b)(6) Dep. at Ex. 24 (Application for Admission); *id.* at 162:18-23, 163:13-164:2, 164:9-25 (same); *id.* at Ex. 25 (Enrollment Agreement); *id.* at 168:18-169:1, 170:1-19, 172:7-11 (same); *id.* at Exs. 27-28 (Enrollment Certification); *id.* at 175:8-177:10) (same); *id.* at Ex. 29 (Orientation Letter); *id.* at 177:11-178:8) (same); *id.* at Ex. 32 (Entrance Interview); *id.* at 179:18-180:3, 181:22-23, 197:4-198:24, 199:2-8) (same); *id.* at Ex. 34 (Tuition Worksheet); *id.* at 201:22-202:12, 203:10-22, 204:5-22 (same); *id.* at Ex. 35 (Cost of Attendance Worksheet); *id.* at 204:25-205:6, 206:4-207:5 (same); *id.* at Ex. 36 (Entrance Counseling Requirements); *id.* at 209:11-211:2 (same); *id.* at Ex. 38 (Installment Note); *id.* at 213:12-214:17 (same).

(common question, in case brought by students of vocational school, whether oral statements constituted fraud). Whether such statements are a material part of inducing students to enroll, and whether they are relied on by students in deciding to enroll, are also common questions. *See Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226, 234-35 (E.D. Pa. 1999); *see also Chisolm*, 194 F.R.D. at 560-65.[6]

**Education.** In their breach of contract cause of action, Plaintiffs allege that RSHT fails to provide an adequate education consistent with the implied covenant of good faith and fair dealing. Whether it does so is yet another common question because of the uniformity imposed by RSHT in its educational programs.

RSHT requires its instructors to follow a precise curriculum that is established at the corporate level and distributed to the campuses to be implemented identically. *See* 30(b)(6) Dep. at 20:6-25, 22:10-23:12, 25:4-24, 27:20-21, 37:19-38:3 The curriculum even details the lesson plan for every class session. *See id.* at 23:12-14, 25:25-26:3. The core of the curriculum has been consistent over time. *See id.* at 37:7-11; *see also id.* at 21:25-22:3. Assuring that the instructors adhere to the curriculum as written is a high priority for the school. *See id.* at 38:4-10. Compliance is monitored carefully by having senior staff sit in on classes and through student evaluations. *See id.* at 27:24-28:11, 29:13-30:11. Deviation has never been a substantial problem. *See id.* at 35:20-36:1; *see also id.* at 38:12-39:8.

---

[6] With respect to the VCPA claim, whether RSHT is acting as "a supplier" and "in a consumer transaction," such that the statute applies, *see Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456 (E.D. Va. 2009), raise additional common questions. Whether RSHT is a "supplier" turns on what RSHT does, not on any actions of the members of the proposed class. Similarly, this Court previously explained in the course of granting class certification in *Chisolm* that whether selling a particular product constitutes a consumer transaction under the VCPA does not require individualized inquiries, which would weigh against class certification. *See Chisolm*, 194 F.R.D. at 567.

Members of the proposed class and former employees have testified repeatedly that the education provided by RSHT is not adequate. *See, e.g.*, Ex. 5 at PL002015-19 (Decl. of B. Drew ¶¶ 6-13, 16), PL002037 (Decl. of D. Cosner ¶¶ 17-19), PL002044-48 (Decl. of S. Higgins ¶¶ 5-17, 20); PL002059-60 & PL002063 (Decl. of T. Branch ¶¶ 4-9, 18), PL002171-75 (Decl. of C. Duesing ¶¶ 3-14, 18), PL002236-38 (Decl. of M. Rollins ¶¶ 9, 12-16); PL001825-26 (Decl. of B. Avington ¶¶ 11-15), PL001831 (Decl. of V. Banks ¶¶ 11-15), PL001835-36 (Decl. of M. Blaney ¶¶ 10-17), PL001841 (Decl. of C. Champaco ¶¶ 11-13). Whether these shortcomings constitute a breach of the implied covenant is a common question because of RSHT's effort to deliver a uniform, standardized educational program to every student in each of its few programs. This is a global question, not one specific to individuals or campuses or limited time periods.

**Marketing.** RSHT's marketing is controlled by its corporate office and has been uniform over time. It is controlled by the school's Director of Marketing and CEO, both corporate positions. *See* Ex. 30(b)(6) Dep. at 39:21-40:18, 42:19-43:6; *see also id.* at 84:12-19, 85:9-11. The campuses and programs do not advertise separately; rather, RSHT maintains a single marketing campaign designed to generate interest in the school as a whole. *See id.* at 85:12-19, 86:17-87:7, 116:9-24. Even occasional campus-based events such as "open houses" have been the same at each campus. *See id.* at 17:7-9.

RSHT's Rule 30(b)(6) witness testified that "most of our advertising is the same all the time." *Id.* at 98:15-16. She reiterated this with respect to television, print, and radio. *See id.* at 80:25-81:10 (same basic television ad), 46:20-47:3 (same television channels), 113:22-114:12 (same basic print ad), 83:7-12 (same basic radio ad). RSHT has even maintained the same slogan in its advertising over the years. *See id.* at 12:16-13:11 ("Learn how far your mind can take you.").

Whether RSHT's uniform, top-down controlled marketing strategy is discriminatory, as alleged in the two federal law causes of action and as numerous witnesses have testified in their declarations,[7] is therefore also a common question.

With respect to all of these issues addressed in this section and all of Plaintiffs' causes of action, there are common issues of fact and law that would drive the resolution of this suit absent settlement, thus satisfying the commonality requirement.

### 3.    **Rule 23(a)(3) – Typicality**

"Where the commonality requirement focuses on the claims of the class as a whole, the [Rule 23(a)(3)] typicality requirement is focused on the claims of the named plaintiffs." *Fisher*, 217 F.R.D. at 212. "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members," but the "mere existence of individualized questions with respect to the class representative's claim will not bar class certification." *DiFelice*, 235 F.R.D. at 78-79 (internal quotation marks and citations omitted). The class representatives' claims must only "fairly encompass" the claims of the class; they "need not have identical factual and legal claims in all respects." *Fisher*, 217 F.R.D. at 212; *see also, e.g.*, *BearingPoint*, 232 F.R.D. at 538 (class representatives' claims must be "substantially similar to those of the unrepresented parties"). The allegations of the complaint and the testimony of those who were deposed demonstrate that all eight named Plaintiffs easily satisfy the typicality requirement.

---

[7] *See, e.g.*, Ex. 5 at PL001827 (Decl. of B. Avington ¶ 23), PL001832 (Decl. of V. Banks ¶ 24), PL001846 (Decl. of S. Chavis ¶ 24), PL001851 (Decl. of W. Clark ¶ 20), PL001855 (Decl. of J. Davis ¶ 21), PL002020 (Decl. of B. Drew ¶ 21), PL002031-32 (Decl. of C. Freiburger ¶ 18), PL002037-38 (Decl. of D. Cosner ¶¶ 20-22), PL002041 (Decl. of R. Burke ¶¶ 11-12), PL002056 (Decl. of S. Ruiz ¶ 18), PL002061-62 (Decl. of T. Branch ¶¶ 14-15), PL002240-41 (Decl. of M. Rollins ¶¶ 22-24), PL002244-45 (Decl. of M. Holmes ¶¶ 12-14), PL002248 (Decl. of A. Wright ¶ 7).

The named Plaintiffs were all RSHT students during the class period. *See* SAC at ¶¶ 58-65. Most learned about the school through its uniform marketing program. *See id.* at ¶¶ 122, 174, 211, 239, 260, 294; Ex. 6 (Dep. of. S. Battle) ("Battle Dep.") at 23:15-24:16; Ex. 7 (Dep. of L. Dabney) ("Dabney Dep.") at 29:22-30:23; Ex. 8 (Dep. of T. Herbert) ("Herbert Dep.") at 27:1-4; Ex. 9 (Dep. of L. Towns) ("Towns Dep.") at 19:15-20:18. They all had the same interactions with RSHT's admissions and financial aid personnel that RSHT makes sure all prospective students have, and allege that RSHT convinced them to enroll by making the same kind of false representations that are alleged by the class as a whole (*e.g.*, that the school would prepare them to pass certification and licensing examinations in their field of study and would give them appropriate externship experience).[8] As alleged for the class, the named Plaintiffs relied on these false representations in deciding to enroll at RSHT. *See, e.g.*, SAC at ¶¶ 131, 153, 179, 198, 216, 244, 269, 300. They assert that the education they received suffered from the same shortcomings as is alleged with respect to the class as a whole.[9] As with the class

---

[8] *See, e.g.*, SAC at ¶¶ 123-131, 139-140, 144, 149-153, 160-165, 167-168, 175-179, 185, 197-198, 212-216, 224-225, 227, 230-231, 240-244, 256, 260-265, 269, 280-86, 295-300, 312-313 (experience with admissions officers and false promises); Battle Dep. at 26:5-24, 42:2-14, 70:15-72:5, 75:15-76:8 (same); Dabney Dep. at 33:1-16, 34:10-35:2, 35:25-36:15, 39:1-6, 120:5-20 (same); Herbert Dep. at 30:12-21 (same); Ex. 10 (Dep. of A. Thomas) ("Thomas Dep.") at 78:2-80:14, 81:7-24, 83:13-22, 85:18-86:12, 89:2-91:22, 114:20-115:1, 116:5-18 (same); Towns Dep. at 22:3-23:20, 24:10-25:24, 71:6-24, 108:4-12 (same); SAC at ¶¶ 128, 154, 180, 199, 217, 245, 267, 301 (experience with financial aid officers), Battle Dep. at Exs. 60-63, 65, 68, 70, 73-74, 76-77, 79, 94 (use of standard documents by admissions and financial aid officers); Dabney Dep. at Exs. 209-10, 212-13, 216 (same); Herbert Dep. at Ex. 49 (same); Thomas Dep. at Exs. 224-26, 230 (same); Towns Dep. at Exs. 125, 127, 129, 134 (same).

[9] SAC at ¶¶ 124, 129, 135-136, 138-44, 156-68, 175, 182-83, 185, 187-89, 203-04, 212, 219, 222, 224-25, 227-31, 241, 251-53, 274-76, 278-86, 295-96, 305-13; Battle Dep. at 118:3-120:4, 123:17-125:1, 130:18-131:18, 146:21-147:17; Dabney Dep. at 67:14-69:22, 70:23-71:4, 72:13-18, 118:22-119:12, 121:6-15; Herbert Dep. at 103:4-13; Thomas Dep. at 68:14-69:13, 114:20-115:1, 116:5-18; Towns Dep. at 47:4-16, 51:15-23, 54:14-55:12, 59:5-12, 66:8-11, 68:1-21, 71:1-24, 79:13-16, 106:16-108:3.

generally, they were left with unaffordable student loans and without improved job prospects. *See, e.g.*, *id.* at ¶¶ 5, 55.

4. <u>**Rule 23(a)(4) – Adequacy of Representation**</u>

"The purpose of the adequacy requirement is to ensure that there are no potential 'conflicts of interest between the named parties and the class they seek to represent.'" *DiFelice*, 235 F.R.D. at 79 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997)); *see also, e.g.*, *Chisolm*, 194 F.R.D. at 556 (citing lack of "conflict or discord within the class" in evaluating adequacy requirement). "For a conflict of interest to prevent plaintiffs from meeting the requirement of Rule 23(a)[(4)], that conflict must be fundamental [and] must go to the heart of the litigation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430-31 (4th Cir. 2003). Competency of counsel is a second factor in assessing adequacy of representation. *See Chisolm*, 194 F.R.D. at 556 & n.16; *BearingPoint*, 232 F.R.D. at 541.

The adequacy requirement is satisfied in both respects. First, there is no indication of any conflict between the class representatives and the unnamed members of the proposed class, much less the kind of "fundamental" conflict described in *Gunnells*. The interests of the named Plaintiffs and the other students are aligned. They have a shared interest in, among other things, being compensated for the money they spent and borrowed to attend RSHT

Second, undersigned counsel are experienced in consumer, discrimination, and class action litigation, and have demonstrated by their litigation of this case that they are able to pursue the class members' interests vigorously and are committed to doing so. *See Chisolm*, 194 F.R.D. at 556 n.16 ("The Court observes that the voluminous pleadings, filings, and active discovery suggest that Plaintiffs' counsel adequately meet their duties under this analysis. The

Plaintiffs, through counsel, are representing the class with the fervor due under Rule 23 to the absent class members.").

**B.** **Rule 23(b)(2) Is Satisfied**

Certification under Rule 23(b)(2) is appropriate when injunctive or declaratory relief applicable to the class as a whole may be warranted. *See Dukes*, 131 S. Ct. at 2557. The proposed settlement included several forms of injunctive relief. *See* Settlement Agreement Section IV. Certification of a (b)(2) class is therefore pooper with respect to these components of the settlement.

**C.** **Rule 23(b)(3) Is Satisfied**

With respect the monetary relief, certification under Rule 23(b)(3) is appropriate because the two relevant criteria are satisfied: (1) common questions of law or fact predominate over individualized questions, and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23 identifies four factors that are pertinent to this inquiry:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

*Id.* The fourth factor is not relevant with respect to a settlement-only class. *See Gunnells*, 348 F.3d at 440; *see also Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 302-04 (3d Cir. 2011) (en banc) ("for certification of a settlement class . . . the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation").

The focus in considering whether common questions predominate is liability, not damages. *See BearingPoint*, 232 F.R.D. at 542 ("[I]f the liability issue is common to the class, common questions are held to predominate over individual ones. Damages are less central to the predominance inquiry; courts generally hold that differences in damages among the potential class members do not generally defeat predominance if liability is common to the class.") (internal quotation marks and citations omitted). The common questions described above with respect to commonality and typicality are the predominant issues regarding liability. Their resolution will drive the liability determination as to each of the causes of action at issue.

The factors in subsections (A)-(C) further demonstrate that the class action device is superior. The "'dominant[]'" reason for subsection (A) is to provide for "'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 445 (E.D. Va. 2004) (quoting *Amchem Prods., Inc.*, 521 U.S. at 616-17); *see also Chisolm*, 194 F.R.D. at 546 ("it is proper for the court to consider the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually") (internal quotation marks and citation omitted). Lack of economic resources and incentives needed to bring individual suits are key considerations, *see Pitt*, 221 F.R.D. at 445-46, and both are present here. Plaintiffs allege that RSHT intentionally seeks out low-income students to maximize financial aid. *See* SAC ¶¶ 12, 324, 330, 341, 378, 380. Individual claims are likely to be in the four-figure or low-five figure range, which does not justify the substantial cost required to prove that the school is liable for damages. This factor thus supports class certification.

Plaintiffs are aware of no other litigation concerning the controversy. Students have wanted to bring suit before, *see* Battle Dep. at 128:22-129:5; 129:14-18; 130:11-20; 131:12-132:2, and their past inability to do so is indicative of the substantial resources needed to challenge an institution like RSHT and the need for class certification to make a challenge economically viable.

The third factor has effectively already been addressed through the decision to transfer the case to this District from Washington, D.C. Judge Kessler found that concentrating the claims here was the most sensible approach. *See* Mem. Op. (Apr. 30, 2012) (Docket No. 30) at 11-13.

Accordingly, all the considerations relevant to Rule 23(b)(3) establish that certification of a (b)(3) class for purposes of the monetary relief is proper.

### D.     Plaintiffs' Counsel Satisfy the Requirements of Rule 23(g)

Fed. R. Civ. P. 23(g) requires the Court to appoint class counsel when it certifies a class. Plaintiffs' counsel have diligently investigated the potential class claims in this action; have substantial experience in discrimination, consumer, class action, and other complex litigation; are knowledgeable about law relevant to this action; and have committed significant resources to representing the class. *See* Ex. 3. Accordingly, Plaintiffs counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(1) & (4).

## III.    THE PROPOSED CLASS NOTICE SHOULD BE DISSEMINATED TO THE CLASS

Prior to finally approving the proposed settlement, the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Because Plaintiffs request certification in part under Ruler 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort." *Id.* 23(c)(2)(B). Similarly, due

process requires reasonable notice and the opportunity to be heard or withdraw from the class.

*See In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 231 (S.D.W.V. 2005); *see also In re*

*MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 906-07 (E.D. Va. 2001) (approving notice

that informed class members of options available to them).

The Settlement Agreement provides that notice of the settlement will be sent by the

Claims Administrator to the individual class members via first-class United States mail in the

form attached as Exhibit 4 to the Settlement Agreement. RSHT will provide the records

necessary to ascertain the identity and addresses of the class members, and the claims

administrator will conduct "tracing" to determine whether more up-to-date addresses are

available. *See* Settlement Agreement ¶¶ 19, 20. First-class mailing in conjunction with tracing

satisfies Rule 23 and due process where, as here, the parties have addresses, social security

numbers, and phone numbers of the class members. *See Minter v. Wells Fargo Bank, N.A.*, 283

F.R.D. 268, 275 (D. Md. 2012); *see also Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10

Civ. 4825 (PKC), 2011 WL 2207586, at *12 (S.D.N.Y. June 2, 2011). The notice will be

provided to class members with adequate time for them to decide if they want to object or opt

out. *See* Settlement Agreement ¶¶ 21, 25-27 (opt-outs due six weeks after deadline for mailing

of notice; objections and rescissions of opt-outs due eight weeks after deadline for mailing of

notice).

The content of the proposed notice is also sufficient. As required under Rule 23(c)(2)(B)

and Rule 23(e)(5), it describes the case and terms of settlement, provides the class definition,

tells class member that they may appear through an attorney, tells them that they may be

excluded from the class or object to the settlement and how to do so, and explains the binding

effect of a class judgment on class members. The notice also describes the claims process that will be utilized if the settlement receives final approval.

Even though this process of mailing notice to class members is adequate in and of itself, *see Minter*, 283 F.R.D. at 275; *Aponte*, 2011 WL 2207586 at *12, as an additional measure the Settlement Agreement also provides that the Claims Administrator will cause notice to be published in the Richmond Times Dispatch and the Progress Index (in Petersburg). *See* Settlement Agreement ¶ 22.

Because the proposed notice satisfies the requirements of due process and Rule 23, its distribution to the class should be approved.

## IV.    PROPOSED SCHEDULE RELATED TO FINAL APPROVAL

If the Court grants preliminary approval of the proposed settlement, Plaintiffs respectfully propose the following schedule for the remaining procedural steps leading to the Court's final review:

| | |
|---|---|
| Deadline for mailing of notice to Class Members identified on the basis of Defendant's records and for publishing notice in newspapers | 21 days after entry of the Court's order preliminarily approving the settlement |
| Deadline for opting out | 63 days after entry of the Court's order preliminarily approving the settlement |
| Deadline for rescinding opt-out or filing objection | 77 days after entry of the Court's order preliminarily approving the settlement |

| Deadline for Plaintiffs to file motion for final approval of settlement and to respond to any objections | 84 days after entry of the Court's order preliminarily approving the settlement |
| --- | --- |
| Fairness Hearing | 91 days after entry of the Court's order preliminarily approving the settlement |

If this schedule is not convenient for the Court, Plaintiffs request that the Court use the same or greater intervals between each even listed to provide all Parties sufficient time to comply and to provide Class Members sufficient time to review the terms of the proposed settlement, consider their options, and act accordingly.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully submit that the Court should enter an order preliminarily approving the Settlement Agreement, provisionally certifying the class for purposes of settlement, appointing undersigned counsel as counsel for the class, directing the issuance of notice to the class, setting deadlines for Class Members to object to the settlement or opt out of the class, scheduling a Fairness Hearing, and granting such other relief as is necessary as set forth in the proposed order submitted herewith.

April 9, 2013                                    Respectfully submitted,

                                                  /s/ John Relman      
                                        John Relman, *pro hac vice*
Michael G. Allen (VA Bar No. 25141)
Glenn Schlactus, *pro hac vice*
Jia Cobb, *pro hac vice*
Stephen Hayes, *pro hac vice*
Tara Ramchandani, *pro hac vice*
RELMAN, DANE & COLFAX PLLC
1225 19th Street, NW
Suite 600

Washington, DC 20036
(202) 728-1888
(202) 728-0848 (fax)


Tim Schulte (VA Bar No. 41881)
SHELLEY & SCHULTE, P.C.
2020 Monument Avenue
Richmond, VA 23220-2733
(804) 644-9700
(804) 278-9634 (fax)

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of April, 2013, I will cause the foregoing to be

electronically filed with the Clerk of Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to the following:

Alexander Spotswood de Witt
Brenner Evans & Millman PC
411 E Franklin St
PO Box 470
Richmond, VA 23218-0470
adewitt@beylaw.com

Theodore Ira Brenner
Brenner Evans & Millman PC
411 E Franklin St
PO Box 470
Richmond, VA 23218-0470
tbrenner@beylaw.com

And I hereby certify that I will mail the document by United States First Class Mail,

postage prepaid, to the following non-filing user:

Michael Jack Budow
Budow & Noble, P.C.
7315 Wisconsin Avenue
Suite 500 West, Air Rights Building
Bethesda, MD 20814

/s/ Michael G. Allen
Michael G. Allen