# EXHIBIT

# 6

A portion of this document has been redacted pursuant to the Stipulated Protective Order (Docket No. 66) (Aug. 30, 2012), ¶ 6.  An unredacted version has been filed under seal.

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division
_____

MARY MORGAN, et al.,
on behalf of themselves and
all other similarly situated,
　　　　　　　Plaintiffs,
vs.　　　　　　　Civil Action No.
　　　　　　　3:12cv373-JAG

RICHMOND SCHOOL OF HEALTH
AND TECHNOLOGY, INC.,

　　　　　　　Defendant.
_____

DEPOSITION OF SADE N. BATTLE

September 14, 2012
8:56 a.m.

Taken at:

BRENNER, EVANS & MILLMAN, P.C.
411 East Franklin Street, Suite 200
Richmond, Virginia 23219

REPORTED BY: Lisa M. Blair, RPR
COOK & WILEY, INC.
Registered Professional Reporters
3751 Westerre Parkway, Suite D-1
Richmond, Virginia 23233
804.359.1984

Page 2

1　APPEARANCES:
2　Glenn Schlactus, Esquire
　Tara Ramchandani, Esquire
3　Jia Cobb, Esquire
　RELMAN, DANE & COLFAX PLLC
4　1225 19th Street NW
　Suite 600
5　Washington DC 20036
　202-728-1888
6　Counsel for the Plaintiffs
7
　Alexander S. deWitt, Esquire
8　BRENNER, EVANS & MILLMAN, P.C.
　411 East Franklin Street, Suite 200
9　Richmond, Virginia 23219-0470
　804-644-1300
10　Counsel for the Defendant
11
12
　ALSO PRESENT:
13
　Allison Pincus
14
15
16
17
18
19
20
21
22
23
24
25

Page 3

1　　　　　I N D E X
2
3　SADE N. BATTLE　　　　　　PAGE
4　　By Mr. deWitt　　　　　　5
5　　By Mr. Schlactus　　　　146
6　　　E X H I B I T S
7　EXHIBITS　　　　　　　　PAGE
8　59　RSHT0002955 to 2956　　10
9　60　RSHT0002946　　34
10　61　RSHT0003007 to 3008　　36
11　62　RSHT0003055 to 3056　　45
12　63　RSHT0003057 to 3058　　51
13　64　RSHT0021982 to 22020　53
14　65　RSHT0003030　　54
15　66　RSHT0003073　　59
16　67　RSHT0003034 to 3035　　63
17　68　RSHT0003078　　64
18　69　RSHT0003070　　66
19　70　RSHT0002948 to 2949　　69
20　71　RSHT0002970　　76
21　72　RSHT0002972　　78
22　73　RSHT0003051 to 3054　　80
23　74　RSHT0021938 to 3061　　83
24　75　RSHT0021938 to 21981　84
25　76　RSHT0003029　　86

Page 4

1　77　RSHT0003036　　86
2　78　RSHT0003033　　86
3　79　RSHT0003076　　86
4　80　RSHT0003077　　86
5　81　RSHT0003060　　87
6　82　RSHT0002973 to 2974　　90
7　83　RSHT0003080　　98
8　84　RSHT0002971　　98
9　85　Title IV Award Notification　99
10　86　RSHT0002999　　104
11　87　RSHT0003081 to 3082　　107
12　88　RSHT0003083 to 3086　　107
13　89　RSHT3087　　108
14　90　RSHT0003107　　108
15　91　RSHT0002995　　109
16　92　RSHT0002947 and 3075　　111
17　93　RSHT0003032 and 3031　　113
18　94　RSHT0003074　　113
19　95　RSHT0002990 and 2989　　114
20　96　RSHT Student Externship Agreement　116
21　97　RSHT0003000　　117
22　98　RSHT0003098　　125
23　99　RSHT Student Obligation Form　127
　　　For Placement Assistance
24
　100　P-000023 to P-000027　　133
25

Electronically signed by Lisa Blair (501-025-348-9548)　　　68835558-aadf-4799-a1bd-2030e665ed4a

Page 5

1    SADE N. BATTLE, a Plaintiff, called
2  by the Defendant, first being duly sworn, testified as
3  follows:
4
5    EXAMINATION BY MR. DEWITT:
6
7    Q.    Ms. Battle, good morning.
8    A.    Good morning.
9    Q.    My name is Alex deWitt, and I'm an
10  attorney, and represent the Richmond School of Health
11  and Technology, Inc. in a lawsuit that's now pending
12  in the U.S. District Court for the Eastern District of
13  Virginia, Richmond Division.  And we're here to take
14  your deposition this morning.  You are a plaintiff in
15  this action, correct?
16   A.    Yes.
17   Q.    Will you state your full name, please?
18   A.    Sade Nannette Battle.
19   Q.    Could you spell your first and middle
20  name, please?
21   A.    S-A-D-E, and my middle is
22  N-A-N-N-E-T-T-E.
23   Q.    And Battle is B-A-T-T-L-E?
24   A.    Yes, sir.
25   Q.    All right.  What's your date of birth,

Page 6

1  ma'am?
2    A.    ████████
3    Q.    And the last four digits of your Social
4  Security number?
5    A.    ███
6    Q.    Ms. Battle, have you given deposition
7  testimony before?
8    A.    No.
9    Q.    Have you testified in court before?
10   A.    No.
11   Q.    Okay.  I'm going to ask you a series of
12  questions today basically related to RSHT and some of
13  the allegations you've made in this lawsuit.  And
14  you're going to be expected to answer the questions as
15  best you can.
16   A.    Okay.
17   Q.    If you don't understand a question,
18  please let me know, and I'm happy to rephrase.
19   A.    Okay.
20   Q.    Otherwise, if you answer, I'll assume
21  that you understood the question.
22   A.    Okay.
23   Q.    This deposition is scheduled to last
24  about three hours.  At any point if you need to take a
25  break, just tell us, and we'll stop and take a break.

Page 7

1    A.    Okay.
2    Q.    Have you reviewed any documents in
3  preparation for this deposition?
4    A.    Yes.
5    Q.    Okay.  What have you reviewed?
6    A.    I guess the papers that I signed relating
7  to the case.
8      MR. SCHLACTUS:  And I'll represent that, as
9  with Ms. Herbert, we likewise showed Ms. Battle the
10  parallel documents that pertain to her.
11   Q.    Okay.  Have you reviewed the second
12  amended class action complaint?
13   A.    I'm not sure.  I reviewed a lot of
14  documents.
15   Q.    Have you reviewed any documents produced
16  by my client, Richmond School of Health and
17  Technology, Inc.?
18   A.    Yes.
19   Q.    And I assume you've reviewed documents
20  relating to you?
21   A.    Yes.
22   Q.    Okay.  Have you reviewed documents
23  relating to anyone else, any other student or former
24  student at RSHT?
25   A.    No.

Page 8

1    Q.    Have you reviewed any declarations signed
2  by former students or faculty of RSHT?
3    A.    No.
4    Q.    Have you talked to anyone other than your
5  attorneys regarding this deposition?
6    A.    No.
7    Q.    Have you talked to anyone other than your
8  attorneys regarding this lawsuit?
9    A.    No.
10   Q.    Have you talked to anyone other than your
11  attorneys regarding any of the allegations in the
12  lawsuit?
13   A.    No.
14   Q.    And just to be clear, in the year 2012,
15  other than your counsel, you've spoken to no one about
16  RSHT or any of the allegations in this lawsuit?
17   A.    No.
18   Q.    Is that the truth for 2011, as well?
19   A.    Yes.
20   Q.    And did you finish attending RSHT in 2010
21  or 2011?
22   A.    I'm not sure.
23   Q.    Okay.  And we'll go through some
24  documents that will probably help refresh your
25  recollection.

Page 21

1    further back would not be relevant to enrollment, and
2    therefore not within the scope of permissible
3    discovery.  But that objection does not go to where
4    she was working when she enrolled or her immediately
5    prior employment.
6            So you can answer as to employment when
7    you enrolled at RSHT or your -- if you weren't
8    employed at that time, your last job before enrolling
9    in RSHT.
10    Q.    I'm pretty sure I don't understand; but
11    go ahead and tell me where were you employed when you
12    enrolled in RSHT?
13    A.    Nowhere.
14    Q.    So you were unemployed at the time of
15    enrollment?
16    A.    Yes.
17    Q.    How long had you been unemployed at the
18    time of enrollment at RSHT?
19    A.    I'm not sure.
20    Q.    What was your -- when were you last
21    employed before RSHT, if you know?
22    A.    Family Dollar.
23    Q.    Family Dollar?
24    A.    Yes.
25    Q.    Were you a cashier?

Page 22

1    A.    Yes.
2    Q.    Just sort of as a general, did you have
3    any prior employment experience relating in any way to
4    community home health, long-term care, or anything you
5    did at Lumzy's or Diversity?
6    A.    No.
7    Q.    And you graduated from high school in --
8    was it 2005 or 2006?  June 2005?
9    A.    Yes.
10    Q.    All right.  When you enrolled at RSHT,
11    did you have -- had you prepared a resumé that you
12    used for purposes of finding employment?
13    A.    I'm not sure.
14    Q.    Okay.  Do you have a resumé today?
15    A.    Yes.
16    Q.    Did you prepare that recently since
17    Lumzy's?
18    A.    I'm not sure.
19    Q.    Okay.  Are you currently looking for
20    employment?
21    A.    No.
22    Q.    Why are you not looking for employment
23    currently?
24    A.    I have four children, and two are in
25    school in elementary.  And so, it's best if, as of

Page 23

1    right now, I stay home.
2    Q.    Do you receive -- how do you support
3    yourself and your children?
4    A.    My fiancé works.  He provides.
5    Q.    Do you receive any type of government
6    assistance?
7    A.    Yes.
8    Q.    Like food stamps?
9    A.    Yes.
10    Q.    TANF?
11    A.    No.
12    Q.    Anything else, any other type of Social
13    Security or any other type of government assistance?
14    A.    Food stamps.
15    Q.    Okay.  How did you learn about RSHT; do
16    you recall?
17    A.    Yes; from a commercial.
18    Q.    Do you remember the commercial?
19    A.    Yes.
20    Q.    Tell me what you remember about the
21    commercial.
22    A.    Did you want me to sing the jingle?
23        (Laughter.)
24    Q.    I've never had somebody sing to me in a
25    deposition, so yes, please.

Page 24

1    A.    R-S-H-T training.
2        MR. SCHLACTUS:  For the record, that was
3    done in perfect pitch.
4        MS. COBB:  Very interested to see how that
5    will look on the transcript.
6        (Laughter.)
7    Q.    Do you remember what channel you were
8    watching?
9    A.    Yes.  Fox.
10    Q.    Do you know the actual channel in the
11    Richmond area?
12    A.    I think at the time before it turned into
13    13, it was 5.
14    Q.    Did you have -- would this have been in
15    2009?
16    A.    Yeah.
17    Q.    Did you have cable?
18    A.    Yes.
19    Q.    Did you see the commercial once, or did
20    you see it more than once; do you recall?
21    A.    More than once.
22    Q.    How many times?
23    A.    I can't remember the exact number.
24    Q.    Did the commercial have a phone number?
25    A.    Yes.

Electronically signed by Lisa Blair (501-025-348-9548)                    68835558-aadf-4799-a1bd-2030e665ed4a

Page 25

1    Q.    Okay.  Did you write the phone number
2    down?
3    A.    Yes.
4    Q.    Did you know anybody at RSHT before you
5    contacted them?
6    A.    No.
7    Q.    Had you reviewed any literature regarding
8    RSHT before you contacted them?
9    A.    No.
10   Q.    Did you do any type of research regarding
11   the program there?
12   A.    No.
13   Q.    Was there anything in the commercial that
14   triggered an interest?
15   A.    The hands-on training.
16   Q.    Did you have an interest at that point in
17   pursuing a certain career?
18   A.    Yes.
19   Q.    Okay.  What was that interest?
20   A.    Nursing.
21   Q.    How long had you had that interest?
22   A.    All my life.
23   Q.    Okay.  Did you have family or --
24   A.    Yes.
25   Q.    -- someone who was a nurse?

Page 26

1    A.    (Indicating in the affirmative).
2    Q.    Is that like a parent or?
3    A.    My entire female -- actually, some males,
4    but everybody is practically in nursing.
5    Q.    All right.  So then sometime in 2009 you
6    picked up the phone and called that phone number?
7    A.    Yes.
8    Q.    Okay.  Do you remember that phone
9    conversation?
10   A.    Yes.
11   Q.    Okay.  Do you remember who you spoke to?
12   A.    Debby Alexander.
13   Q.    And recall for me, as best you can, the
14   details of that phone conversation.
15   A.    She gave some details about the programs
16   that they had, asked me what was I interested in, if I
17   had called other schools, and to set up an appointment
18   so that I could meet and get the tour of the building
19   and the school.
20   Q.    Do you remember any of the details that
21   she provided you regarding the programs?
22   A.    That they had everything from the CNA
23   part of it to actually being the LPN and surgical
24   tech.
25   Q.    Do you remember anything else, any

Page 27

1    specific information that she provided you?
2    A.    Just what her availability was to meet
3    with me.
4    Q.    Okay.  When she asked you what were you
5    interested in, do you remember what you told her?
6    A.    The nursing field.
7    Q.    And when she asked you had you called any
8    other schools, had you?
9    A.    Yes.
10   Q.    Which other schools had you called?
11   A.    I can't remember.
12   Q.    Local area schools in the Richmond area?
13   A.    I don't think they were local.
14   Q.    What about within the state of Virginia?
15   A.    I don't know.
16   Q.    Okay.  And just touching on general
17   matters, do you know, had you called one other school,
18   five other schools?  Do you have any sense as to the
19   number of other inquiries you had made?
20   A.    No; just whoever came on commercial that
21   day on Fox.
22   Q.    Okay.  So there were other schools that
23   were advertising --
24   A.    Right.
25   Q.    -- on Fox?

Page 28

1    A.    Right.
2    Q.    All right.  And did you set up an
3    appointment with Ms. Alexander?
4    A.    Yes.
5    Q.    All right.  And where did you set the
6    appointment up, in Richmond or some other location?
7    A.    Richmond.
8    Q.    And just -- you told me your address
9    before.  Were you living in Richmond city at the time?
10   A.    Yes.
11   Q.    Okay.  How far was your residence from
12   the Richmond campus, approximately?
13   A.    I want to say maybe 10, 15 miles.
14   Q.    And were you -- did you have --
15   A.    No.
16   Q.    -- a vehicle that you could drive?
17   A.    No.
18   Q.    How did you get there?
19   A.    The bus.
20   Q.    And was that your normal mode of
21   transportation at the time?
22   A.    Yes.
23   Q.    And is that your -- is that still your
24   normal mode of transportation today?
25   A.    No.

Electronically signed by Lisa Blair (501-025-348-9548)                    68835558-aadf-4799-a1bd-2030e665ed4a

Page 41

1  did you tell her anything else that you can recall?
2      A.  No.
3      Q.  All right.  You decided to go back to
4  RSHT on October 29, 2009?
5      A.  Yes.
6      Q.  That was your next meeting?
7      A.  Yes.
8      Q.  And when you went back on October 29,
9  2009, who did you meet with?
10      A.  Debby Alexander.
11      Q.  Do you know what her position was at
12  RSHT?
13      A.  I believe it was a recruiter.
14      Q.  Okay.  I'm going to ask you a little bit
15  about this second meeting with her at RSHT.  Had you
16  spoken to anyone else -- and I think you mentioned
17  Mr. Knight?
18      A.  Yes.
19      Q.  During that first meeting you met with
20  Debby Alexander and Mr. Knight and I think you said
21  you spoke to someone -- a receptionist, and maybe saw
22  some instructors during your tour, correct?
23      A.  Yes.
24      Q.  Did you meet with anybody else that you
25  can remember specifically?

Page 42

1      A.  I can't remember.
2      Q.  The second meeting with Debby Alexander
3  on October 29, did you meet with her again in her
4  office?
5      A.  Yes.
6      Q.  Do you have any specific memory of that
7  meeting?
8      A.  Yes.
9      Q.  Okay.  What do you remember about that
10  meeting?
11      A.  We talked about what would be best for
12  me, night classes or morning classes, how would it
13  affect me having childcare on the days that I have
14  visitation.  We --
15      Q.  And just so I understand -- I don't want
16  to get too far --
17      MR. SCHLACTUS:  Were you done answering
18  or --
19      A.  Yes.
20      MR. SCHLACTUS:  -- was there more you
21  remembered about that?
22      A.  Yes, I was done.
23      Q.  Excuse me.  I don't want to cut you off.
24  I assumed you had finished your response.
25      I want to just understand generally your

Page 43

1  situation at the time with the visitation.  There were
2  certain days of the week that you could visit with one
3  or more of your children?
4      A.  Yes.
5      Q.  And then the father had certain days?
6      A.  Yes.
7      Q.  So you had to -- you were conveying to
8  Ms. Alexander that you had a certain schedule you were
9  trying to work around?
10      A.  Yes.
11      Q.  And did you decide whether, based on your
12  circumstances, a day program or an evening program was
13  more suitable or more workable?
14      A.  That day, or are you asking towards the
15  end of --
16      Q.  That day, I'm interested in what you-all
17  discussed that day?
18      A.  I can't remember.
19      Q.  Okay.  You just remember that you-all
20  talked about day versus night classes generally?
21      A.  Yes.
22      Q.  Anything else that you remember?
23      A.  Outside of the transportation, that was
24  about it.
25      Q.  What do you recall about transportation?

Page 44

1  Was that a subject of conversation?
2      A.  Yes.
3      Q.  On October 29th?
4      A.  Yes.  I mean, throughout all of our
5  conversations.
6      Q.  And I'm just wondering about your memory
7  of this specific conversation with Ms. Alexander, did
8  you-all discuss transportation?
9      A.  I can't remember exactly.
10      Q.  Okay.
11      MR. SCHLACTUS:  I was going to say, if you
12  can distinguish between the conversations like
13  Mr. deWitt is asking you.
14      Q.  Other than having a general conversation
15  about night classes versus day classes, do you have
16  any specific recollection as to what you and
17  Ms. Alexander discussed during this meeting?
18      A.  No.
19      Q.  Okay.  And then, of course, that day you
20  signed your enrollment agreement, correct?
21      A.  Yes.
22      Q.  So when you came to RSHT campus, you had
23  decided you were going to enroll, correct?
24      A.  Yes.
25      Q.  Do you recall, other than the enrollment

11 (Pages 41 to 44)

Page 69

```
1        Q.    So you were dealing with some uncertainty
2    in your life for the balance of the year --
3        A.    Right.
4        Q.    -- with the custody issue?  And did that
5    continue into 2010, January/February time frame?
6        A.    I can't recall.
7        Q.    All right.  Do you recall in January or
8    February whether you went back to RSHT?
9        A.    I can't recall.
10            (Exhibit Number 70 was marked for
11    identification).
12       Q.    Okay.  I'm going to show you some
13   documents.  This might help you jog your memory.  This
14   will be the next exhibit.  The next document is marked
15   Exhibit 70.  Does this look familiar?
16       A.    Yes.
17       Q.    This is an RSHT enrollment agreement,
18   correct?
19       A.    Like the fifth, yes.
20       Q.    Is this an agreement that you filled in
21   and signed?
22       A.    Yes, that looks like my handwriting.
23       Q.    Okay.  The same thing on the second page?
24       A.    Yes.
25       Q.    Are those your initials?
```

Page 70

```
1        A.    Yes.
2        Q.    You filled in and signed this document on
3    March 11, 2010; is that correct?
4        A.    Yes.
5        Q.    Okay.  Were you at RSHT when you prepared
6    this document?
7        A.    Yes.
8        Q.    Prior to March 11, 2010, had you been
9    back to RSHT?
10       A.    I can't remember.
11       Q.    Okay.  Prior to -- now we're into 2010,
12   only from January 1 of '10 up to this date, March 11.
13   Had you talked to anybody at RSHT?
14       A.    Just Debby Alexander.
15       Q.    Do you have a specific memory of talking
16   to Debby Alexander at any point between January 1 and
17   March 11, 2010?
18       A.    Her conversations were -- our
19   conversations were pretty much the same.  Just, you
20   know, what was my hesitation?  Me going to school with
21   court, the custody, they could write letters, you
22   know, whatever they had to do to help me get to, you
23   know, where I needed to be.  You know, guarantee jobs.
24   You know, it was just basically selling the programs.
25
```

Page 71

```
1        Q.    Do you have any specific memory of a
2    conversation with her in 2010 before signing this
3    document?
4        A.    Yes; about making the appointment to come
5    and finish what programs that they have available that
6    could best suit me.
7        Q.    And what did you-all discuss?  What
8    programs did they have that would suit you?  Did
9    you-all discuss the CHH program?
10       A.    Yes.
11       Q.    And I'm interested in specific
12   recollection during this period.  Do you have any
13   specific recollection of your conversation with
14   Ms. Alexander regarding the CHH program?
15       A.    Yes.
16       Q.    What is that recollection?
17       A.    That one thing that really appealed to me
18   is the fact that I would be making between 16 to 20 an
19   hour, that I would, you know, be certified.  She did
20   explain that it was a new program that they were
21   working on.  So all of the kinks had not been really
22   worked out yet.  For instance, they didn't know where
23   our graduation was going to be held at, but there
24   would be a graduation ceremony after completing the
25   program.  And the fact that I could work -- go ahead
```

Page 72

```
1    and start working, that I would be hired in a CNA
2    because of the length of experience and the hands-on
3    training.  She also explained to me about the
4    externship, how all of that will fit my needs as far
5    as with the transportation and the child care.
6        Q.    Did you-all discuss a specific place
7    where you were going to do an externship?
8        A.    No.
9        Q.    And this is during a phone conversation?
10       A.    No.
11       Q.    I was asking about -- did you meet with
12   Ms. Alexander between January 1 and March 11?
13       A.    No.
14       Q.    Okay.  Did you have a phone conversation
15   with Ms. Alexander between January 1 and March 11?
16       A.    Yes.  In between me actually starting and
17   from initially meeting her, we had a lot of phone
18   conversations.
19       Q.    Okay.  And that's what I was curious
20   about, asking you about.  Do you have any specific
21   memory regarding a specific conversation with her
22   during that time frame, January 1 to March 11?
23       A.    I don't know the specific time frames,
24   but I know during that time from when I actually
25   enrolled and actually took a class, we talked a lot.
```

18  (Pages 69 to 72)

Page 73

1    Q.   Okay.  Did you actually enroll at any
2  time prior to March 11, 2010 in the CHH program?
3    A.   No.
4    Q.   So that's just the window.  We're going
5  to move forward after March 11?
6    A.   Okay.
7    Q.   During the window of time, January 1 to
8  March 11, do you have a specific memory regarding a
9  specific conversation with Deborah Alexander?
10    MR. SCHLACTUS:  As best as you can remember
11  as to those specific dates, if you can.
12    MR. DEWITT:  During the January 1 to March
13  11 time frame.
14    A.   Yes.  I know she called me and we set up
15  another meeting for me to come in, and just asked me,
16  like I said, what my hesitations were, and explained
17  the program and what they could do to help me through
18  the custody situation that I was going through.
19    Q.   Do you have any other specific
20  recollection of what you-all discussed?
21    A.   I guess about her writing a letter to
22  court saying I was enrolled, some of the services that
23  they offered, like the job placement, how they could,
24  you know, help me get a job, and how even with my
25  externship a lot of people get hired during the

Page 74

1  externship.  If I, you know, go in there with my best,
2  they will, you know, retain me there.  That type of
3  thing.
4    Q.   Did you discuss anything else?  This is
5  during a phone conversation between January 1 and
6  March 11, 2010?
7    A.   No.
8    Q.   Other than Debby Alexander that same time
9  frame, did you speak to anybody else at RSHT?
10    A.   No.
11    Q.   Mr. Knight or anybody else?
12    A.   No.
13    Q.   And was this one phone conversation you
14  had with Ms. Alexander during that January 1 to March
15  11 time frame?
16    A.   She followed up very frequently.
17    Q.   Other than what you've described to me,
18  talking about the custody issue with your scheduling,
19  and writing a letter confirming that you were a
20  student at RSHT, and job placement, the externships,
21  do you recall whether you had any other specific
22  conversations with Ms. Alexander during that time
23  frame regarding any topic?
24    A.   No.
25    Q.   All right.  You then decided on March

Page 75

1  11 -- excuse me.  You said you set up -- did you set
2  an appointment up with Ms. Alexander?
3    A.   Yes.
4    Q.   And did you-all decide on March 11?
5    A.   Yes.
6    Q.   Okay.  Do you recall going to RSHT on
7  March 11, 2010?
8    A.   Yes.
9    Q.   Did you meet with Ms. Alexander?
10    A.   Yes.
11    Q.   Was Exhibit 70 one of the documents that
12  you prepared and signed while you were meeting with
13  Ms. Alexander?
14    A.   Yes.
15    Q.   Do you have a recollection as to your
16  conversation with Ms. Alexander that day?
17    A.   Yes.
18    Q.   What do you remember?
19    A.   Just she really reiterated the promises
20  that she gave about the certifications.  She was
21  adamant that this was a quick way for me to get in the
22  working field, and I can always come back to RSHT
23  because they could help me go further.  You know, the
24  next step would be the LPN program.  They always, you
25  know, will be able to be flexible towards my schedule

Page 76

1  with the transportation needs, and, you know, the
2  child care.  So this was a quick way to get me back on
3  my feet to start me into the nursing field.  So she
4  was just saying it was just a stepping block to get me
5  to where I needed to be.
6    Q.   Anything else?
7    A.   She just basically elaborated on what the
8  community home health has to offer.
9    Q.   Did she show you any documents?
10    MR. SCHLACTUS:  I'm not sure she was done
11  answering that question.
12    A.   Just, you know, what they had to offer.
13  Just -- you know, I guess just the promises with
14  helping me find jobs.  You know, I believe that day
15  she gave me the letter to take to court basically
16  saying that I was enrolled and what my classes would
17  be.
18    (Exhibit Number 71 was marked for
19  identification).
20    Q.   I'm going to show you another document.
21  Is Exhibit 71 the letter you were just referring to?
22    A.   No.
23    Q.   Okay.  Is this a letter that you received
24  from RSHT?
25    A.   I don't recall.

19 (Pages 73 to 76)

Page 117

1      A.    No, we didn't.  All the paperwork that I
2  did with Ms. Wood, we never went through it to, you
3  know, say:  This is doing this.  We didn't do it that
4  way.  It was basically giving an overall summary of
5  what it means and signing a sheet of paper.
6      Q.    Did you ask any questions?
7      A.    No.
8            (Exhibit Number 97 was marked for
9  identification.)
10     Q.    Exhibit 97, have you ever seen this
11  before?
12     A.    No.
13     Q.    Do you know who Debra Allen is?  Do you
14  recognize that name?
15     A.    No.
16     Q.    Okay.  Did you withdraw from the CHH
17  program on May 26, 2011?
18     A.    No.
19     Q.    Did you withdraw from the program before
20  graduating?
21     A.    No.
22     Q.    Did you graduate?
23     A.    No.
24     Q.    Are you still a student there?
25     A.    No.

Page 118

1      Q.    Did you stop being a student there?
2      A.    Yes.
3      Q.    This document, there's a comment section.
4  It says, Did not go to externship.  Stated no
5  transportation.
6            Were there issues with transportation to
7  an externship?
8      A.    At that time I still did not have a
9  vehicle.  When we set up for the externship, and
10  initially when I talked to Debbie Alexander, I was
11  told that my schedule, child care, would still be
12  taken into effect when I do scheduling for anything --
13  whether it was classes, job search -- all of that
14  would be taken into consideration.
15           When Ms. Wood initially started doing the
16  paperwork after we graduated, I know a little bit
17  before our last class she started calling people I
18  guess to get the information of what we needed,
19  whatever information they needed to start the
20  externship.  Again, you know, she just said there were
21  several places that they did work with.  I believe
22  there was a couple of places in Richmond, one in
23  Chesterfield, and one in Petersburg, if I'm not
24  mistaken.  And she just -- you know, was there any
25  specific requirements that I needed?  And basically

Page 119

1  transportation and making sure it was a lengthy period
2  of time at that time.
3            In between actually when we started the
4  externship and actually our last day of school, I
5  guess something happened with whoever they partnered
6  with, were no longer partnering with them.  And so, I
7  guess she had to find us places to be put, to be
8  placed.  So initially when she did set up the
9  externship, I had found work with Diversity.
10     Q.    Okay.
11     A.    And so, at that point, to complete the
12  externship, she wanted me to report either the next
13  day or the day after.  There wasn't a lengthy period
14  of time where I could give my job notice -- which I
15  had just got hired in a probation period.  And then
16  also, she explained to me that it was in Petersburg,
17  way out in Petersburg.  She had gave the Richmond
18  location to two other students which had
19  transportation, but I guess because they were mother
20  and daughter and each other was, you know, their
21  transportation, so that they could go to the place
22  together.  And so, I needed to find transportation,
23  and I needed to be reporting there Friday.  She
24  already told them that I was coming.  There was no
25  leeway.  And if not, then I would be considered

Page 120

1  withdrawn.  And when I was able to do so, I would
2  again have to pay the $85 again.  And at that time --
3  for the re-entry fee -- and at that time I think that
4  would have been my third time paying that $85.  So --
5      Q.    All right.  Are you done?
6      A.    Yeah.
7      Q.    I don't want to interrupt you.
8            All right.  You mentioned earlier, "after
9  we graduated."  You didn't graduate, did you?
10     A.    No.  I'm sorry.  After we completed the
11  classroom part of it.
12     Q.    The classwork?
13     A.    Right.
14     Q.    And then at some point -- you don't
15  recall the specific month in 2011 -- but somewhere in
16  there you applied and obtained employment with
17  Diversity?
18     A.    Yes.
19     Q.    Okay.  How did you -- was Diversity a
20  location where you could take the bus and get there?
21     A.    No.
22     Q.    How were you going to get to Diversity?
23     A.    My dad also worked for them cleaning
24  and -- cleaning, power washing their houses and
25  cleaning their vehicles.  And so, by my dad already

Page 121

1    employed there, he was able to get me on there,
2    because during that time I was no longer living in
3    Jackson Ward.  We had a home.  And so, it wasn't based
4    on my income at that point.
5        Q.   So you got a ride with your father?
6        A.   Right.
7        Q.   Okay.  And you said you were in
8    probation.  What were your hours at Diversity at that
9    point?
10       A.   The 3 to 10 or 3 to 11.
11       Q.   3 to 11 every day of the week, or how did
12   that work?
13       A.   I believe I started Sunday, Monday,
14   Tuesday, Wednesday, and I later went to Thursday,
15   Friday, Saturday, Sunday.
16       Q.   Okay.  And you mentioned -- so there was
17   an externship with a location in Petersburg?
18       A.   Yes.
19       Q.   Do you remember the name of the location?
20       A.   I don't remember.
21       Q.   Okay.  Did you -- do you know what the
22   proposed hours were in Petersburg?
23       A.   I asked Ms. Wood, and she explained to me
24   that it was an indefinite time for I believe it was
25   two weeks, Monday through Friday.  And it would just

Page 122

1    be -- I guess she said to report there between like
2    7:30, 8:00.  And it wouldn't even -- I didn't know
3    when it would end.  So it wasn't guaranteed I would be
4    able to be off and go to work at 3.
5        Q.   So you were supposed to start at 7:30, 8
6    in the morning, report there?
7        A.   Right.
8        Q.   Did you report there at 7:30 to 8 in the
9    morning?
10       A.   No, sir.
11       Q.   Did you look for transportation to get
12   down there at 7:30 or 8 in the morning?
13       A.   No.
14       Q.   You continued to work at Diversity?
15       A.   Yes.
16       Q.   And is there a reason why you applied for
17   the job at Diversity?  Were you looking for a job so
18   you could earn money?
19       A.   Yes.  That, and they had just recently --
20   had told us that the program was -- I think initially
21   they said it was a six-week program, and then we had
22   to complete a two-week externship with the new school
23   that was supposedly actually certified with the CNA.
24   And so, it just seemed like the program was getting
25   longer and longer.  Initially, that's what me and

Page 123

1    Debby talked about, about the fact that I didn't want
2    a lengthy, you know, class or course.
3        Q.   Okay.  So the idea -- if you had done the
4    externship, the proposal was to complete the
5    externship and then sit for a CNA exam?
6        A.   Right.  But I wouldn't be able to go for
7    the -- no, not for the CNA exam; go to a whole
8    nother school to take their CNA course, and then take
9    the CNA exam with their school; in addition, I guess,
10   to the eight or ten-month program that RSHT had.
11       Q.   All right.  Was Selena Higgins your
12   teacher --
13       A.   Yes.
14       Q.   -- for each of the classes you took in
15   the CHH program?
16       A.   Yes.
17       Q.   So you decided not to complete the
18   program, and not to participate in the externship?
19       A.   No.  Actually, I didn't have a choice.
20       Q.   As you testified, you didn't go to -- you
21   didn't show up at 7:30 or 8 in the morning for the
22   first day of the externship, correct?
23       A.   No.  I mean, I didn't have a way to get
24   to Petersburg.  I didn't have a ride.  There was
25   nobody that would be willing to take me to Petersburg

Page 124

1    7:30, 8 in the morning, and then make it to their job
2    7:30, 8 in the morning, and then pick me up; and in an
3    indefinite time to say I'm finished.  I'm not
4    finished.  Didn't know what to tell my job.  So, I
5    mean, it wasn't even a choice of whether or not I
6    could go.
7        Q.   And you testified earlier you didn't look
8    into a way -- look into transportation to Petersburg,
9    right?
10       A.   Yeah, because there was nobody I could
11   call.
12       Q.   You didn't call a taxi?
13       A.   And pay to go to Petersburg?  No.
14            MR. SCHLACTUS:  Just answer his question.
15       Q.   You didn't ask for a ride -- or look at
16   school to see if there was anybody in the Petersburg
17   area who might give you a ride?
18       A.   I didn't know anybody in Petersburg.
19       Q.   Did you ask?
20       A.   Ask who?
21       Q.   Somebody at RSHT if there was a way to
22   get a ride to Petersburg?
23       A.   I talked to Ms. Wood about me not having
24   transportation.  And she said that was my only option,
25   was to go to Petersburg.  So nothing was offered once

31 (Pages 121 to 124)

Page 125

1    she knew I didn't have transportation.
2        Q.    The question was did you ask?
3        A.    No.
4            (Exhibit Number 98 was marked for
5    identification).
6        Q.    Okay.  Thank you.  I'll show you another
7    document marked 98.
8            MR. SCHLACTUS:  The Bates numbers on this
9    are not entirely sequential.  I just wanted to make
10   sure that was intentional.
11           MR. DEWITT:  Let me look at it.
12           MR. SCHLACTUS:  Yeah, it just skips a couple
13   after the first page.
14           MR. DEWITT:  We'll take a break and I'll
15   look at it.
16           MR. SCHLACTUS:  Sure.
17       Q.    Go ahead and look at it and just tell me
18   if that looks familiar.
19       A.    No.
20           MR. SCHLACTUS:  Did you look at the whole
21   thing before you answered?
22       A.    Yes.
23       Q.    Any of those pages look familiar?
24       A.    No.
25       Q.    You don't recall receiving that document

Page 126

1    or any of the documents in that exhibit?
2        A.    No.
3        Q.    You're not denying that you didn't
4    receive it; you just have no recollection?
5        A.    No.  I'm saying I didn't do an exit
6    interview or anything with them after the externship
7    conversation with Ms. Wood when she called --
8        Q.    Okay.
9        A.    -- and basically said if I wasn't there
10   by the next day, that I would no longer I guess be
11   withdrawn or no longer be there -- be a student for
12   RSHT.  After that, we no longer met after that.
13           MR. SCHLACTUS:  I think he was just asking
14   if you remembered receiving the document.
15       Q.    That's all I was asking.
16       A.    I mean, yeah, there was nothing
17   exchanged.  No one gave me anything after that.
18       Q.    Really, I'm just trying to find out:  Do
19   you have any memory today as to whether or not you
20   received this letter or any of the documents in this
21   exhibit?
22       A.    No, I didn't.
23       Q.    You did not receive it?
24       A.    I did not receive it.
25

Page 127

1            (Exhibit Number 99 was marked for
2    identification.
3        Q.    Okay.  You produced in discovery some
4    documents I'm going to show you.  We've marked Exhibit
5    99.  Have you seen these before?
6        A.    I don't remember.
7        Q.    And do you recall how these documents
8    came into your possession?
9        A.    No, I don't.
10           MR. SCHLACTUS:  She answered before I had a
11   chance to object on foundation.
12       Q.    Yes.  Did these documents come into your
13   possession at some point?  Trying to find out how they
14   made their way to your counsel.  Did you have them in
15   your files or in a folder?
16       A.    I don't remember the document, period.
17       Q.    You just don't know one way or the
18   other --
19       A.    Yeah.
20       Q.    -- where they came from, or anything?
21       A.    Yeah.  I don't remember.
22       Q.    After you stopped participating in the
23   CHH program, did you have any contact with anyone at
24   RSHT?
25       A.    No.

Page 128

1        Q.    You did not re-enroll at RSHT, correct?
2        A.    No.
3        Q.    You didn't transfer to -- be more
4    specific.  You did not re-enroll in the CHH program,
5    correct?
6        A.    No.
7        Q.    You didn't transfer to a different
8    program?
9        A.    No.
10       Q.    You did not graduate?
11       A.    No.
12       Q.    You didn't ask RSHT for placement
13   assistance?
14       A.    No.
15       Q.    Okay.  This lawsuit was filed in June
16   2011, correct?
17       A.    I can't remember the exact date.
18       Q.    Had you sought the assistance of counsel
19   while you were still attending RSHT?
20       A.    Yes.
21       Q.    Just note here I'm not asking for any
22   communications that you had with counsel.  I'm just
23   asking did you seek advice or assistance of counsel
24   before you stopped the CHH program?
25       A.    Yes.

Page 129

```
 1      Q.    Do you remember when?
 2      A.    I don't remember when.
 3      Q.    Were you still taking a class when you
 4  sought assistance of counsel?
 5      A.    Yes.
 6      Q.    Did you seek assistance of counsel with
 7  any of your classmates?
 8      MR. SCHLACTUS:  Actually, if I can confer
 9  with her for a moment just to see if there's a
10  question of privilege.
11      MR. DEWITT:  I don't want to get into
12  privilege.
13          (Whereupon, a recess was taken).
14      MR. DEWITT:  Could you read back the last
15  question?
16      COURT REPORTER:  "Did you seek assistance of
17  counsel with any of your classmates?"
18      A.    Yes.
19      Q.    Who?
20      MR. SCHLACTUS:  Could I just ask you to
21  clarify if that was "who" as to counsel or "who" as to
22  classmates?
23      MR. DEWITT:  Classmates.
24      MR. SCHLACTUS:  And you can answer that.
25      A.    I guess everyone in the class.
```

Page 130

```
 1      Q.    When you say "I guess everyone in the
 2  class?"
 3      A.    I don't guess.  The whole class.
 4      Q.    Can you give me names?
 5      A.    I know Billy, Mary -- I think there were
 6  two Marys -- Grace, Monique.  There was a lot of us.
 7  I can't remember.
 8      Q.    Anybody else?
 9      A.    I'm sorry.  I can remember faces, but I
10  can't remember names.
11      Q.    That's fine.  And each of you were still
12  doing classwork or participating in class at the time
13  you --
14      A.    Yes.
15      Q.    -- decided to seek counsel?
16      A.    Yes.
17      Q.    Was this in 2011?
18      A.    I believe it was in 2010 initially, I
19  guess when we found out we weren't going to be
20  certified.
21      Q.    So I think you testified that was before
22  you withdrew?
23      A.    Yes.
24      Q.    So this would go all the way back to July
25  2010?
```

Page 131

```
 1      A.    Yes.
 2      MR. SCHLACTUS:  Objection as to ambiguity,
 3  because there were two withdrawals.  Which one were
 4  you referring to?
 5      MR. DEWITT:  The initial withdrawal.
 6      Q.    We've already established that you --
 7      A.    Yes.
 8      Q.    -- consulted counsel prior to withdrawing
 9  from CHH --
10      A.    Right.
11      Q.    -- completely.
12          I thought I understood your response
13  before that you and your classmates sought assistance
14  of counsel in 2010 when you learned about the issue of
15  the certification; is that correct?
16      A.    Yes.
17      Q.    And that would have been in the June/July
18  2010 time frame?
19      A.    Yes.
20      Q.    And did you seek counsel at that point?
21      You mean did we look for people?
22      Q.    Did you contact an attorney at that
23  point?
24      A.    Yes.
25      Q.    Did you contact your current attorneys at
```

Page 132

```
 1  that point?
 2      A.    No.
 3      Q.    Did you contact someone locally?
 4      A.    I can't remember.
 5      Q.    Did you meet with an attorney?
 6      A.    No.
 7      Q.    Did you talk to somebody on the phone?
 8      A.    No.
 9      Q.    Did one of your other classmates talk to
10  somebody on the phone?
11      A.    Yes.
12      Q.    Do you know who -- which person talked to
13  somebody on the phone?
14      MR. SCHLACTUS:  Let me -- putting aside
15  privilege for the moment, I also want to object that
16  this is outside the scope of permissible discovery
17  under the judge's order.
18      MR. DEWITT:  Yeah, I think I'm going to -- I
19  just -- I can't remember how we got into this.  I
20  didn't mean to go too far.
21      Q.    Very good.  The last question on the --
22  after you and your classmates started looking for
23  counsel, did anybody say anything -- did you tell RSHT
24  or any employee at RSHT that you were looking for
25  counsel --
```

Page 145

1    Q.    Since you left RSHT, have you made
2    application for employment anywhere else?
3    A.    I can't remember all the applications
4    that I put out.  I know those are the two places that
5    I got hired after that.
6    Q.    You don't have any specific recollection
7    of -- so you did apply at other places?
8    A.    I can't remember.  I mean, I know I went
9    to several job fairs during that time.
10   Q.    Okay.  Job fairs in the Richmond area?
11   A.    The surrounding areas.  It wasn't limited
12   to Richmond.
13   Q.    You don't remember any specific
14   employment applications, though, other than Diversity
15   and Lumzy's?
16   A.    Not specific.  I stayed online all the
17   time.
18   Q.    Were they generally in the same type of
19   community home health or long-term care?
20   A.    No.
21   Q.    What other types of positions did you
22   apply for?
23   A.    Customer service.
24   Q.    Any other type of position?
25   A.    No.  Oh, yes, I'm sorry.  Banking.

Page 146

1    Q.    Did you have any interviews with any of
2    those other prospective employers?
3    A.    I can't remember.
4    Q.    Do you remember what either the customer
5    service or banking jobs were proposing to pay?
6    A.    I can't remember.
7    MR. DEWITT:  All right.  I just want to
8    reserve -- we're going to just I think agree to
9    disagree on whether I can ask about current -- whether
10   or not you have current healthcare providers or
11   doctors treating you for your alleged emotional or
12   mental distress, and reserve the right to obtain a
13   court ruling on that question.  Subject to that, that
14   concludes my examination.  I don't know if your lawyer
15   has any follow-up questions.
16   MR. SCHLACTUS:  I think I just have one.
17   MR. DEWITT:  Okay.
18
19   EXAMINATION BY MR. SCHLACTUS:
20
21   Q.    Ms. Battle, I believe you testified near
22   the beginning of the deposition that when you were
23   taken on a tour of RSHT before you started going to
24   school there, the lab was in -- that the lab was
25   perfect?

Page 147

1    A.    Yeah.
2    Q.    You did say that before, right?
3    A.    Yes.
4    Q.    Did it stay that way throughout your time
5    as a student at RSHT?
6    A.    No.
7    Q.    Can you explain what changed?
8    A.    The sheets disappeared.  I guess the
9    tools and things that were in place as far as
10   catheters, the diapers to actually change -- or
11   pullups -- bedpans, cotton swabs, I don't know, things
12   started I guess disappearing.  So me actually going
13   into the lab, a lot of the things that I saw initially
14   wasn't there afterwards.
15   Q.    Did that make it difficult for you to
16   learn what you felt you were there to learn?
17   A.    Yes.
18   MR. SCHLACTUS:  Nothing else.
19   MR. DEWITT:  No further questions.
20   MR. SCHLACTUS:  We will read and sign.
21
22   AND FURTHER THIS DEPONENT SAITH NOT
23        (The deposition concluded at 12:25 p.m.)
24
25

Page 148

1    COMMONWEALTH OF VIRGINIA,
2    CITY OF RICHMOND, to wit:
3
4         I, Lisa M. Blair, a Notary Public
5    for the State of Virginia at Large, do hereby certify
6    that the foregoing deposition of SADE N. BATTLE was
7    duly sworn to before me at the time and place set out
8    in the caption hereto.
9         Further, that the transcript of
10   the deposition is true and correct, and that there
11   were 41 exhibits (Numbered 59 through 100) filed with
12   me during the taking hereof.
13        Given under my hand this 16th
14   day of September, 2012.
15
16
17   _____
     Lisa M. Blair, RPR
     Notary Public for the
18   State of Virginia at Large
19
20   My Commission expires:
     October 31, 2012
21   Notary registration #:  253150
22
23
24
25

37 (Pages 145 to 148)

# BATTLE DEPOSITION

# EXHIBIT 60



**RSHT**
1601 Willow Lawn Drive
SUITE 320
Richmond VA 23230
(804) 288-1000  FAX:(804)288-1006

**Application for Admission**

MA DAY 11-23-09

OFFICE USE ONLY

Start Date 3-22-10
Adm Code 060009

Name Sade' n. Battle



Saae n Battle

Home He

Applicant's Signature

10/21/09

Date

Form 102   cf revised 10.5.09

RSHT-Richmond is certified to operate in Virginia by the State Council of Higher Education for Virginia

**RSHTBATTLE,S0003**

EXHIBIT
60
9-14-12 YB

**RSHT0002946**

# BATTLE DEPOSITION

# EXHIBIT 61

# RSHT
### ENROLLMENT AGREEMENT

☐ Main Campus:
1601 Willow Lawn Drive, Suite 320
Richmond, VA  23230

Branch Campus: ☐
751 West Hundred Road
Chester, VA  23836

Name: _SADE'   N.   BATTLE_   SSN: ██████████████████

   First          MI                    Last

Address: ███████████████████████   Birth date: ██████████████

City _RICHMOND._   State _23220_ _VA_   Zip Code: _23220._

Telephone ███████████████   Email _____

As the above-named applicant, I hereby agree to be enrolled in the _MEDICAL  ASSISTANT_
program which is _70_ weeks of instructional time.  Classes are scheduled to begin on _1-11-2010_
and end on _5-26-2011_.  Classes meet _Mon-Fri_ from _8:30_ to _5:30._

Total tuition of $ _19,260.00_ a non-refundable application fee of $ _75.00_.  Should I have to repeat
a course, I will be charged a *per credit hour* fee of $ _330.00_ for didactic and per credit hour fee of
$ _180.00_ for clinical externship.  I hereby acknowledge payment of a deposit of $ _75.00_.
leaving a balance due to the institution of $ _19,260.00_.

I hereby agree to all provisions of this Enrollment Agreement, and understand that I have agreed to accept a place
in the class described above and agree to pay to RSHT all fees according to the terms and conditions contained
herein.  Furthermore, I acknowledge that I have read, fully understand, and received a copy of this agreement.

I understand that this agreement becomes a legally binding instrument upon the school's written acceptance of my
application, unless cancelled by me pursuant to the refund policy contained within this agreement.

Student Signature: _Sadé'NBattle_   Date: _10/29/2009_

Grantor's Signature: _R. Alexander_   Date: _10/29/09_

**Note:  Please read and initial the statements on the back of this sheet.**

EXHIBIT
PENGAD 800-631-6989
61
9-14-12 CB

RSHT is certified to operate in Virginia by the State Council of Higher Education for Virginia

Form # 105    Revised  ct 8.20.09

**RSHTBATTLE,S0064**

**RSHT0003007**

**Attendance:**

Attendance is required at all scheduled classes.  If in an emergency an absence becomes necessary, the student must notify the school prior to the beginning of the schedule class.  Students with seven consecutive absences or total absences exceeding 20% of their scheduled classes will be withdrawn from the program.  Refer to the School Catalog and Student Handbook for further details.

Initials _SB_

**Cancellation and Refund Policy:**

If an applicant cancels this agreement no later than the third business day after the date of this agreement, a full refund will be made minus the non-refundable application fee. The application fee for all programs is $75.00.If a class is cancelled by the school, all monies will be refunded.

All students will be charged a non-refundable application fee in addition to the tuition charges as specified below.  The portion of the program completed will be determined by the number of weeks attended.  Any portion of a week's attendance will be considered a full week for the purpose of the refund calculation.

1.  If a student does not begin classes, no more than $100.00 of the tuition paid will be retained by the school.

2.  A student who enters school but withdraws prior to completing the first 25% of the period charged will be assessed 50% of the tuition charges for the period.

3.  A student, who withdraws after completing the first 25%, but prior to completing 50% of the period charged, will be assessed 75% of the tuition charges for the period.

4.  A student who withdraws after completing half, or more than half, of the period charged is assessed 100% of the tuition charges for the period.

Refunds are made within 30 days of the cancellation date or date of withdrawal.

Initials _____

**Standards:**

Students are required to abide by the proper standards for dress and conduct while in attendance at all classes and externship training.  Profanity, disorderly conduct, or other action which, in the opinion of the school is disruptive, will not be tolerated and will be grounds for dismissal form the program.

Initials _SB_

**Placement:**

Each graduate may avail him or herself of the school's job placement assistance program.  RSHT DOES NOT GUARANTEE EMPLOYMENT.  However, every effort will be made to assist the graduate in obtaining employment.  There is no charge for this service.

Initials _____

RSHT reserves the right to make changes to the program start date, content, schedule, and/or training hours as deemed necessary.

Initials _____

**Conditions of Agreement:**

This constitutes the entire agreement between the applicant and the school, and no other promise or agreement, expressed or implied, has been made either orally or in writing.  Should the student fail to meet the terms of his/her financial obligations contained in this agreement, the school reserves the right to add to this agreement a reasonable amount for collection costs incurred including, but not limited to, collection agency fees, attorney fees of 33.3%, court costs, etc.

Initials _____

Form # 105     Revised  ct 8.20.09

RSHT is certified to operate in Virginia by the State Council of Higher Education for Virginia

RSHTBATTLE,S0065                                      RSHT0003008

# BATTLE DEPOSITION

# EXHIBIT 62

## Entrance Interview

**Borrower Information** (Please Print Clearly)
Name: **Sade Battle**



Form 410 revised ct 6/9/09





Student Signature _Sade'n Battle_   Date _11 | 18 | 2009_

School Official Signature _C. Knight_   Date _11 | 18 | 09_

Form 410 revised ct 6/9/09

# BATTLE DEPOSITION
# EXHIBIT 63

<u>Entrance Counseling Requirements</u>:





Form 449 ct 6/10/09



Sade' n Battle
_____
Student's Name Printed

Sade' n Battle
_____
Student's Signature

R. Knight J
_____
Financial Aid Signature

_____
Social Security Number

11 | 18 | 2009
_____
Date

11 / 18 / 09
_____
Date

Form 449 ct 6/10/09

**RSHT0003058**

# BATTLE DEPOSITION

# EXHIBIT 65

TUITION WORKSHEET

Student Name: _Sade Battle_              Social Security Number: ███████

Program: _MA/AM_                         Start Date: _1/1/10_



Student Signature: _Sade N Battle_

Date: _11/18/2009_

Financing Department Signature: _C. Knight, Jr_

Date: _11/18/09_

**RSHTBATTLE,S0087**

**RSHT0003030**

EXHIBIT
65
9-14-12 KB

# BATTLE DEPOSITION

# EXHIBIT 68

*MA/AM 1/11/10*

## RSHT —INSTALLMENT NOTE AND DISCLOSURE STATEMENT

Date *11/18/09*

As payment for tuition at RSHT  in (City, State) *Richmond, VA.*

I promise to pay to the school or order, the sum of $ *720.00* _____ (includes principal and interest)

As follows: *18* installments of $ *40.00* beginning on (date) *1/11/10*

All subsequent installments shall be payable on the same day of each consecutive month thereafter until paid in full.

This note is subject to the terms and conditions contained in the Enrollment Agreement and the "Disclosure Statement," which are incorporated herein by reference as though set forth in full.  Should default be made in any payment when due, the whole sum of principal and interest shall immediately become due and payable at the option of the holder of this Note.  Principal and interest payable in lawful money of the United States.  If action is instituted on this Note, I promise to pay such sum as the court may fix as attorney's fees and court costs.

By signing below, Buyer and Co-Buyer (where applicable) acknowledge receipt of a complete and true copy of this Installment Note and jointly and severally agree to all of the terms and conditions.

| Buyer Sign Here | *Jaeli' n Battle* | Co-Buyer Sign Here | |
|---|---|---|---|
| Print Name | *Jade N. Battle* | Print Name | |
| Address | ███████ | Address | |
| City *Richmond* | State *VA.* Zip *23220* | City | State____ Zip____ |
| Home Tel ███████ | Work Tel. (___) | Home Tel. (___) | Work Tel. (___) |
| Social Security No. | ███████ | Social Security No. | |

### DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE: The cost of your credit as a yearly rate. | FINANCE CHARGE: The dollar amount the Credit will cost you. | AMOUNT FINANCED: The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS: The amount you will have paid after you have made all payments as scheduled. | TOTAL SALES PRICE: The total cost of your purchase On credit, including your down Payment of $ —0— |
|---|---|---|---|---|
| *0* % | *0* | *$720* | *$720* | *$720* |

### YOUR PAYMENT SCHEDULE WILL BE:

| Number of payments | Amount of each payment | When payments are due | |
|---|---|---|---|
| *1* | *40.00* | Monthly, beginning *1/11/10* | and on the same day of each month thereafter. |
| *17* | *40.00* | *2/15/10* | |

LATE CHARGES: If any payment is more than 10 days late, you will be charged 5% of the payment or $5.00, whichever is less, but in no event less than $1.00.

PREPAYMENT:  If you pay off early, you may be entitled to a refund of part of the finance charge.

Buyer is entitled to pay in advance the remaining unpaid balance due hereunder and receive a refund of the FINANCE CHARGE computed in accordance with the appropriate state statutes.

NOTICE:  Any holder of this consumer credit contracts subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof.  Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

NOTICE TO BUYER: (1) Do not sign this agreement before you read it if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time and obtain a partial refund of the finance charge if  it is $1 or more.  Because of the way the amount of this refund will be figured, the time when you prepay could increase the ultimate cost of credit under this agreement. (4) If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request.

### Itemization of the Amount Financed

| | | |
|---|---|---|
| 1. Cash Price | | |
| a. Tuition | $ | *720* |
| b. Registration Fee | $ | |
| c. Other | $ | *0* |
| 2. Total Cash Price | $ | *720* |
| 3. Less Deductions | | |
| a. Cash Down Payment | $ | *0* |
| b. _____ | $ | *0* |
| c. _____ | $ | *0* |
| 4. Total Deductions | ($ | *0* |
| 5. Amount Financed | $ | *720* |

EXHIBIT
68
9-14-12 LB
PENGAD 800-631-6989

RSHTBATTLE,S0135

RSHT0003078

# BATTLE DEPOSITION

# EXHIBIT 70

# RSHT
### ENROLLMENT AGREEMENT

☑ Main Campus:
1601 Willow Lawn Drive, Suite 320
Richmond, VA 23230

Branch Campus: ☐
751 West Hundred Road
Chester, VA 23836

Name: Sadc' N. Battle          SSN: ████████

First       MI          Last

Address: ████████          Birth date: ████████

City: Richmond     State: Va     Zip Code: 23220

Telephone ████████     Email ████████

As the above-named applicant, I hereby agree to be enrolled in the Community Home Health
program which is 35 weeks of instructional time. Classes are scheduled to begin on 3-22-10
and end on 1-6-2011. Classes meet Mon-Fri from 5:30pm to 10:30pm.

Total tuition of $ 10,200.00, a non-refundable application fee of $ 75.00. Should I have to repeat
a course, I will be charged a *per credit hour* fee of $ 330.00 for didactic and per credit hour fee of
$ 180.00 for clinical externship. I hereby acknowledge payment of a deposit of $ 75.00,
leaving a balance due to the institution of $ 10,200.00.

I hereby agree to all provisions of this Enrollment Agreement, and understand that I have agreed to accept a place
in the class described above and agree to pay to RSHT all fees according to the terms and conditions contained
herein. Furthermore, I acknowledge that I have read, fully understand, and received a copy of this agreement.

I understand that this agreement becomes a legally binding instrument upon the school's written acceptance of my
application, unless cancelled by me pursuant to the refund policy contained within this agreement.

Student Signature: Sadi N Battu          Date: 03-11-10
Grantor's Signature: N. Alexander          Date: 3-11-10

*Note: Please read and initial the statements on the back of this sheet.*

Form # 105   Revised ct 8.20.09

RSHT is certified to operate in Virginia by the State Council of Higher Education for Virginia



**EXHIBIT**
70
9-14-12 UB

**RSHTBATTLE,S0005**          **RSHT0002948**

**Attendance:**

Attendance is required at all scheduled classes. If in an emergency an absence becomes necessary, the student must notify the school prior to the beginning of the schedule class. Students with seven consecutive absences or total absences exceeding 20% of their scheduled classes will be withdrawn from the program. Refer to the School Catalog and Student Handbook for further details.

Initials _SB_

**Cancellation and Refund Policy:**

If an applicant cancels this agreement no later than the third business day after the date of this agreement, a full refund will be made minus the non-refundable application fee. The application fee for all programs is $75.00. If a class is cancelled by the school, all monies will be refunded.

All students will be charged a non-refundable application fee in addition to the tuition charges as specified below. The portion of the program completed will be determined by the number of weeks attended. Any portion of a week's attendance will be considered a full week for the purpose of the refund calculation.

1. If a student does not begin classes, no more than $100.00 of the tuition paid will be retained by the school.

2. A student who enters school but withdraws prior to completing the first 25% of the period charged will be assessed 50% of the tuition charges for the period.

3. A student, who withdraws after completing the first 25%, but prior to completing 50% of the period charged, will be assessed 75% of the tuition charges for the period.

4. A student who withdraws after completing half, or more than half, of the period charged is assessed 100% of the tuition charges for the period.

Refunds are made within 30 days of the cancellation date or date of withdrawal.

Initials _SB_

**Standards:**

Students are required to abide by the proper standards for dress and conduct while in attendance at all classes and externship training. Profanity, disorderly conduct, or other action which, in the opinion of the school is disruptive, will not be tolerated and will be grounds for dismissal form the program.

Initials _SB_

**Placement:**

Each graduate may avail him or herself of the school's job placement assistance program. RSHT DOES NOT GUARANTEE EMPLOYMENT. However, every effort will be made to assist the graduate in obtaining employment. There is no charge for this service.

Initials _SB_

RSHT reserves the right to make changes to the program start date, content, schedule, and/or training hours as deemed necessary.

Initials _SB_

**Conditions of Agreement:**

This constitutes the entire agreement between the applicant and the school, and no other promise or agreement, expressed or implied, has been made either orally or in writing. Should the student fail to meet the terms of his/her financial obligations contained in this agreement, the school reserves the right to add to this agreement a reasonable amount for collection costs incurred including, but not limited to, collection agency fees, attorney fees of 33.3%, court costs, etc.

Initials _SB_

**RSHTBATTLE,S0006**

**RSHT0002949**

# BATTLE DEPOSITION

# EXHIBIT 73

## Entrance Interview

**Borrower Information (Please Print Clearly)**

Name: **Sade Battle**



Form 410 revised ct 6/9/09



EXHIBIT
73
9-14-12 RB



Student Signature _Andi' NBattle_   Date_ 3/23/10_

School Official Signature _JJ/te_   Date 2/23/10

Form 410 revised ct 6/9/09

RSHTBATTLE,S0109

RSHT0003052

# BATTLE DEPOSITION

# EXHIBIT 74

<u>Entrance Counseling Requirements</u>:







Sacie' N. Battle
Student's Name Printed

Sadi' n Battle
Student's Signature

Financial Aid Signature

Social Security Number

03/23/10
Date

3/23/10
Date

RSHTBATTLE,S0111

RSHT0003054

# BATTLE DEPOSITION
# EXHIBIT 76

tuitionStop.

## TUITION WORKSHEET

Student Name: Sade Battle     Social Security Number: ███

Program: CHH/PM     Start Date: 3/22/13



Student Signature: Sade' n Battle
Date: 03/23/2010

Financing Department Signature: Jfre
Date: 3/23/10

RSHTBATTLE,S0086

**EXHIBIT**
76
9-14-12 LB

RSHT0003029

# BATTLE DEPOSITION

# EXHIBIT 77

**Cost of Attendance Worksheet**
**RSHT**

1601 Willow Lawn Drive, Suite 320
Richmond, Virginia 23230
(804) 288-1000
(804) 288-1006 Fax

751 West Hundred Road
Chester, Virginia 23836
(804) 751-9191
(804) 751-2599 Fax

Date: 3/23/10

Student's Name: _Battle_ _Sade_ _N_
 Last   First   Middle

Social Security: ████████

Academic Year: _09/10_

REDACTED

_Sade' n Battle_
Student Name Printed

_Sade' n Battle_
Student Signature

_[signature]_
Financial Aid Officer

_3/23/10_
Date



Form 404  revised ct 2.9.10

**RSHTBATTLE,S0093**

**RSHT0003036**

# BATTLE DEPOSITION

# EXHIBIT 79

## RSHT —INSTALLMENT NOTE AND DISCLOSURE STATEMENT

Date _3/23/10_

As payment for tuition at RSHT in (City, State) _Richmond, VA._

I promise to pay to the school or order, the sum of $ _360.00_ _____ (includes principal and interest)

As follows: _9_ installments of $ _40.00_ beginning on (date) _3/22/10_ .

All subsequent installments shall be payable on the same day of each consecutive month thereafter until paid in full.

This note is subject to the terms and conditions contained in the Enrollment Agreement and the "Disclosure Statement," which are incorporated herein by reference as though set forth in full. Should default be made in any payment when due, the whole sum of principal and interest shall immediately become due and payable at the option of the holder of this Note. Principal and interest payable in lawful money of the United States. If action is instituted on this Note, I promise to pay such sum as the court may fix as attorney's fees and court costs.

By signing below, Buyer and Co-Buyer (where applicable) acknowledge receipt of a complete and true copy of this Installment Note and jointly and severally agree to all of the terms and conditions. These terms are hereby accepted on _3/23/10_ .

Buyer
Sign Here _Sade' n Battle_                    Co-Buyer
                                              Sign Here _____

Print Name _Sade' N. Battle_                  Print Name _____

Address ██████████████████                    Address _____

City _Richmond_ State _VA._ Zip _23220_       City _____ State _____ Zip _____

Home Tel. ██████████ Work Tel. ( )            Home Tel. (   ) _____ Work Tel. (   ) _____

Social Security No. ████████████              Social Security No. _____

## DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE: The cost of your credit as a yearly rate. | FINANCE CHARGE: The dollar amount the Credit will cost you. | AMOUNT FINANCED: The amount of credit provided to you or on your behalf. | TOTAL OF PAYMENTS: The amount you will have paid after you have made all payments as scheduled. | TOTAL SALES PRICE: The total cost of your purchase On credit, including your down Payment of $ _-0-_ |
|---|---|---|---|---|
| 0% | 0% | $ 360 | $ 360 | $ 360 |

## YOUR PAYMENT SCHEDULE WILL BE:

| Number of payments | Amount of each payment | When payments are due | |
|---|---|---|---|
| 1 | 40.00 | Monthly, beginning _3/22/10_ | and due again on the same day of each month thereafter. |
| 8 | 40.00 | _4/15/10_ | payments will end on _11/15/10_ |

**FEES:** There are no fees assessed for this installment plan.

**PREPAYMENT:** If you pay off early, you may be entitled to a refund of part of the finance charge.

Buyer is entitled to pay in advance the remaining unpaid balance due hereunder and receive a refund of the FINANCE CHARGE computed in accordance with the appropriate state statutes. There are no finance charges assessed on this installment note.

**NOTICE:** Any holder of this consumer credit contracts subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

**NOTICE TO BUYER:** (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at any time and obtain a partial refund of the finance charge if it is $1 or more. Because of the way the amount of this refund will be figured, the time when you prepay could increase the ultimate cost of credit under this agreement. (4) If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request.

### Itemization of the Amount Financed

1. Cash Price
   a. Tuition                              $ _360_
   b. Registration Fee                     $ _____
   c. Other _____                      $ _0_
2. Total Cash Price                        $ _360_
3. Less Deductions
   a. Cash Down Payment  $ _____
   b. _____          $ _0_
   c. _____          $ _0_
4. Total Deductions                       ($ _0_ )
5. Amount Financed                        $ _360_

Form 415 revised ct 3.9.10



EXHIBIT
79
9-14-12 VB
PENGAD 800-631-6989

# BATTLE DEPOSITION

# EXHIBIT 94

Select Program: **CHH** **PM**     Installment Note: **Installment Note Academic Year 1**

As payment for tuition at RSHT in (City, State) _____ **Richmond VA**

I promise to pay to the school or order, the sum of    **$265.00**    (includes principal and interest).

As follows:    **5**    installments of    **see below**    beginning on (date)    **February 14, 2011**

All subsequent installments shall be payable on the same day of each consecutive month thereafter until paid in full.

This note is subject to the terms and conditions contained in the Enrollment Agreement and the "Disclosure Statement", which are incorporated herein by reference as though set forth in full. Should default be made in any payment when due, the whole sum of principal and interest shall immediately become due and payable at the option of the holder of this Note. Principal and interest payable in lawful money of the United States. If action is instituted on this Note, I promise to pay such sum as the court may fix as attorney's fees and court costs.

By signing below, Buyer and Co-Buyer (where applicable) acknowledge receipt of a complete and true copy of this Installment Note and jointly and severally agree to all of the terms and conditions. These terms are hereby accepted on **02/15/11**    Initials: **SB**

| Buyer | Co-Buyer |
|---|---|
| Sign here *Sade 'n Battle* | Sign here |
| Print Name **Sade Battle** | Print Name |
| Address ▮▮▮ | Address |
| City **Richmond** | City |
| State **VA**   Zip **23220** | State   Zip |
| Home Tel. ▮▮▮   Work Tel. | Home Tel.   Work Tel. |
| Social Security No. | Social Security No. |

### DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE: | FINANCE CHARGE: | AMOUNT FINANCED: | TOTAL OF PAYMENTS: | TOTAL SALES PRICE: |
|---|---|---|---|---|
| Total cost of your credit as a yearly rate. | The dollar amount the Credit will cost you. | The amount of credit provided to you or on your behalf. | The amount you will have paid after you have made all payments as scheduled. | The total cost of your purchase on Credit, including your down payment of   $0.00 |
| 0% | 0% | $265.00 | $265.00 | $265.00 |

**YOUR PAYMENT SCHEDULE WILL BE:**

| Number of payments | Amount of each payment | When payments are due |
|---|---|---|
| 1 | $105.00 | Monthly, beginning **February 14, 2011** and due again on the same day of each month thereafter. |
| 4 | $40.00 | **March 15, 2011** Payments will end on **June 15, 2011** |

FEES: There are no fees assessed for this installment plan.

PREPAYMENT: If you pay off early, you may be entitled to a refund of part of the finance charge.

Buyer is entitled to pay in advance the remaining unpaid balance due hereunder and receive a refund of the FINANCE CHARGE computed in accordance with the appropriate state statutes. There are no finance charges assessed on this installment note.

NOTICE: Any holder of this consumer credit contracts subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

NOTICE TO BUYER: (1) Do not sign this agreement before you read it or if it contains any blank spaces to be filled in. (2) You are entitled to a completely filled-in copy of this agreement. (3) You can prepay the full amount due under this agreement at anytime and obtain a partial refund of the finance charge if it is $1 or more. Because of the way the amount of this refund will be figured, the time when you prepay could increase the ultimate cost of credit under this agreement. (4) If you desire to payoff in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request.

**Itemization of the Amount Financed**

| | | | |
|---|---|---|---|
| 1. Cash Price | | | |
| | a. Tuition | $ | 265.00 |
| | b. Reg. Fee | | $0.00 |
| | c. Other | | $0.00 |
| 2. Total Cash Price | | $ | 265.00 |
| 3. Less Deductions | | | |
| | a. Cash Down Payment | | $0.00 |
| | b. | | $0.00 |
| | c. | | $0.00 |
| 4. Total Deductions | | | $0.00 |
| 5. Amount Financed | | $ | 265.00 |



**EXHIBIT**
94
9-14-12 LB
PENGAD 800-631-6989

Form 415 revised ct 11.19.10

**RSHTBATTLE,S0131**       **RSHT0003074**