**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

—————————————————————— )
                                                          )
MARY MORGAN, *et al.*,                                    )
                                                          )
                    Plaintiffs,                           )
                                                          )          Case No. 3:12-cv-00373-JAG
          v.                                              )
                                                          )
RICHMOND SCHOOL OF HEALTH AND                             )
TECHNOLOGY, INC.,                                         )
                                                          )
                    Defendant.                            )
—————————————————————— )

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED
CLASS ACTION SETTLEMENT, FINAL CERTIFICATION OF CLASS AND AWARD
OF ATTORNEYS' FEES AND COSTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................iv

INTRODUCTION .................................................................................................... 1

BACKGROUND .......................................................................................................2

I.     THE LITIGATION BETWEEN PLAINTIFFS AND RSHT.................................2

II.    THE INSURANCE COVERAGE LITIGATION BETWEEN
RSHT AND NATIONWIDE....................................................................................4

III.   THE MEDIATION AND RESULTING SETTLEMENT AGREEMENT.............5

     A.    Monetary Terms of Settlement ................................................................6

     B.    Non-Monetary Terms of Settlement ........................................................8

IV.   PRELIMINARY APPROVAL AND NOTICE.......................................................9

ARGUMENT...........................................................................................................11

I.     FINAL APPROVAL SHOULD BE GRANTED BECAUSE THE
SETTLEMENT AGREEMENT IS FAIR, REASONABLE,
AND ADEQUATE .................................................................................................11

     A.    The Fairness Factors ..............................................................................12

          1.    Posture of the Case.......................................................................12

          2.    Extent of Discovery .....................................................................13

          3.    Circumstances Surrounding Negotiations....................................14

          4.    Experience of Counsel .................................................................14

     B.    The Adequacy Factors ............................................................................15

          1.    Relative Strength of Plaintiffs' Case on the Merits
and Difficulties of Proof or Strong Defenses Likely at Trial.........15

          2.    Duration and Expense of Additional Litigation............................17

|   |   | 3. | Solvency of Defendant and Likelihood of Recovery on a Litigated Judgment | 18 |
|   |   | 4. | Degree of Opposition | 19 |
|   | C. | Reasonableness | | 19 |
|   |   | 1. | The Size of the Recovery is Reasonable | 19 |
|   |   | 2. | The Incentive Awards for the Named Plaintiffs are Reasonable | 20 |
|   |   | 3. | The Incentive Awards for the Declarants are Reasonable | 21 |
|   |   | 4. | The Attorneys' Fees and Costs are Reasonable | 21 |
| II. | A SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED UNDER RULE 23(b)(2) AND RULE 23(b)(3) | | | 22 |
|   | A. | Rule 23(a) Is Satisfied | | 23 |
|   |   | 1. | Rule 23(a)(1) – Numerosity | 23 |
|   |   | 2. | Rule 23(a)(2) – Commonality | 23 |
|   |   | 3. | Rule 23(a)(3) – Typicality | 29 |
|   |   | 4. | Rule 23(a)(4) – Adequacy of Representation | 31 |
|   | B. | Rule 23(b)(2) Is Satisfied | | 32 |
|   | C. | Rule 23(b)(3) Is Satisfied | | 32 |
|   | D. | Plaintiffs' Counsel Satisfy the Requirements of Rule 23(g) | | 34 |
| III. | ADEQUATE NOTICE HAS BEEN DISSEMINATED TO THE CLASS | | | 35 |
| IV. | THE ATTORNEYS' FEES AND COSTS REQUESTED ARE REASONABLE AND SHOULD BE AWARDED ON THE BASIS OF THE PERCENTAGE OF RECOVERY METHOD | | | 36 |
|   | A. | Fees Should Be Awarded Using the Percentage Method | | 37 |

B.      An Award of 33% of the Common Fund
is Reasonable and Appropriate ................................................39

     1.     Results Obtained for the Class..........................................40

     2.     Quality, Skill, and Efficiency of Attorneys ...................40

     3.     Complexity and Duration of the Case ............................41

     4.     Risk of Nonpayment .......................................................43

     5.     Awards in Similar Cases..................................................43

     6.     Objections .......................................................................44

     7.     Public Policy ...................................................................44

     8.     Lodestar Crosscheck .......................................................46

CONCLUSION..................................................................................47

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) .................................................31, 33

*Anselmo v. W. Paces Hotel Group., LLC*, No. 9:09-CV-02466-DCN,
    2012 WL 5868887 (D.S.C. Nov. 19, 2012) .......................................................39, 44

*Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 (PKC),
    2011 WL 2207586 (S.D.N.Y. June 2, 2011) .....................................................35, 36

*Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-cv-00400-BR,
    2009 WL 2208131 (E.D.N.C. July 22, 2009) ...............................................11, 12, 14

*Benway v. Res. Real Estate Servs., LLC*, No. WMN-05-3250,
    2011 WL 1045597 (D. Md. Mar. 16, 2011) ............................................................11

*Bicking v. Mitchell Rubenstein & Assoc. P.C.*, No. 3:11-cv-78-HEH,
    2011 WL 5325674 (E.D. Va. Nov. 3, 2011) ............................................................18

*Blum v. Stenson*, 465 U.S. 886 (1984) .............................................................................. 38

*Bobbitt v. Acad. of Court Reporting, Inc.*, 252 F.R.D. 327 (E.D. Mich. 2008) ................26

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) .........................................................36, 37

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991) ..........................38

*Carlson v. Xerox Corp.*, 355 Fed. App'x. 523 (2d Cir. 2009) ..........................................38

*Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538 (E.D. Va. 2000) ........................ *passim*

*Chisholm v. United States Postal Service*, 665 F.2d 482 (4th Cir. 1981) .........................24

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ..................................................37, 45, 46

*Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226 (E.D. Pa. 1999) .....................................27

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) ........................19, 40, 44

*Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339,
    2013 WL 2285972 (S.D. W. Va. May 23, 2013)........................................38, 39, 44

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006) ...........................24, 29, 31

*Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443 (E.D. Va. 2009) .....................27

*Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997) ........................................22

*Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201 (E.D. Va. 2003) .............22, 24, 29

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. cv-08-1365,
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................20

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ........................................38

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) ...........................31, 32

*Helmick v. Columbia Gas Transmission*, No. 2:07-cv-00743,
    2010 WL 2671506 (S.D. W. Va. July 1, 2010) ............................... *passim*

*Hess v. Sprint Commc'ns Co. L.P.*, No. 3:11-CV-00035-JPB,
    2012 WL 5921149 (N.D. W. Va. Nov. 26, 2012)...............................38, 39

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    855 F. Supp. 825 (E.D.N.C. 1994)...............................................11, 13

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001)............................................21

*In re A.H. Robins Co., Inc.*, 880 F.2d 709 (4th Cir. 1989)...............................................22

*In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534 (E.D. Va. 2006)...................... *passim*

*In re Black Farmers Discrimination*, No. 08-0511,
    2013 WL 3480346 (D.D.C. July 11, 2013)...............................39, 45, 46

*In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722 (3d Cir. 2001) ...................................39

*In re Jiffy Lube Secs. Litig.*, 927 F.2d 155 (4th Cir. 1991) ........................................ *passim*

*In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654 (E.D. Va. 2001) ............. *passim*

*In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896 (E.D. Va. 2001) ................... 35

*In re Red Hat Inc. Sec. Litig.*, No. 5:04-cv-473-BR(3),
    2010 WL 2710517 (E.D.N.C. June 11, 2010) ........................................13

*In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221 (S.D. W. Va. 2005)...........................35

*In re The Mills Corp. Secs. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009) ........................ *passim*

*In re Thirteen Appeals Arising out of San Juan DuPont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) ....................................................................................38

*Minter v. Wells Fargo Bank, N.A.*, 283 F.R.D. 268 (D. Md. 2012)............................35, 36

*Moore v. Napolitano*, __ F. Supp. 2d. __,
   2013 WL 659111 (D.D.C. 2013) ...........................................................................15

*Muhammad v. Nat'l City Mortg.*, No. 2:07-0423,
   2008 WL 5377783 (S.D. W. Va. Dec. 19, 2008)............................................. *passim*

*Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400 (1968) ........................................37, 46

*Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438 (E.D. Va. 2004).....................................33

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ..........................................................24

*Strang v. JHM Mortg. Sec. Ltd. P'Ship*, 890 F. Supp. 499 (E.D. Va. 1995) ....................13

*Sullivan v. DB Inv., Inc.*, 667 F.3d 273 (3d Cir. 2011) .....................................................32

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993) ........................................38

*Taubenfeld v. AON Corp.*, 415 F.3d 597 (7th Cir. 2005) ..................................................38

*Temp. Servs., Inc. v. Am. Int'l Group, Inc.*, No. 3:08-CV-00271-JFA,
   2012 WL 4061537 (D.S.C. Sept. 14, 2012)..................................................... *passim*

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) .................38

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002)............................................38

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ............................................23, 32

<u>Statutes and Rules:</u>

Equal Credit Opportunity Act, 15 U.S.C. ............................................................................2

Fed. R. Civ. P. 23 ......................................................................................................... *passim*

Fed. R. Civ. P. 54 ...............................................................................................................22

Title VI of the Civil Rights Act of 1964, 42 U.S.C. ...........................................................2

Virginia Consumer Protection Act, Va. Code Ann............................................................ 2

<u>Other Authorities:</u>

*Manual for Complex Litig.* (Fourth) (Federal Judicial Center 2004)...........................11, 38

## INTRODUCTION

Plaintiffs Mary Morgan, Amanda Smith, Sade Battle, La-Deva Dabney, Kyra Franklin, Ashley Thomas, Loretta Towns, and Tammara Herbert ("Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion for an order pursuant to Federal Rules of Civil Procedure 23 and 54(d) granting: (1) final approval of the proposed Settlement Agreement, a copy of which is attached hereto as Exhibit 1; (2) final certification of the settlement class; and (3) approval of an award of fees and costs to Plaintiffs' Counsel.

After vigorous advocacy and negotiation, Plaintiffs, Defendant Richmond School of Health and Technology, Inc. ("RSHT"), and RSHT's insurer Nationwide Mutual Insurance Co. ("Nationwide") agreed on a settlement of the claims in this case and in the related insurance coverage declaratory judgment action pending before Judge Hudson.  The proposed Settlement Agreement achieves both monetary and injunctive relief for approximately 4,162 former and current RSHT students.  The parties negotiated the Settlement Agreement at arm's length under the auspices of mediator John Douglass and believe it achieves a fair and adequate resolution of Plaintiffs' claims.  *See* Ex. 2 ("Schlactus Decl.") ¶ 8.

On April 23, 2013, the Court granted preliminary approval of the Settlement, provisionally certified the settlement class, appointed undersigned counsel to represent the settlement class, and directed that notice be given to Class Members.  *See* Minute Entry (Apr. 23, 2013) (Docket No. 84); Order Granting Preliminary Approval of Proposed Class Action Settlement, Provisional Certification of Class and Approval of Notice (signed Apr. 23, 2013; docketed Apr. 24, 2013) (Docket No. 86) ("Preliminary Approval Order").  The notice process has been completed.  *See* Ex. 3 (Decl. of Claims Administrator M. Meador) ("Claims Admin. Decl.").  There was an unusually low rate of returned mail, *see id.* ¶ 10, indicating that the

individualized notice program was especially effective.  Only one person opted out of the class, *see* Schlactus Decl. ¶ 10, and no objections have been filed.  Plaintiffs now respectfully submit, and all parties agree, that the Settlement merits final approval by this Court.

**BACKGROUND**

I.      **THE LITIGATION BETWEEN PLAINTIFFS AND RSHT**

RSHT operates a for-profit vocational college in the Richmond area.[1]  *See, e.g.*, Answer (June 15, 2012) (Docket No. 39) ¶ 2.  This litigation was brought by eight former RSHT students on behalf of themselves and all others similarly situated.  Plaintiffs alleged, *inter alia*, that RSHT induced enrollment by making material misrepresentations about the quality and characteristics of the education provided, did not satisfy its contractual obligations, and discriminated on the basis of race by targeting African Americans for enrollment.  Plaintiffs asserted claims for fraudulent inducement to contract; breach of contract based on the implied covenant of good faith and fair dealing; violation of the Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196, *et seq*. ("VCPA"); violation of the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691, *et seq*.; and violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d, *et seq*.

Defendant has at all times denied these allegations.

The case was originally filed in the United States District Court for the District of Columbia on June 8, 2011.  RSHT filed a Motion to Dismiss or Transfer.  *See* Docket No. 7 (Oct. 4, 2011).  The motion was granted with respect to improper venue (based on lack of personal jurisdiction over RSHT) and the case was transferred to this Court.  *See* Order (Apr. 30,

---

[1] The school was formerly known as "Richmond School of Health and Technology" or "RSHT," but Defendant recently changed the school's name to "Chester Career College."  Paragraph one of the proposed order submitted herewith accounts for the name change to avoid any ambiguity in the meaning of "School" as used in the Settlement Agreement.  For simplicity, only the name RSHT is used in this motion.  Defendant's corporate name has not changed.

2012) (Docket No. 29).

On June 15, 2012, RSHT filed an Answer denying all material allegations in the Civil Action and interposing affirmative defenses.  That same day, RSHT also filed a Motion to Dismiss the two federal claims under Fed. R. Civ. P. 12(b).  *See* Docket No. 37 (June 15, 2012).  The Motion to Dismiss was fully briefed.  In light of the Settlement, it was denied as moot on February 28, 2013, with leave for Defendant to refile it if the Settlement is not approved by the Court.  *See* Order (Feb. 28, 2013) (Docket No. 75).

RSHT filed a Motion for Judgment on the Pleadings with respect to the three state law claims on August 17, 2012.  *See* Docket No. 60 (Aug. 17, 2012).  That motion was also fully briefed but denied as moot on February 28, 2013, with leave for Defendant to refile if the Settlement is not approved by the Court.  *See* Order (Feb. 28, 2013) (Docket No. 75).

As a result of informal investigation by Plaintiffs, without the benefit of discovery, Plaintiffs obtained sworn declarations regarding the merits of their claims from 75 former and current students who are members of the proposed class (but are not named Plaintiffs), and from twelve former RSHT employees.  *See* Schlactus Decl. ¶ 5.  Forty-eight of these declarations were attached to the Second Amended Complaint, and all were provided to RSHT.  Plaintiffs interviewed over 200 witnesses and reviewed over 4,500 pages of documents as part of their informal investigation.  *See id.*

On June 28, 2012, the Court entered an Initial Pretrial Order providing for discovery regarding class certification issues.  *See* Docket No. 46 (June 28, 2012).  Pursuant to that Order, the parties took eleven depositions:  a Rule 30(b)(6) deposition of RSHT, depositions of five of the Plaintiffs, and depositions of five of the student declarants.  RSHT produced over 20,000 pages of documents, as well as audio and video recordings, and Plaintiffs produced over 2,000

pages as part of the class certification discovery.  RSHT produced over 8,500 additional pages and additional audio and visual recordings as part of its Rule 26 initial disclosures.  Plaintiffs also answered RSHT's class certification interrogatories.  *See* Schlactus Decl. ¶ 6.

Plaintiffs were prepared to file their class certification motion on October 1, 2012, but all deadlines were stayed that day pursuant to the parties' joint motion because they and Nationwide reached an agreement in principle to settle the two cases on September 28, 2012.  *See id.* ¶ 8; Order (Oct. 1, 2013) (Docket No. 74).

## II.  THE INSURANCE COVERAGE LITIGATION BETWEEN RSHT AND NATIONWIDE

RSHT purchased comprehensive general liability ("CGL") and umbrella insurance policies from Nationwide with combined limits of $24 million.  RSHT tendered a claim to Nationwide after Plaintiffs filed their initial Complaint, and Nationwide has provided a defense to RSHT under a reservation of rights.

Nationwide filed a declaratory judgment action against RSHT in this Court on November 21, 2011.  *See Nationwide Mut. Ins. Co. v. Richmond Sch. of Health & Tech., Inc.*, No. 3:11-cv-00768 (E.D. Va.).  Nationwide requested a declaration that its policies do not provide any coverage to RSHT for any of the claims asserted herein by Plaintiffs.  Specifically, Nationwide asserted that its policies do not apply for ten reasons:  (1) the claims do not constitute "occurrences," (2) the claims are not for "bodily injury" or "property damage," (3) the claims are not for "personal and advertising injury," (4) the policies exclude coverage for breach of contract claims, (5) the policies exclude coverage for expected or intended injury, (6) the policies exclude coverage for claims based on the knowing violation of the rights of another, (7) the policies exclude coverage for claims based on the distribution of material or information in violation of statute, ordinance or regulation, (8) the policies exclude coverage for claims based on the

4

knowingly false publication of material, (9) late notice, and (10) the events at issue occurred outside the policy period.  Not all of the reasons set forth by Nationwide apply to every policy or underlying cause of action, but if just some of these reasons were accepted, it would eliminate all coverage for all claims under all policies.  Summary judgment briefs were due to be filed in November 2012, but the case has been stayed as a result of the successful mediation described in the following section.  *See id.* at Docket Nos. 20 & 21 (Nov. 26 & 27, 2012).

RSHT provided copies of the Nationwide polices to Plaintiffs' Counsel over a year ago.

RSHT stated in its initial disclosures that it does not have any potentially applicable insurance coverage apart from the Nationwide policies.

## III.    THE MEDIATION AND RESULTING SETTLEMENT AGREEMENT

Plaintiffs' Counsel, RSHT's corporate and litigation counsel, RSHT's President, and RSHT's Chief Executive Officer met in Richmond on August 23, 2011, to discuss a possible negotiated settlement of this matter.  They were not successful, and RSHT filed the Motion to Dismiss or Transfer noted above soon thereafter.  *See* Schlactus Decl. ¶ 7.

On June 28, 2012, the Court ordered Plaintiffs and RSHT to engage in mediation prior to the deadline for the filing of Plaintiffs' class certification motion.  See Initial Pretrial Order (June 28, 2012) (Docket No. 46).  This Order was based on the understanding that Nationwide would also participate.

The parties agreed to engage John Douglass as mediator through The McCammon Group.  Professor Douglass is an experienced mediator and litigator and formerly served as Dean of the T.C. Williams School of Law at the University of Richmond, where he currently teaches.  An all-day mediation was held in Richmond on September 28, 2012.  It was attended by Nationwide's outside counsel and two Nationwide adjusters (one by phone); RSHT's corporate counsel, its

litigation counsel, its President, and its Chief Executive Officer; and by Plaintiffs' Counsel and two of the Plaintiffs.  *See* Schlactus Decl. ¶ 8.

An agreement in principle was reached in the mediation.  The agreement in principle provided for a payment of $5 million by Nationwide on RSHT's behalf to resolve the matter through a class action settlement, and for RSHT to take non-monetary steps, including steps to allow prospective students to have greater information about RSHT and its programs when deciding whether to enroll.  The agreement in principle was subsequently ratified by the six Plaintiffs who were not in attendance at the mediation.  *See id.* ¶ 9.

The parties and Nationwide subsequently engaged in additional negotiations regarding the details of the agreement, particularly with respect to the non-monetary terms, and to reduce their agreement to writing.  There were also additional phone conversations with the mediator. The Settlement Agreement, including the several documents attached to it, is the result of these negotiations.  *See id.*

The parties agreed, through the Settlement Agreement, to seek certification of a Settlement Class comprised of all persons who have been enrolled at RSHT at any time from July 1, 2004, though February 28, 2013 (the "Class Period").  The parties initially estimated that there were approximately 3,938 members of the proposed class; they have since revised the estimate to 4,162.

### A.      Monetary Terms of Settlement

The Settlement Agreement provides for three levels of monetary compensation to Class Members.  The total amount of compensation provided for in the Settlement is $5,000,000.

First, the eight named Plaintiffs will each receive as an incentive award the outstanding balance, as of their February 2013 loan statement, of the loans they took out to attend RSHT, plus an additional $10,000.  This totals $195,905.84.  *See* Settlement Agreement Section III.

Second, the seventy-five student declarants will each receive $3,000 as an incentive award.  This totals $225,000.  *See id.*

Third, for each person who opts out of the settlement, $5,000 will be held in reserve for RSHT to use for defense costs or settlement in the event that an opt-out pursues independent claims against RSHT based on allegations similar to those asserted here.  *See* Settlement Agreement ¶ 6(c).  Because there was only one opt-out, only $5,000 will be reserved for this purpose.

Fourth, after additional deductions for attorneys' fees and costs and for administration of the settlement, the remaining funds available – $2,824,094.16 – will be distributed equally among the remaining Class Members who file a valid claim form.  *See id.* ¶ 6.  If all of these Class Members submit a valid claim form, this would result in a payment of approximately $692 to each.  If two-thirds of these Class Members submit a valid claim form, it would result in a payment of approximately $1,038 to each.[2]

The Settlement Agreement further provides for the retention of Brown Greer, PLC as Claims Administrator to distribute the notice, distribute the claim forms, process claims, prepare tax documents, and otherwise administer the settlement.  *See* Settlement Agreement ¶ 1(d).  Based on consultation with the proposed claims administrator, the parties agreed to set aside

---

[2] Should the response rate be such that each of these class members would otherwise receive over $2,000, then each will receive $2,000; each declarant will receive $3,000; and the remaining funds will be shared equally among both groups (that is, among all class members except for the eight named Plaintiffs).  *See* Settlement Agreement ¶ 7.

$100,000 from the settlement fund for these costs, but also included a provision in the Settlement Agreement for excess administrative funds to be included in the funds distributed to Class Members.[3]  *See* Settlement Agreement ¶¶ 4(c), 11.

On the basis of the well-established common fund doctrine, the Settlement Agreement further provides that Plaintiffs' Counsel will receive 33% of the settlement funds (which equals $1,650,000) as compensation for attorneys' fees and costs incurred in the prosecution of this matter, which they have funded in its entirety and without any contribution toward fees or costs from Plaintiffs.  *See id.* ¶¶ 4(b), 13.  The lodestar of fees incurred by Plaintiffs' Counsel as of June 30, 2013 – after reductions of approximately $108,000 based on billing judgment that would be made were counsel to seek fees on the basis of their lodestar – is $1,878,551.50, and it will increase during the course of the remaining proceedings herein.  Schlactus Decl. ¶ 19. Plaintiffs' Counsel have also incurred $32,325.73 in out-of-pocket costs.  *Id.*  The amount that counsel may seek in fees and costs, however, is fixed at $1,650,000.  This is $260,877.23 less than the lodestar and out-of-pocket costs.

### B.  Non-Monetary Terms of Settlement

The Settlement Agreement also provides for significant non-monetary injunctive relief. In addition to requiring Defendant to adhere to the law, the Settlement Agreement requires Defendant to make available important information about the school and the success of its graduates and to adhere to the Cancellation and Refund policy promulgated by the Council on Occupational Education.  *See* Settlement Agreement ¶ 16.  The information that the school must make available includes the information reviewed by and provided to several entities that

---

[3] Paragraph 20 of the proposed order submitted with this motion, and paragraph 18 of the Preliminary Approval Order, both provide for a grant of immunity to the Claims Administrator for work performed in connection with the Settlement.

accredit, audit, and/or regulate RSHT; those entities' reports and conclusions about RSHT; and up to date statistics regarding the employment, earnings, and licensing/certification of RSHT's students.  *See id.* ¶ 16(b) & (c).

## IV.   PRELIMINARY APPROVAL AND NOTICE

On April 23, 2013, the Court held a hearing to consider whether to preliminarily approve the settlement.  The Court granted preliminary approval the same day.  *See* Preliminary Approval Order.  The Preliminary Approval Order also provisionally certified the Settlement Class, appointed undersigned counsel to represent the Settlement Class, directed that notice be given to Class Members, and appointed Brown Greer as Claims Administrator.

The parties have taken all steps required by the Preliminary Approval Order.  Most importantly, notice was given to Class Members in two ways.  First, individualized notice was mailed to the last known address (supplemented by "tracing" through national databases) of every known Class Member.  Claims Admin. Decl. ¶¶ 6-7, 10.  Second, notice was published in two newspapers, the Richmond Times-Dispatch and the Progress-Index (in Petersburg).  *Id.* ¶ 8.  Based on substantial experience and expertise, the Claims Administrator states that the returned mail rate in this case was well below the usual range.  *Id.* ¶ 10.  Moreover, even though there was no need to contact the call center operated by the Claims Administrator except to ask questions about the Settlement or report a change of address or name, the call center had received over 625 inquiries as of July 1, 2013.  *Id.* ¶ 9.  These facts demonstrate that the forms of notice approved by the Court have been effective.

The deadline for opting out of the class was June 25, 2013.  Only one opt-out was submitted.  *See* Schlactus Decl. ¶ 10 & Exhibit 1.

The deadline for filing an objection to the Settlement was July 9, 2013. No objections were filed, as the Court's docket reflects.

The materials filed in support of the motion for preliminary approval included two versions of the claim form to be mailed to Class Members should the Court grant final approval of the Settlement. *See* Settlement Agreement Exs. 1-2; *id.* Ex. 5 at Exs. A-B. Plaintiffs wish to call the Court's attention to one addition to the claim forms that are attached to the proposed order submitted with this motion for final approval. In consultation with the Claims Administrator and defense counsel, language has been added describing additional documentation that must be submitted to the Claims Administrator by someone filing a claim on behalf of the estate of a deceased Class Member, or on behalf of a Class Member who is incompetent or otherwise legally incapacitated. The purpose of this language is to protect against fraudulently filed claims while preserving the ability of Class Members' appropriate legal representatives to file claims that will be deemed eligible by the Claims Administrator. The additional language is found at paragraph 12 of the revised claim forms attached as Exhibits A and B to the proposed order.

**ARGUMENT**

The Settlement Agreement is a fair, reasonable and adequate resolution of the matter that provides substantial and meaningful relief to members of the class, results from extensive litigation and arm's length negotiations by experienced counsel, and takes account of the added complexity and risks caused by the related declaratory judgment action concerning RSHT's insurance coverage.

## I.   FINAL APPROVAL SHOULD BE GRANTED BECAUSE THE SETTLEMENT AGREEMENT IS FAIR, REASONABLE, AND ADEQUATE

In determining whether to grant final approval of a class action settlement, a court must determine whether the settlement is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2); *see Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D.N.C. 1994); *Benway v. Res. Real Estate Servs., LLC*, No. WMN-05-3250, 2011 WL 1045597, at *4 (D. Md. Mar. 16, 2011); *Manual for Complex Litig.* (Fourth) § 21.634-35 (Federal Judicial Center 2004) ("*Manual*").  This requires an examination of the same factors that the Court addressed in granting preliminary approval.  The Fourth Circuit applies a four-factor fairness inquiry and a five-factor adequacy inquiry in determining whether a class action settlement should be approved.  *See, e.g.*, *In re Jiffy Lube Secs. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991) ("*Jiffy Lube*"); *In re The Mills Corp. Secs. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009) ("*Mills*").  No specific factors must be considered in assessing reasonableness.  *See, e.g.*, *Mills*, 265 F.R.D. at 258; *Beaulieu v. EQ Indus. Servs., Inc.*, No. 5:06-cv-00400-BR, 2009 WL 2208131, at *23 (E.D.N.C. July 22, 2009).

The fairness factors are:

(1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the

negotiations; and (4) the experience of counsel in the [relevant] area of . . . class action litigation.

*Mills*, 265 F.R.D. at 254 (quoting *Jiffy Lube*, 927 F.2d at 159).  The adequacy factors are:

> (1) the relative strength of the plaintiffs' case on the merits; (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (3) the anticipated duration and expenses of additional litigation; (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment; and (5) the degree of opposition to the settlement.

*Id.* (same).

Consideration of these factors and those that are relevant to reasonableness demonstrates that the proposed settlement should receive final approve from the Court.

**A.     The Fairness Factors**

All of the fairness factors indicate that the Settlement Agreement should be finally approved.

**1.     <u>Posture of the Case</u>**

This factor addresses principally "how far the case has come from its inception."  *Mills*, 265 F.R.D. at 254.  Settlement at a very early stage may suggest "collusion among the settling parties" and that the proposed settlement is not legitimate.  *Jiffy Lube*, 927 F.2d at 159; *see also Mills*, 265 F.R.D. at 254.  Here there have been hard-fought motions over personal jurisdiction and whether Plaintiffs have stated a claim pursuant to any of their five causes of action, among other disputed motions.  The vigorous litigation of these issues since the inception of the case demonstrates a clear lack of collusion.

The posture of the case also favors approval for the additional reason articulated in

*Horton*:

> By reaching an agreement in principle prior to notification of the potential class members, the members could choose to be included or excluded based on the terms of the proposed settlement.  If such agreement had been reached after notification, potential class members would have had to decide whether to opt-in or opt-out of the class without knowledge of the proposed settlement. Thus, the posture of the case at the time of the settlement favors final approval.

*Horton*, 855 F. Supp. at 829.

### 2.   **Extent of Discovery**

As described above, there has been extensive formal discovery and informal investigation.  *See supra* at 3-4.  All discovery for class certification was completed prior to the September 28, 2012 mediation.  *See* Schlactus Decl. ¶ 8.  Class certification discovery, standing alone, is sufficient for this factor to favor approval of the settlement.  *See In re Red Hat Inc. Sec. Litig.*, No. 5:04-cv-473-BR(3), 2010 WL 2710517, at *2 (E.D.N.C. June 11, 2010).  Discovery also encompassed merits issues because, as the Court observed, no precise line between class certification and merits discovery was possible here.  *See* Initial Pretrial Order (June 28, 2012) (Docket No. 46) ¶ 2(a).  Moreover, the thousands of pages in initial disclosures produced by RSHT went in large part to the merits of the case.  Informal investigation conducted by Plaintiffs through independent investigation included interviews with over 200 witnesses and review of over 4,500 pages regarding both class certification and merits issues.  In *Jiffy Lube*, the Fourth Circuit held that even though no formal discovery had taken place, informal discovery was an adequate substitute.  *See* 927 F.2d at 159; *see also Strang v. JHM Mortg. Sec. Ltd. P'Ship*, 890 F. Supp. 499, 501 (E.D. Va. 1995) (despite lack of any formal discovery, "Plaintiffs have conducted sufficient informal discovery and investigation to fairly evaluate the merits of Defendants' positions during settlement negotiations").

### 3.   Circumstances Surrounding Negotiations

This factor serves to assure that the settlement is the result of arm's-length negotiations based on counsel's informed understanding of the case. *See Mills*, 265 F.R.D. at 255. The circumstances here include a failed face-to-face attempt to resolve the matter in 2011; a successful face-to-face mediation in 2012 involving not only counsel for the parties but also Nationwide's litigation counsel and other Nationwide representatives; and additional telephone discussions and negotiations involving counsel and the mediator. The negotiations broke down for a year and, even after that, were contentious at times. As in *Beaulieu*, this is "consistent with the tenor of counsel's filings . . . on contested matters, which have demonstrated zealous pursuit of their respective client's interests." 2009 WL 2208131, at *25. There was even substantial difficulty in reaching agreement on selection of a mediator, requiring an extension of time from the Court. Pls.' Mot. for Extension of Time to Identify & Contact Mediator (July 30, 2012) (Docket No. 56). The success in finally reaching an agreement was based on a well-developed understanding of the factual and legal issues in both this case and the insurance coverage case, and was achieved only through the involvement of Professor Douglass as mediator. All of these circumstances favor approval of the proposed settlement.

### 4.   Experience of Counsel

Lead counsel Relman, Dane and Colfax PLLC ("RDC") is a civil rights law firm based in Washington, DC, with a national practice. *See* Ex. 4 ("Relman Decl.") ¶ 1. RDC routinely litigates a wide range of discrimination cases in federal court including many cases, like this one, that involve lending and other consumer issues under both state and federal law. *See id.* ¶ 6.

RDC currently serves as plaintiffs' counsel in two other class actions. It represents African-American Secret Service agents denied promotions as lead counsel in *Moore v.*

*Napolitano*, No. 00-953 (D.D.C. filed May 3, 2000).  *See id.* ¶ 7.  In *In re Black Farmers Discrimination Litigation*, No. 1:08-mc-00511-PLF (D.D.C. filed Aug. 7, 2008), a $1.25 billion dollar case against the United States on behalf of African-American farmers who were denied loans from the Department of Agriculture, RDC serves as one of several firms representing plaintiffs (but is not lead counsel).  *See id.*  In appointing RDC as lead class counsel in *Moore*, the court stated that, "[t]here is no dispute as to whether the plaintiffs' class counsel are appropriate, and there is no indication that class counsel lack the experience and knowledge required to represent the class."  *Moore v. Napolitano*, __ F. Supp. 2d. __, 2013 WL 659111, at *21 (D.D.C. 2013).  Lead undersigned counsel, John P. Relman, has served as lead counsel in a number of class action cases, including *Dyson v. Flagstar Corp.*, No. DKC93-1503 (D. Md.), a class action challenging discriminatory treatment in Denny's restaurants across the country that was settled for $17.725 million and non-monetary relief.  *See* Relman Decl. ¶ 4.

Counsel's experience gives substantial credence to their representation to the Court herein that the settlement is fair, reasonable and adequate.  *See, e.g.*, *Mills*, 265 F.R.D. at 255.

### B.    The Adequacy Factors

All of the adequacy factors also indicate that the Settlement Agreement should be finally approved.

### 1.    Relative Strength of Plaintiffs' Case on the Merits and Difficulties of Proof or Strong Defenses Likely at Trial

The first two adequacy factors are often addressed in tandem.  *See, e.g.*, *Mills*, 265 F.R.D. at 255-56.  They consider "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case."  *Id.* at 256.  Undersigned counsel are very confident in the strength of Plaintiffs' case, particularly in light of the declarations obtained from students and former employees of RSHT, yet are

cognizant of the Court's observation that, "no matter how confident one may be of the outcome of litigation, such confidence is often misplaced."  *Id.* (internal quotation marks and citation omitted).

This case includes issues that are typically difficult to prove, an obstacle that is regularly noted when applying the first two adequacy factors.  *See, e.g.*, *Jiffy Lube*, 927 F.2d at 159.  These include scienter, materiality of misrepresentation, and reliance with respect to the state law fraudulent inducement and VCPA claims.  *See Mills*, 265 F.R.D. at 256 (identifying these as significant barriers to proving fraud claim); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 665-66 (E.D. Va. 2001) (same) ("*MicroStrategy*").  The Court described proving these elements in a fraud case as a "heavy burden."  *MicroStrategy*, 148 F. Supp. 2d at 666.  Plaintiffs' other state law claim, for breach of contract, would also present a difficult issue of proof.  The contract claim is based on RSHT's alleged failure to provide an adequate education, *see* Second Amended Compl. (Dec. 7, 2011) (Docket No. 21) ("SAC") ¶ 412, but RSHT would be able to present evidence that numerous students passed their licensing and certification examinations and are actively employed in their field of study after attending the school.  It is uncertain how a jury would view such evidence.

With respect to Plaintiffs' federal claims, they must prove discriminatory intent or impact.  Here, too, there would be challenges.  Plaintiffs would rely on jurors finding the witnesses supporting the intent claim more credible than those who would sharply dispute it, and on jurors' willingness to draw inferences from other facts such as the over-representation of African Americans in the study body.  RSHT would likely raise as a defense to the disparate impact claim that the school's education is geared toward low-income students, and that focusing

16

on recruiting low-income students is a legitimate business practice despite any resulting over-representation of African Americans.  This defense might appeal to a jury.

RSHT's two Rule 12 motions also demonstrate that there are considerable legal hurdles that Plaintiffs must overcome to prevail.  Plaintiffs strongly believe that both motions should be denied were they to be refiled, but there would be no certainty.

In short, there would be genuine challenges in proving this case, which favors approval of the proposed settlement.

### 2.   Duration and Expense of Additional Litigation

There is no doubt that litigation of this case through trial would require considerable additional time and expense.  Merits discovery not encompassed within the discovery taken thus far would need to be conducted.  This would likely include a very large number of fact deponents given the many students, teachers and administrators who have been enrolled at or employed by RSHT.  *See* Aff. of C. Lake (Dec. 15, 2011) (Docket No. 22-2) ¶¶ 26-27 (estimating 300 employees and 2,715 students over prior five years alone).  Trial would be lengthy because there could be a very large number of fact witnesses.  There would also be dueling expert witnesses regarding vocational education, demographics, and possibly other subjects.  Throughout all of this, there would be hard-fought motions practice, as indicated by the history of the litigation to date.  And as in *MicroStrategy*:

> Nor is it likely that this litigation would have ended with a jury verdict; there is little doubt that a jury verdict for either side would only have ushered in a new round of litigation in the Fourth Circuit and beyond, thus extending the duration of the case and significantly delaying any relief for plaintiffs.

148 F. Supp. 2d at 667.

3.      **Solvency of Defendant and Likelihood of Recovery on a**
        **Litigated Judgment**

This factor is particularly salient because there is a significant risk that, no matter how successful Plaintiffs are at trial, they would not be able to collect anything of note.  During the class period, students have paid RSHT approximately $26.1 million in tuition (approximately $21.4 million of which came through federal student loans), exclusive of tuition paid with federal grant funds.  At trial, Plaintiffs would seek at least this much in out-of-pocket damages, in addition to compensation for non-economic harm and punitive damages.  RSHT, however, does not have sufficient assets to fund any meaningful amount of a favorable verdict itself.

The only asset that might allow RSHT to fund a verdict is its Nationwide insurance policies.  Without the proposed settlement, however, the potential for insurance coverage could be eliminated in its entirety as a result of the declaratory judgment action pending before Judge Hudson.  If Judge Hudson were to rule that there is no coverage for Plaintiffs' claims, the class would as a practical matter have no realistic way of collecting on a verdict.  Plaintiffs' Counsel have analyzed all of the Nationwide policies and believes that there would be a significant risk of such a ruling if the settlement were not approved.  If there is no coverage, the costs of defending the lawsuit alone could result in RSHT's bankruptcy.  The inability to recover damages for these reasons is an important factor favoring settlement of class actions.  *See Bicking v. Mitchell Rubenstein & Assoc. P.C.*, No. 3:11-cv-78-HEH, 2011 WL 5325674, at *5 (E.D. Va. Nov. 3, 2011) ("cost of proceeding with trial could render Defendants insolvent, and thus impede Plaintiffs' ability to recover a litigated judgment"); *MicroStrategy*, 148 F. Supp. 2d at 667 (substantial verdict likely to cause defendant's bankruptcy, "leaving plaintiffs with nothing but a massive, unsecured claim against the company that might well lead to little or no recovery").

### 4. Degree of Opposition

Even with individualized notice given to every known Class Member, as well as newspaper notice, not a single objection to the Settlement Agreement has been filed. All of the Plaintiffs likewise support the settlement. Moreover, only one person has opted out of the class.

The absence of any opposition is a compelling reason to grant final approval. *See*, *e.g.*, *Microstrategy*, 148 F. Supp. 2d at 667-68.

### C. Reasonableness

As noted above, there are no specific factors used to assess reasonableness in the Fourth Circuit. Factors that Plaintiffs believe are relevant, however, all favor approval of the proposed settlement.

### 1. The Size of the Recovery is Reasonable

The settlement achieves an excellent result for the class, especially in light of the legal and factual obstacles that Plaintiffs must overcome, the costs of proceeding through trial, and the possibility that even if Plaintiffs obtained a successful judgment they would not be able to collect anything. The $5 million settlement fund represents approximately 19% of the tuition that the Class Members paid to RSHT. In *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136 (E.D. Pa. 2000) – another class action by students against a vocational school that is the most analogous case anywhere in the country identified by Plaintiffs – the court approved a settlement for only 17% of the tuition paid by the students.[4] *See id.* at 144, 148. Courts have approved class action settlements reflecting much lower percentage recoveries. *See, e.g.*, *MicroStrategy,* 148 F. Supp.

---

[4] The 19% and 17% figures both reflect the full recovery, *i.e.*, before any allocation for fees and costs. In *Cullen*, the court approved fees equal to one-third of the recovery and also approved additional costs. *See* 197 F.R.D. at 146-47.

2d at 666 n.22 (collecting cases).  The 19% recovery here is well within the bounds of reasonableness.

2.     <strong><u>The Incentive Awards for the Named Plaintiffs are Reasonable</u></strong>

The eight named Plaintiffs have all devoted substantial time and effort to the development and prosecution of the lawsuit.  They have met with counsel in-person and telephonically on numerous occasions, searched for and provided documents, answered interrogatories, and subjected themselves to public attention as this case has attracted significant media interest.  Five of the Plaintiffs were deposed and met with counsel to prepare for their depositions; the other three were ready and willing to be deposed but were not selected by Defendant.  Two of the Plaintiffs attended the in-person mediation, and all met with counsel on short notice to review and approve the tentative agreement in principle reached at the mediation. The commitment of the named Plaintiffs has been steadfast and invaluable in achieving the settlement.

The incentive awards for the named Plaintiffs (which are in lieu of, not in addition to, what they would otherwise receive from the settlement) vary according to the outstanding balance of the loans they incurred to attend RSHT.  Each award is equal to the balance as of February 2013 plus $10,000.  The individual totals range from $14,995.23 to $34,640.05.   These amounts are reasonable.  *See, e.g.*, *Helmick v. Columbia Gas Transmission*, No. 2:07-cv-00743, 2010 WL 2671506, at *3 (S.D. W. Va. July 1, 2010) ($50,000 incentive award in addition to regular distribution from settlement proceeds); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. cv-08-1365, 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) (collecting cases with incentive awards from $20,085 to $55,000).

20

### 3. The Incentive Awards for the Declarants are Reasonable

The seventy-five declarants all spent considerable time meeting with counsel to explain their experience with RSHT and to review and revise draft declarations. They all subjected themselves to public attention by providing evidence. Five of the declarants, selected by RSHT, were also deposed. The $3,000 incentive awards for the declarants are reasonable. *See Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving incentive awards of $3,000 to affiants).

### 4. The Attorneys' Fees and Costs are Reasonable

As in *Mills*, this settlement "results in the formation of a 'common fund' for the benefit of [the] entire class, and thus, reasonable attorneys' fees may be awarded from this 'common fund.'" 265 F.R.D. at 260. The "'percentage of recovery'" method is preferred to the "lodestar method" in awarding fees in common fund cases. *See id.*; *see also Temp. Servs., Inc. v. Am. Int'l Group, Inc.*, No. 3:08-CV-00271-JFA, 2012 WL 4061537, at *7 (D.S.C. Sept. 14, 2012) ("The percentage method also is widely believed preferable in a case such as this one where the Plaintiffs agreed to pay counsel on a contingency fee basis."). The Settlement Agreement uses the percentage method and allocates 33% of the $5 million fund (*i.e.*, $1,650,000) to the two law firms representing Plaintiffs. This covers both fees and costs, even though the firms' combined lodestar by itself substantially exceeds this figure. Another court in this Circuit recently surveyed awards in class action settlements and found that awards of one-third for fees alone are very common, and approved as reasonable a fee award of one-third of a $4 million common fund (as well as $230,589.11 in costs). *See Temp. Servs.*, 2012 WL 4061537, at *8-9, 10; *see also, e.g., Muhammad v. Nat'l City Mortg.*, No. 2:07-0423, 2008 WL 5377783, at *8-9 (S.D. W. Va. Dec. 19, 2008) (approval of one-third fee award).

The reasonableness of the proposed award of fees and costs is addressed in greater detail in Section IV, *infra*, in which Plaintiffs support their request for a fee award in accordance with Fed. R. Civ. P. 23(h) and Fed. R. Civ. P. 54(d)(2).

## II.   A SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED UNDER RULE 23(b)(2) AND RULE 23(b)(3)

The Settlement Agreement provides that the settlement will be effectuated through class action treatment, and that the parties will support certification for this purpose.  *See* Settlement Agreement Section II.  Certification requires meeting the requirements of Fed. R. Civ. P. 23. *See, e.g.*, *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 537 (E.D. Va. 2006) ("*BearingPoint*").  This requires satisfying each of the four criteria set forth in Rule 23(a)(1)-(4), but only one of the three subcategories of Rule 23(b).  *See, e.g.*, *id.*  "The practice in the Fourth Circuit is 'to give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application [that] will in the particular case best serve the ends of justice for affected parties and promote judicial efficiency.'"  *Fisher v. Virginia Elec. & Power Co.*, 217 F.R.D. 201, 210 (E.D. Va. 2003) (quoting *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989)).

The proposed Settlement Class satisfies the criteria of Rule 23(a), and satisfies Rule 23(b)(2) with respect to injunctive relief and Rule 23(b)(3) with respect to monetary relief. "Hybrid" certification for purposes of settlement is therefore appropriate.  *See, e.g.*, *Eubanks v. Billington*, 110 F.3d 87, 96 (D.C. Cir. 1997) (recognizing authority of district courts to grant hybrid certification under (b)(2) and (b)(3)).

The Court provisionally certified the Settlement Class and appointed undersigned counsel to represent the class in the Preliminary Approval Order.  Plaintiffs submit that the Court should now make the certification and appointment permanent.  The only thing relevant to these issues

that has changed since the Preliminary Approval Order is that, in response to the giving of notice, no objections to the proposed settlement were received and only one person out of over 4,000 Class Members opted out of the class.

### A.      Rule 23(a) Is Satisfied

#### 1.      Rule 23(a)(1) – Numerosity

The class includes thousands of people.  *See* Claims Admin. Decl. ¶ 6.  This easily satisfies the Rule 23(a)(1) requirement that "the class is so numerous that joinder of all members is impracticable."  *See, e.g.*, *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 559 (E.D. Va. 2000) (99 members "is in excess of that required").

#### 2.      Rule 23(a)(2) – Commonality

To establish commonality, "even a single common question will do," as long as it is of the right type.  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011) (internal quotation marks, brackets, and citation omitted).  The question must be susceptible to "classwide resolution," meaning the answer "will resolve an issue that is central to the validity of each one of the claims in one stroke," and that it is "apt to drive the resolution of the litigation."  *Id.* at 2551 (internal quotation marks and citation omitted).  There are numerous questions here that satisfy *Dukes* and Rule 23(a)(2).

The claims at issue in this suit concern RSHT's marketing, admissions and financial aid practices, and the quality of the education it provides.  The record demonstrates that RSHT goes to great lengths to assure uniformity in each of these areas, and courts consistently find commonality satisfied "when the defendants are alleged to have directed standardized conduct toward the putative class members . . . ."  *Chisolm*, 194 F.R.D. at 555 (internal quotation marks and citation omitted).  Standardization of conduct is RSHT's basic operating principle.  That

23

there may be some modest differences in individual Class Member's exposure to such conduct does not undermine commonality.  *See, e.g.*, *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006); *BearingPoint*, 232 F.R.D. at 538; *Fisher*, 217 F.R.D. at 211-12.  Thus, in *Chisholm v. United States Postal Service*, 665 F.2d 482 (4th Cir. 1981), commonality was satisfied and a class certified even though the Class Members worked at different post office branches because they all worked under the centralized control of the Charlotte post office.  *See id.* at 492.  A class was likewise certified in *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992), another case brought by students challenging the adequacy of their vocational school, notwithstanding some differences among students with respect to enrollment period, student satisfaction, and whether they passed a state licensing examination.  *Id.* at 1015, 1017-18.

**Admissions and Financial Aid.**  RSHT assures that its admissions and financial aid personnel treat all prospective students in exactly the same way, regardless of the campus or program in which they are interested.  A detailed "Follow-Up Survey" completed by prospective students helps to "assure uniformity in the admissions process."  *See* Ex. 4 to Pls.' Unopposed Mot. for Preliminary Approval of Proposed Class Action Settlement, Provisional Certification of Class and Approval of  Notice (Apr. 9, 2013) (Docket No. 78) ("Preliminary Approval Mot.") (Exhibit 4 is the Fed. R. Civ. P. 30(b)(6) deposition of RSHT, hereinafter "30(b)(6) Dep.") at 159:24-160:24, 162:9-17; *id.* at Ex. 23.[5]  Extensive training, in particular by RSHT's Director of Marketing and Director of Financial Aid (corporate positions), serves the same purpose.  *See* Ex. 5 to Preliminary Approval Mot. (collection of declarations from students and ex-employees) at

---

[5] Plaintiffs submitted voluminous deposition excerpts, declarations, and other documents as exhibits 3 to 10 in support of the class certification component of their Preliminary Approval Motion in April.  Instead of resubmitting the identical exhibits, Plaintiffs refer herein to these exhibits as previously submitted.

PL002243-44 (M. Holmes Decl. ¶¶ 4, 6, 9); *id.* at PL002247 (A. Wright Decl. ¶ 5); 30(b)(6) Dep. at 138:17-139:5, 144:12-145:2, 159:24-160:4, 194:25-196:11, 196:20-197:3, 222:25-223:17; *see also* 30(b)(6) Dep. at 40:2-13.  RSHT believes it has succeeded in implementing a standardized process for all prospective students.  *See* 30(b)(6) Dep. at 160:5-8, 160:25-161:5, 161:12-162:8.

The process begins with a script that RSHT receptionists follow when fielding phone calls from prospective students.  *See id.* at 132:10-134:24; *id.* at Ex. 18.  The receptionist then passes the call to an admissions officer, who also follows a script.  *See id.* at 52:14-18, 136:5-21; *id.* at Ex. 19; *see also id.* at 134:25-135:25 (admissions officers are interchangeable).  The same script has been used over time.  *See id.* at 137:6-138:16.  Admissions officers must follow a 60-page PowerPoint presentation (called a "flip chart") with prospective students who visit the school.  *See id.* at 139:17-140:13, 140:17-141:21; Ex. 5 to Preliminary Approval Mot. at PL002243 (Decl. of M. Holmes ¶ 4).  They must also use the School Catalog to explain the school's admissions requirements.  *See* 30(b)(6) Dep. at 143:12-144:16, 147:13-16.  Admissions requirements do not differ by campus, have been consistent over time, and have only differed in minor respects between two programs (practical nursing and radiology) and the others.[6]  *See id.* at 145:3-146:19, 147:7-12, 148:7-9; *id.* at Ex. 21 (School Catalog at RSHT0021819-20).  Prospective students must also be given a campus tour.  *See id.* at 159:12-19.  Admissions officers follow these procedures in practice.  *See id.* at 142:8-15, 147:17-20.

Prospective students must also meet with a financial aid officer, *see id.* at 159:12-20, 194:4-12, and that process is likewise highly standardized, *see id.* at 194:25-195:16, 196:8-197:3,

---

[6] It is "a rarity" that a prospective student is denied admission by RSHT.  30(b)(6) Dep. at 228:8-20.  Former admissions officer Melanie Holmes states in her declaration that, "In fact, RSHT really did not have any admissions standards."  *See* Ex. 5 to Preliminary Approval Mot. at PL002244 (Decl. of M. Holmes ¶ 8).

197:24-198:24, 199:2-8, 200:12-201:3, 220:14-221:2, 222:25-223:17. Both the admissions

officers and the financial aid officers use the same core documents with all students.[7]

Plaintiffs allege that as part of these standardized presentations, RSHT routinely makes

certain promises about the school to induce enrollment which are knowingly false, including:

that its programs prepare students to become certified or licensed in their fields of study, *see,*

*e.g.*, SAC ¶¶ 92, 98; that it places students in valuable externships, including externships they

need to become certified and licensed; *see, e.g.*, *id.* ¶¶ 93, 101-02; and that its "CHH" program

makes students eligible for certification in "community home health," a nonexistent credential,

*see, e.g.*, *id.* ¶ 110. Substantial evidence adduced without formal merits discovery supports these

allegations. *See, e.g.*, Ex. 5 to Preliminary Approval Mot. at PL001825-26 (Decl. of B. Avington

¶¶ 5, 6, 7, 12), PL001830 (Decl. of V. Banks ¶ 5, 6), PL001835 (Decl. of M. Blaney ¶ 5, 6),

PL001840 (Decl. of C. Champoco ¶ 6, 7), PL001844 (Decl. of S. Chavis ¶ 5, 6), PL001849-50

(Decl. of W. Clark ¶ 6, 7, 8, 13), PL002018-19 (Decl. of B. Drew ¶¶ 14-17), PL002037 (Decl. of

D. Cosner ¶¶ 18-19), PL002044-48 (Decl. of S. Higgins ¶¶ 4-20), PL002060-61 (Decl. of T.

Branch ¶¶ 9-12). Whether such knowingly false statements are part of RSHT's uniform

treatment of prospective students raises a common question that is central to the fraudulent

inducement and VCPA causes of action. *See Bobbitt v. Acad. of Court Reporting, Inc.*, 252

F.R.D. 327, 330 (E.D. Mich. 2008) (common question, in case brought by students of vocational

school, whether oral statements constituted fraud). Whether such statements are a material part

---

[7] *See, e.g.*, 30(b)(6) Dep. at Ex. 24 (Application for Admission); *id.* at 162:18-23, 163:13-164:2, 164:9-25 (same); *id.* at Ex. 25 (Enrollment Agreement); *id.* at 168:18-169:1, 170:1-19, 172:7-11 (same); *id.* at Exs. 27-28 (Enrollment Certification); *id.* at 175:8-177:10) (same); *id.* at Ex. 29 (Orientation Letter); *id.* at 177:11-178:8) (same); *id.* at Ex. 32 (Entrance Interview); *id.* at 179:18-180:3, 181:22-23, 197:4-198:24, 199:2-8) (same); *id.* at Ex. 34 (Tuition Worksheet); *id.* at 201:22-202:12, 203:10-22, 204:5-22 (same); *id.* at Ex. 35 (Cost of Attendance Worksheet); *id.* at 204:25-205:6, 206:4-207:5 (same); *id.* at Ex. 36 (Entrance Counseling Requirements); *id.* at 209:11-211:2 (same); *id.* at Ex. 38 (Installment Note); *id.* at 213:12-214:17 (same).

of inducing students to enroll, and whether they are relied on by students in deciding to enroll, are also common questions.  *See Cullen v. Whitman Med. Corp.*, 188 F.R.D. 226, 234-35 (E.D. Pa. 1999); *see also Chisolm*, 194 F.R.D. at 560-65.[8]

**Education.**  In their breach of contract cause of action, Plaintiffs allege that RSHT fails to provide an adequate education consistent with the implied covenant of good faith and fair dealing.  Whether it does so is yet another common question because of the uniformity imposed by RSHT in its educational programs.

RSHT requires its instructors to follow a precise curriculum that is established at the corporate level and distributed to the campuses to be implemented identically.  *See* 30(b)(6) Dep. at 20:6-25, 22:10-23:12, 25:4-24, 27:20-21, 37:19-38:3  The curriculum even details the lesson plan for every class session.  *See id.* at 23:12-14, 25:25-26:3.  The core of the curriculum has been consistent over time.  *See id.* at 37:7-11; *see also id.* at 21:25-22:3.  Assuring that the instructors adhere to the curriculum as written is a high priority for the school.  *See id.* at 38:4-10.  Compliance is monitored carefully by having senior staff sit in on classes and through student evaluations.  *See id.* at 27:24-28:11, 29:13-30:11.  Deviation has never been a substantial problem.  *See id.* at 35:20-36:1; *see also id.* at 38:12-39:8.

Members of the proposed class and former employees have testified repeatedly that the education provided by RSHT is not adequate.  *See, e.g.*, Ex. 5 to Preliminary Approval Mot. at PL002015-19 (Decl. of B. Drew ¶¶ 6-13, 16), PL002037 (Decl. of D. Cosner ¶¶ 17-19),

---

[8] With respect to the VCPA claim, whether RSHT is acting as "a supplier" and "in a consumer transaction," such that the statute applies, *see Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456 (E.D. Va. 2009), raises additional common questions.  Whether RSHT is a "supplier" turns on what RSHT does, not on any actions of the members of the proposed class.  Similarly, this Court previously explained in the course of granting class certification in *Chisolm* that whether selling a particular product constitutes a consumer transaction under the VCPA does not require individualized inquiries, which would weigh against class certification.  *See Chisolm*, 194 F.R.D. at 567.

PL002044-48 (Decl. of S. Higgins ¶¶ 5-17, 20); PL002059-60 & PL002063 (Decl. of T. Branch ¶¶ 4-9, 18), PL002171-75 (Decl. of C. Duesing ¶¶ 3-14, 18), PL002236-38 (Decl. of M. Rollins ¶¶ 9, 12-16); PL001825-26 (Decl. of B. Avington ¶¶ 11-15), PL001831 (Decl. of V. Banks ¶¶ 11-15), PL001835-36 (Decl. of M. Blaney ¶¶ 10-17), PL001841 (Decl. of C. Champaco ¶¶ 11-13).  Whether these shortcomings constitute a breach of the implied covenant is a common question because of RSHT's effort to deliver a uniform, standardized educational program to every student in each of its few programs.  This is a global question, not one specific to individuals or campuses or limited time periods.

**Marketing.**  RSHT's marketing is controlled by its corporate office and has been uniform over time.  It is controlled by the school's Director of Marketing and CEO, both corporate positions.  *See* 30(b)(6) Dep. at 39:21-40:18, 42:19-43:6; *see also id.* at 84:12-19, 85:9-11.  The campuses and programs do not advertise separately; rather, RSHT maintains a single marketing campaign designed to generate interest in the school as a whole.  *See id.* at 85:12-19, 86:17-87:7, 116:9-24.  Even occasional campus-based events such as "open houses" have been the same at each campus.  *See id.* at 17:7-9.

RSHT's Rule 30(b)(6) witness testified that "most of our advertising is the same all the time."  *Id.* at 98:15-16.  She reiterated this with respect to television, print, and radio.  *See id.* at 80:25-81:10 (same basic television ad), 46:20-47:3 (same television channels), 113:22-114:12 (same basic print ad), 83:7-12 (same basic radio ad).  RSHT has even maintained the same slogan in its advertising over the years.  *See id.* at 12:16-13:11 ("Learn how far your mind can take you.").

28

Whether RSHT's uniform, top-down controlled marketing strategy is discriminatory, as alleged in the two federal law causes of action and as numerous witnesses have testified in their declarations,[9] is therefore also a common question.

With respect to all of these issues addressed in this section and all of Plaintiffs' causes of action, there are common issues of fact and law that would drive the resolution of this suit absent settlement, thus satisfying the commonality requirement.

### 3.    Rule 23(a)(3) – Typicality

"Where the commonality requirement focuses on the claims of the class as a whole, the [Rule 23(a)(3)] typicality requirement is focused on the claims of the named plaintiffs." *Fisher*, 217 F.R.D. at 212.  "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members," but the "mere existence of individualized questions with respect to the class representative's claim will not bar class certification." *DiFelice*, 235 F.R.D. at 78-79 (internal quotation marks and citations omitted). The class representatives' claims must only "fairly encompass" the claims of the class; they "need not have identical factual and legal claims in all respects." *Fisher*, 217 F.R.D. at 212; *see also, e.g.*, *BearingPoint*, 232 F.R.D. at 538 (class representatives' claims must be "substantially similar to those of the unrepresented parties").  The allegations of the complaint and the testimony of those who were deposed demonstrate that all eight named Plaintiffs easily satisfy the typicality requirement.

---

[9] *See, e.g.*, Ex. 5 to Preliminary Approval Mot. at PL001827 (Decl. of B. Avington ¶ 23), PL001832 (Decl. of V. Banks ¶ 24), PL001846 (Decl. of S. Chavis ¶ 24), PL001851 (Decl. of W. Clark ¶ 20), PL001855 (Decl. of J. Davis ¶ 21), PL002020 (Decl. of B. Drew ¶ 21), PL002031-32 (Decl. of C. Freiburger ¶ 18), PL002037-38 (Decl. of D. Cosner ¶¶ 20-22), PL002041 (Decl. of R. Burke ¶¶ 11-12), PL002056 (Decl. of S. Ruiz ¶ 18), PL002061-62 (Decl. of T. Branch ¶¶ 14-15), PL002240-41 (Decl. of M. Rollins ¶¶ 22-24), PL002244-45 (Decl. of M. Holmes ¶¶ 12-14), PL002248 (Decl. of A. Wright ¶ 7).

The named Plaintiffs were all RSHT students during the class period.  *See* SAC at ¶¶ 58-65.  Most learned about the school through its uniform marketing program.  *See id.* at ¶¶ 122, 174, 211, 239, 260, 294; Ex. 6 to Preliminary Approval Mot. (Dep. of. S. Battle) ("Battle Dep.") at 23:15-24:16; Ex. 7 to Preliminary Approval Mot. (Dep. of L. Dabney) ("Dabney Dep.") at 29:22-30:23; Ex. 8 to Preliminary Approval Mot. (Dep. of T. Herbert) ("Herbert Dep.") at 27:1-4; Ex. 9 to Preliminary Approval Mot. (Dep. of L. Towns) ("Towns Dep.") at 19:15-20:18. They all had the same interactions with RSHT's admissions and financial aid personnel that RSHT makes sure all prospective students have, and allege that RSHT convinced them to enroll by making the same kind of false representations that are alleged by the class as a whole (*e.g.*, that the school would prepare them to pass certification and licensing examinations in their field of study and would give them appropriate externship experience).[10]  As alleged for the class, the named Plaintiffs relied on these false representations in deciding to enroll at RSHT.  *See, e.g.*, SAC at ¶¶ 131, 153, 179, 198, 216, 244, 269, 300.  They assert that the education they received suffered from the same shortcomings as is alleged with respect to the class as a whole.[11]  As with

---

[10] *See, e.g.*, SAC at ¶¶ 123-131, 139-140, 144, 149-153, 160-165, 167-168, 175-179, 185, 197-198, 212-216, 224-225, 227, 230-231, 240-244, 256, 260-265, 269, 280-86, 295-300, 312-313 (experience with admissions officers and false promises); Battle Dep. at 26:5-24, 42:2-14, 70:15-72:5, 75:15-76:8 (same); Dabney Dep. at 33:1-16, 34:10-35:2, 35:25-36:15, 39:1-6, 120:5-20 (same); Herbert Dep. at 30:12-21 (same); Ex. 10 to Preliminary Approval Mot. (Dep. of A. Thomas) ("Thomas Dep.") at 78:2-80:14, 81:7-24, 83:13-22, 85:18-86:12, 89:2-91:22, 114:20-115:1, 116:5-18 (same); Towns Dep. at 22:3-23:20, 24:10-25:24, 71:6-24, 108:4-12 (same); SAC at ¶¶ 128, 154, 180, 199, 217, 245, 267, 301 (experience with financial aid officers), Battle Dep. at Exs. 60-63, 65, 68, 70, 73-74, 76-77, 79, 94 (use of standard documents by admissions and financial aid officers); Dabney Dep. at Exs. 209-10, 212-13, 216 (same); Herbert Dep. at Ex. 49 (same); Thomas Dep. at Exs. 224-26, 230 (same); Towns Dep. at Exs. 125, 127, 129, 134 (same).

[11] SAC at ¶¶ 124, 129, 135-136, 138-44, 156-68, 175, 182-83, 185, 187-89, 203-04, 212, 219, 222, 224-25, 227-31, 241, 251-53, 274-76, 278-86, 295-96, 305-13; Battle Dep. at 118:3-120:4, 123:17-125:1, 130:18-131:18, 146:21-147:17; Dabney Dep. at 67:14-69:22, 70:23-71:4, 72:13-18, 118:22-119:12, 121:6-15; Herbert Dep. at 103:4-13; Thomas Dep. at 68:14-69:13, 114:20-

the class generally, they were left with unaffordable student loans and without improved job prospects. *See, e.g.*, *id.* at ¶¶ 5, 55.

### 4. Rule 23(a)(4) – Adequacy of Representation

"The purpose of the adequacy requirement is to ensure that there are no potential 'conflicts of interest between the named parties and the class they seek to represent.'" *DiFelice*, 235 F.R.D. at 79 (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997)); *see also, e.g.*, *Chisolm*, 194 F.R.D. at 556 (citing lack of "conflict or discord within the class" in evaluating adequacy requirement). "For a conflict of interest to prevent plaintiffs from meeting the requirement of Rule 23(a)[(4)], that conflict must be fundamental [and] must go to the heart of the litigation." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 430-31 (4th Cir. 2003). Competency of counsel is a second factor in assessing adequacy of representation. *See Chisolm*, 194 F.R.D. at 556 & n.16; *BearingPoint*, 232 F.R.D. at 541.

The adequacy requirement is satisfied in both respects. First, there is no indication of any conflict between the class representatives and the unnamed members of the proposed class, much less the kind of "fundamental" conflict described in *Gunnells*. The interests of the named Plaintiffs and the other students are aligned. They have a shared interest in, among other things, being compensated for the money they spent and borrowed to attend RSHT.

Second, undersigned counsel are experienced in consumer, discrimination, and class action litigation, and have demonstrated by their litigation of this case that they are able to pursue the Class Members' interests vigorously and are committed to doing so. *See Chisolm*, 194 F.R.D. at 556 n.16 ("The Court observes that the voluminous pleadings, filings, and active discovery suggest that Plaintiffs' counsel adequately meet their duties under this analysis. The

---

115:1, 116:5-18; Towns Dep. at 47:4-16, 51:15-23, 54:14-55:12, 59:5-12, 66:8-11, 68:1-21, 71:1-24, 79:13-16, 106:16-108:3.

Plaintiffs, through counsel, are representing the class with the fervor due under Rule 23 to the absent class members.").

### B.      Rule 23(b)(2) Is Satisfied

Certification under Rule 23(b)(2) is appropriate when injunctive or declaratory relief applicable to the class as a whole may be warranted.  *See Dukes*, 131 S. Ct. at 2557.  The proposed settlement included several forms of injunctive relief.  *See* Settlement Agreement Section IV.  Certification of a (b)(2) class is therefore proper with respect to these components of the settlement.

### C.      Rule 23(b)(3) Is Satisfied

With respect to the monetary relief, certification under Rule 23(b)(3) is appropriate because the two relevant criteria are satisfied:  (1) common questions of law or fact predominate over individualized questions, and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23 identifies four factors that are pertinent to this inquiry:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)     the likely difficulties in managing a class action.

*Id.*  The fourth factor is not relevant with respect to a settlement-only class.  *See Gunnells*, 348 F.3d at 440; *see also Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 302-04 (3d Cir. 2011) (en banc) ("for certification of a settlement class . . . the concern for manageability that is a central tenet in the certification of a litigation class is removed from the equation").

The focus in considering whether common questions predominate is liability, not damages. *See BearingPoint*, 232 F.R.D. at 542 ("[I]f the liability issue is common to the class, common questions are held to predominate over individual ones. Damages are less central to the predominance inquiry; courts generally hold that differences in damages among the potential class members do not generally defeat predominance if liability is common to the class.") (internal quotation marks and citations omitted). The common questions described above with respect to commonality and typicality are the predominant issues regarding liability. Their resolution will drive the liability determination as to each of the causes of action at issue.

The factors in subsections (A)-(C) further demonstrate that the class action device is superior. The "'dominant[]'" reason for subsection (A) is to provide for "'vindication of the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 445 (E.D. Va. 2004) (quoting *Amchem Prods., Inc.*, 521 U.S. at 616-17); *see also Chisolm*, 194 F.R.D. at 546 ("it is proper for the court to consider the inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually") (internal quotation marks and citation omitted). Lack of economic resources and incentives needed to bring individual suits are key considerations, *see Pitt*, 221 F.R.D. at 445-46, and both are present here. Plaintiffs allege that RSHT intentionally seeks out low-income students to maximize financial aid. *See* SAC ¶¶ 12, 324, 330, 341, 378, 380. Individual claims are likely to be in the four-figure or low-five figure range, which does not justify the substantial cost required to prove that the school is liable for damages. This factor thus supports class certification.

Plaintiffs are aware of no other litigation concerning the controversy. Students have wanted to bring suit before, *see* Battle Dep. at 128:22-129:5; 129:14-18; 130:11-20; 131:12-132:2, and their past inability to do so is indicative of the substantial resources needed to challenge an institution like RSHT and the need for class certification to make a challenge economically viable.

The third factor has effectively already been addressed through the decision to transfer the case to this District from Washington, D.C. Judge Kessler found that concentrating the claims here was the most sensible approach. *See* Mem. Op. (Apr. 30, 2012) (Docket No. 30) at 11-13. This Court did not analyze this factor differently in the course of granting preliminary approval of the Settlement Agreement and provisional certification of the class.

Accordingly, all the considerations relevant to Rule 23(b)(3) establish that certification of a (b)(3) class for purposes of the monetary relief is proper.

**D.     Plaintiffs' Counsel Satisfy the Requirements of Rule 23(g)**

Fed. R. Civ. P. 23(g) requires the Court to appoint class counsel when it certifies a class. Plaintiffs' Counsel have diligently investigated the potential class claims in this action; have substantial experience in discrimination, consumer, class action, and other complex litigation; are knowledgeable about law relevant to this action; and have committed significant resources to representing the class. *See infra* at 40-42, 46-47; Relman Decl. ¶¶ 2-7, 11, 15; Schlactus Decl. ¶¶ 5-6, 19-20. Accordingly, Plaintiffs' Counsel will continue to fairly and adequately represent the interests of the class through the final steps of the settlement process. *See* Fed. R. Civ. P. 23(g)(1) & (4).

34

## III.   ADEQUATE NOTICE HAS BEEN DISSEMINATED TO THE CLASS

Prior to finally approving a class action settlement, courts "must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Because Plaintiffs in this case requested certification in part under Rule 23(b)(3), the notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Id.* 23(c)(2)(B). Similarly, due process requires reasonable notice and the opportunity to be heard or withdraw from the class.  *See In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 231 (S.D. W. Va. 2005); *see also In re MicroStrategy, Inc. Sec. Litig.*, 150 F. Supp. 2d 896, 906-07 (E.D. Va. 2001) (approving notice that informed Class Members of options available to them).

Notice in accordance with these standards was accomplished pursuant to the procedures set forth in the Settlement Agreement and the Preliminary Approval Order.  *See* Settlement Agreement ¶¶ 17, 19-28; Preliminary Approval Order ¶¶ 2, 6-10.  RSHT provided to the Claims Administrator the records necessary to ascertain the identity and addresses of the Class Members, and the Claims Administrator conducted tracing to determine whether more up-to-date addresses were available.  *See* Claims Admin. Decl. ¶ 6.  Notice of the settlement was sent by the Claims Administrator to the individual Class Members via first-class United States mail substantially in the form attached as Exhibit 4 to the Settlement Agreement.  *See id.* ¶¶ 6, 7.  The return rate was unusually low.  *See id.* ¶ 10.  First-class mailing in conjunction with tracing satisfies Rule 23 and due process where, as here, the parties have addresses, social security numbers, and phone numbers of the Class Members.  *See Minter v. Wells Fargo Bank, N.A.*, 283 F.R.D. 268, 275 (D. Md. 2012); *see also Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 (PKC), 2011 WL 2207586, at *12 (S.D.N.Y. June 2, 2011).  The notice was provided

to Class Members with adequate time for them to decide if they wanted to object or opt out.  *See* Preliminary Approval Order ¶¶ 14-15 (opt-outs were due six weeks after notice was mailed; objections and opt-outs rescissions were due eight weeks notice was mailed).

As the Court already determined in ordering the mailing of notice in the Preliminary Approval Order, the content of the proposed notice was also sufficient.  As required under Rule 23(c)(2)(B) and Rule 23(e)(5), it described the case and terms of settlement, provided the class definition, told Class Members that they may appear through an attorney, told them that they may be excluded from the class or object to the settlement and how to do so, and explained the binding effect of a class judgment on Class Members.  The notice also described the claims process that will be utilized if the settlement receives final approval.

Even though the process of mailing notice to Class Members was adequate in and of itself, *see Minter*, 283 F.R.D. at 275; *Aponte*, 2011 WL 2207586, at *12, the Preliminary Approval Order also provided that the Claims Administrator would cause notice to be published in the Richmond Times Dispatch and the Progress Index (in Petersburg).  *See* Preliminary Approval Order ¶ 10.  The Claims Administrator did so.  *See* Claims Admin. Decl. ¶ 8.

## IV.     THE ATTORNEYS' FEES AND COSTS REQUESTED ARE REASONABLE AND SHOULD BE AWARDED ON THE BASIS OF THE PERCENTAGE OF RECOVERY METHOD

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d), and paragraphs 4(b) and 13 of the Settlement Agreement, Plaintiffs respectfully request that the Court award 33% of the $5,000,000 settlement ($1,650,000) for attorneys' fees and costs.  Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  It is well-settled that counsel who produce a benefit for a class are permitted compensation for their services.  *See, e.g.*, *Boeing Co. v. Van*

*Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *Mills*, 265 F.R.D. at 260 (counsel is "entitled to compensation and reimbursement for their efforts in ascertaining a benefit for the Class").  Awarding attorneys' fees is particularly important in civil rights cases to ensure that individuals who are injured by discrimination but unable to afford counsel can vindicate their rights.  *See City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 (1968).

Class Counsel in this case produced a significant benefit for the class by vigorously litigating the case and negotiating a common fund settlement of $5,000,000 plus additional nonmonetary relief.  The amount requested in fees and costs is based on the preferred "percentage of recovery" method; satisfies the seven-factor test commonly applied to assess the reasonableness of a percentage award; and satisfies a "lodestar crosscheck" because Class Counsel's lodestar of almost $1,900,000 substantially exceeds the amount requested.  An award of attorneys' fees and costs in the amount of $1,650,000 should therefore be approved.[12]

### A.      Fees Should Be Awarded Using the Percentage Method

When a settlement results in a common fund for the benefit of a class, courts use one of two methods to calculate an appropriate fee award:  the "lodestar" method (hours worked multiplied by hourly billing rate) and the "percentage of recovery" method (a flat percentage of the fund created by the settlement).  *See Mills*, 265 F.R.D. at 260.  The consensus among courts is that the percentage method is preferred.  *Id.*  ("other districts within this Circuit, and the vast majority of courts in other jurisdictions consistently apply a percentage of the fund method for

---

[12] Plaintiffs note that, in ruling on their request for fees and costs, the Court "must find the facts and state its legal conclusions under Rule 52(a)."  Fed. R. Civ. P. 23(h)(3).

calculating attorneys' fees in common fund cases" ); *Manual for Complex Litig.* (Fourth)
§14.121; *see also Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). This method "better aligns
the interests of class counsel and class members" by tying "the attorneys' award to the overall
result achieved rather than the hours expended by the attorneys." *Hess v. Sprint Commc'ns Co.
L.P.*, No. 3:11-CV-00035-JPB, 2012 WL 5921149, at *2 (N.D. W. Va. Nov. 26, 2012); *see also
Temp. Servs., Inc. v. Am. Int'l Group, Inc.*, No. 3:08-cv-00271-JFA, 2012 WL 4061537, at *7
(D.S.C. Sept. 14, 2012) ("The percentage method also is widely believed preferable in a case
such as this one where the Plaintiffs agreed to pay counsel on a contingency fee basis.").

District Courts in this Circuit, including this Court, have repeatedly preferred the
percentage of recovery method. *See, e.g.*, *Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339,
2013 WL 2285972, *4-5 (S.D. W. Va. May 23, 2013) (using the percentage method);
*Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07-0423, 2008 WL 5377783, *6-7 (S.D. W. Va.
Dec. 19, 2008) (same); *Mills*, 265 F.R.D. at 260 (E.D. Va. 2009) (same). Circuit Courts in other
parts of the country are generally in accord. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d
1043, 1047-50 (9th Cir. 2002); *Carlson v. Xerox Corp.*, 355 Fed. App'x. 523, 525-26 (2d. Cir.
2009); *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599-600 (7th Cir. 2005); *In re Thirteen Appeals
Arising out of San Juan DuPont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995);
*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994); *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
669 F.3d 632, 642-43 (5th Cir. 2012). The D.C. and Eleventh Circuits even mandate use of the
percentage method. *See Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1271 (D.C. Cir. 1993);
*Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991).

Fees should therefore be awarded here on the basis of the percentage of recovery method.

**B.      An Award of 33% of the Common Fund is Reasonable and Appropriate**

To weigh the reasonableness of a fee award based on the percentage method, this Court and others within the Fourth Circuit have repeatedly based their analyses on factors identified by the Third Circuit in *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 733 (3d Cir. 2001). *See Mills*, 265 F.R.D. at 261; *see also Deem*, 2013 WL 2285972, at *5 (S.D. W. Va. May 23, 2013); *Hess v. Sprint Commc'ns Co. L.P.*, No. 3:11-CV-00035-JPB, 2012 WL 5921149, at *3-4 (N.D. W. Va. Nov. 26, 2012); *Anselmo v. W. Paces Hotel Group., LLC*, No. 9:09-CV-02466-DCN, 2012 WL 5868887, *4 (D.S.C. Nov. 19, 2012); *Helmick v. Columbia Gas Transmission*, No. 2:07-CV-00743, 2010 WL 2671506, *5 (S.D. W. Va. July 1, 2010); *Muhammad*, 2008 WL 5377783, at *8.

The factors regularly considered are: (1) the results obtained for the class; (2) the quality, skill, and efficiency of the attorneys involved; (3) the complexity and duration of the case; (4) the risk of nonpayment; (5) awards in similar cases; (6) objections by members of the class to the settlement terms and/or fees requested by counsel; and (7) public policy. *See, e.g., Mills*, 265 F.R.D. at 261; *Helmick*, 2010 WL 2671506, at *5; *see also In re Black Farmers Discrimination*, No. 08-0511, 2013 WL 3480346, at *5 (D.D.C. July 11, 2013) ("*Black Farmers*").

In addition to the seven-factor test, courts often conduct a "lodestar crosscheck" to ensure that the percentage applied does not create an unjustifiable windfall for counsel. *See, e.g., Mills*, 265 F.R.D. at 261; *Helmick*, 2010 WL 2671506, at *7; *Hess*, 2012 WL 5921149, at *4; *see also Black Farmers,* 2013 WL 3480346, at *17-18.

The seven-factor test and a lodestar crosscheck both confirm that the 33% award requested herein is reasonable and should be granted.

1.      **Results Obtained for the Class**

The settlement in this case achieves excellent results for the class, as discussed at greater length in the Adequacy and Reasonableness sections above. *See supra* at 15-22. The $5 million common fund represents a higher percentage recovery of the tuition paid by Class Members than the amount recovered by the class in *Cullen*, the most analogous case identified by Plaintiffs. *See supra* at 19. The *Cullen* court approved a one-third fee award, plus costs. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 146-47 (E.D. Pa. 2000). The settlement here includes significant nonmonetary relief, as well. *See supra* at 8-9. The monetary and non-monetary relief provide substantial and immediate benefits to the class. To put it succinctly, as another District Court in this Circuit recently did, "[t]his is a good result in a difficult case." *Temp. Servs*, 2012 WL 4061537, at *9.

Although the number of objections is a separate factor to consider in determining the reasonableness of a fee award, a paucity of objections to a settlement further indicates that the Class Members are pleased with the settlement and that the results obtained for the class are substantial. *See Helmick*, 2010 WL 2671506, at *6; *Muhammad v. Nat'l City Mortgage, Inc.*, No. 2:07-0423, 2008 WL 5377783, at *8 (S.D. W. Va. Dec. 19, 2008). In this case, not a single objection has been filed. This makes clear that the class is pleased with the settlement.

Given the valuable results obtained for the class and the lack of any objection, this factor strongly favors granting the fees and costs requested.

2.      **Quality, Skill, and Efficiency of Attorneys**

In assessing the quality, skill and efficiency of counsel, courts look to counsel's experience, the results achieved for the class, the length of time it took to achieve those results, the amount work done by counsel, and the quality of opposing counsel. *See Temp. Servs., Inc.,*

40

2012 WL 4061537, at *9; *Mills*, 265 F.R.D. at 262-63; *Helmick*, 2010 WL 2671506, at *6. An analysis of these factors shows the quality, skill and efficiency of counsel in this case.

Counsel's considerable experience in civil rights and class action litigation is shown in the attached declaration. *See* Relman Decl. ¶¶ 3-8.; *see also Mills*, 265 F.R.D at 262 (noting counsel's experience in the subject matter of the case). Counsel submits that their skill in these areas is reflected in the record. It is likewise reflected in the excellent results obtained for the class, which are discussed above. Counsel's efficiency is demonstrated by the short amount of time in which the settlement was reached – only 15 months after the case was filed and 5 months after the case was transferred to this Court. In that relatively brief period, counsel performed an extraordinary amount of work on behalf of the class. As described above, and among other things, counsel interviewed over 200 witnesses; obtained declarations from 87 people; opposed dispositive motions seeking dismissal of all causes of action; conducted class certification discovery; attempted to negotiate a settlement in 2011; and successfully resolved both this dispute and the insurance coverage case through mediation in 2012. *See supra* at 2-6; *Mills*, 265 F.R.D. at 262-63 (finding counsel's efficiency demonstrated by significant work conducted and achievement of settlement within one year of the court's denial of the defendant's motion to dismiss). Class Counsel performed this work and achieved these results while being challenged at every turn by skilled defense counsel; as in *Temporary Services*, RSHT was "vigorously represented by a team of experienced, capable, and relentless counsel from [a] highly reputable law firm[]." 2012 WL 4061537, at *9.

All of the considerations relevant to this factor favor approval of the requested award.

### 3. <u>Complexity and Duration of the Case</u>

As far as counsel can determine, this is the first case in the country alleging that a college

has engaged in reverse redlining.  It therefore appears to be the first to seek to apply the reverse redlining model of discrimination, developed principally in the area of mortgage lending, to higher education.  Indeed, Defendant described the federal discrimination claims as "novel" in seeking to have them dismissed.  *See* Def.'s Mem. in Supp. of Mot. to Dismiss (June 15, 2012) (Docket No. 38) at 2, 16.  Plaintiffs are confident that these claims were properly asserted, but the briefing shows that the issues were not simple.

Likewise, few cases have challenged the adequacy of education provided by a for-profit college.  This gave rise to complex questions regarding the viability of Plaintiffs' state law claims, as shown in the briefing on Defendant's motion for judgment on the pleadings.

Beyond the Rule 12 legal issues, to achieve the settlement counsel had to develop an evidentiary record demonstrating to Defendant and its insurer a strong likelihood of success on complex factual issues regarding the merits of Plaintiffs' federal and state law claims.  Those difficult issues are discussed above with respect to the first adequacy factor.  *See supra* at 15-17. Counsel faced the challenge of building a strong record on these issues without merits discovery to bring about an early resolution of the case, and were successful in doing so.

The negotiations leading to settlement were likewise complex, with both this case and the insurance coverage case needing to be resolved simultaneously.

That a resolution was reached in under two years does not recommend against the fee award because counsel devoted over 5,200 hours to prosecuting the case in that period.  *See* Schlactus Decl. ¶ 19.  As in *Temporary Services*, "Class Counsel have expended considerable time and effort seeking to vindicate the contractual [and other] rights of the Plaintiffs and class members," which "supports a fee award of one-third of the common fund" under the "complexity and duration" factor.  2012 WL 4061537, at *9.

42

### 4.    Risk of Nonpayment

The risk of nonpayment in this case was substantial for two reasons – counsel provided representation on a contingency fee basis despite significant uncertainty about the outcome; and the insurance coverage litigation could have rendered any successful verdict largely irrelevant.

"Courts across the country recognize that the risk of receiving no recovery is a major factor in awarding attorneys' fees, and it is the primary aspect of a contingency fee case that supports a percentage fee recovery." *Temp. Servs.*, 2012 WL 4061537, at *9; *see Mills*, 265 F.R.D. at 263 ("The risk of nonpayment incurred by Lead Counsel is evident in the fact that they undertook this action on an entirely contingent fee basis.").  As in *Muhammad*, "[t]he outcome of the case was hardly a foregone conclusion, but nonetheless counsel accepted representation of the plaintiff[s] and the class on a contingent fee basis, fronting the costs of litigation." *Muhammad*, 2008 WL 5377783, at *8; *see also Temp. Servs.*, 2012 WL 4061537, at *9 ("Class Counsel undertook this action on a contingent fee basis, funding the costs and devoting significant time to prosecute this action without any assurance of being compensated for their efforts.").  This alone created a serious risk of nonpayment.

Moreover, there was a substantial risk of nonpayment even if Plaintiffs obtained a large verdict.  Defendant did not have sufficient assets to fund any meaningful amount of a favorable verdict in this case.  The only asset that allowed Defendant to fund the settlement was its insurance coverage, but all of the coverage could well have been eliminated in the declaratory judgment action before Judge Hudson.  *See supra* at 4-5.

### 5.    Awards in Similar Cases

"A total fee of one-third of the class settlement for all work performed and to be performed in this case is well within the range of what is customarily awarded in settlement class

43

actions." *Temp. Servs.*, 2012 WL 4061537, at *8 (involving a similarly-sized common fund of $4 million).  Courts in this Circuit regularly approve fee awards in this amount.  *See Deem v. Ames True Temper, Inc.*, No. 6:10-CV-01339, 2013 WL 2285972, at *6 (S.D. W. Va. May 23, 2013) ("[O]ne-third fee requested by counsel is very much in line with fee awards in similar common-fund cases"); *Anselmo*, 2012 WL 5868887, at *3 (D.S.C. Nov. 19, 2012) (approving award of 33% and noting that awards up to 50% have been held to be reasonable); *Muhammad*, 2008 WL 5377783, at *8-9 (S.D. W. Va. Dec. 19, 2008) (approving one-third fee award).  A one-third fee award (plus costs) was likewise approved as part of the settlement of the *Cullen* case against a for-profit college.

These cases makes clear that a 33% award, which covers both fees and costs, is typical and reasonable.

### 6.    Objections

No one has objected to the settlement.  "Judging by the fact that no class members objected to the proposed settlement, the class members support the settlement."  *Muhammad*, 2008 WL 5377783, at *8.  This strongly favors approval of the request for fees.  *See id.*; *Mills*, 265 F.R.D. at 261-62 (dearth of legitimate objections enforces reasonableness of fee request).  The lack of objection is especially notable because of the unusually high success of the individualized notice program.  *See* Claims Admin Decl. ¶ 10.

### 7.    Public Policy

In determining whether public policy favors awarding the requested fees in a common fund case, courts balance the public perception that class action plaintiffs' attorneys' fees are too high with the public policy that attorneys should continue to take on "class actions that vindicate rights that might otherwise go unprotected."  *Helmick*, 2010 WL 2671506, at *6-7; *Mills*, 265

44

F.R.D. at 263.  When balancing these two competing concerns, courts must ensure that the fee is high enough "to incentivize competent attorneys to pursue these cases when necessary" but not so high as to create a perception among nonlawyers of overcompensation.  *Id.*

Public policy favors awarding the requested fees here.  First, there is no suggestion of a windfall.  As the lodestar crosscheck discussed in the following section shows, the award requested is significantly less than counsel's actual lodestar.  Courts frequently award fees to class action counsel that are much greater than their lodestar figure.  *See Mills*, 265 F.R.D. at 265 ("courts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee") (internal quotation marks and citation omitted).  Just last week in the *Black Farmers* litigation, the District Court awarded a fee of over $90 million from a common fund based on the percentage method where the lodestar was $50 million.  *Black Farmers*, 2013 WL 3480346, at *12-13.  The Court observed that "[s]uch a multiplier – less than two times the lodestar – is unremarkable in common fund cases."  *Id.* at 12.  Counsel here will not be made whole by the award requested, much less receive even the kind of added benefit that courts regularly find consistent with sound public policy.

Second, this is precisely the type of case that attorneys should be encouraged to take to "vindicate rights that might otherwise go unprotected."  Class Members – allegedly targeted in part because of their low incomes – could not have pursued the case without attorneys willing to accept it on a contingency basis and risk nonpayment.  Indeed, one Plaintiff testified that students wanted to initiate legal action but could not until lead counsel was willing to do so.  *See* Battle Dep. at 128:22-129:5; 129:14-18; 130:11-20; 131:12-132:2.  Moreover, awarding fees sufficient to encourage the vindication of civil rights, as in this case, is especially important.  *See*

45

*City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (emphasizing the importance of fee awards in civil rights cases); *Newman v. Piggie Park Enter., Inc.*, 390 U.S. 400, 401-02 (1968) (same).

The fee award requested is consistent with and will advance public policy goals.

### 8.      Lodestar Crosscheck

A lodestar crosscheck further demonstrates that an award of $1,650,000 is reasonable and should be approved.  Counsels' hours and rates are summarized by timekeeper in a declaration attached hereto.  *See* Schlactus Decl. ¶ 19; *see also* Ex. 5 (Decl. of T. Schulte).[13]

Counsel have devoted 5,285.60 hours to this litigation.  Schlactus Decl. ¶ 19.  The value of this time, using each timekeeper's customary rate, is $1,878,551.50.  *Id.* ¶ 19.  The requested fee award is approximately 87% of this amount.

These figures include all time spent by attorneys, paralegals, and summer associates through June 30, 2013, for which counsel would seek compensation were they to file a fee petition based on their lodestar.  These figures do <u>not</u> include an additional 331.80 hours, valued at $108,079.50, that counsel devoted to the case but as to which billing judgment has been exercised in the course of preparing this motion.  *Id.* ¶ 14.

Counsel have also expended $32,325.73 in out-of-pocket costs.  Counsel have not been reimbursed for these expenses but do not seek a separate award of costs.  *Id.* ¶¶ 16, 19.

The $1,650,000 award requested is, accordingly, $260,877.23 less than counsel's billing judgment adjusted lodestar and costs.  It is only 86% of what counsel have devoted to the case.

---

[13] When conducting a lodestar crosscheck, "the Court needs not apply the 'exhaustive scrutiny' typically mandated, and the Court may accept the hours estimates provided by Lead Counsel." *Mills*, 265 F.R.D. at 264; *see also Black Farmers*, 2013 WL 3480346, at *18 n.8.  Should the Court desire a more detailed accounting, however, counsel are prepared to provide their contemporaneous time records for the Court's review.

The lodestar crosscheck confirms that a 33% fee award is well within the bounds of reasonableness.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully submit that the Court should enter an order granting final approval of the proposed Settlement Agreement, granting final certification of the settlement class, approving an award of fees and costs to Plaintiffs' Counsel in the amount of 33% of the settlement, and ordering the related relief set forth in the proposed order submitted herewith.

July 16, 2013                                      Respectfully submitted,

                                                   /s/ John Relman
                                                   John Relman, *pro hac vice*
                                                   Michael G. Allen (VA Bar No. 25141)
                                                   Glenn Schlactus, *pro hac vice*
                                                   Jia Cobb, *pro hac vice*
                                                   Tara Ramchandani, *pro hac vice*
                                                   RELMAN, DANE & COLFAX PLLC
                                                   1225 19th Street, NW
                                                   Suite 600
                                                   Washington, DC 20036
                                                   (202) 728-1888
                                                   (202) 728-0848 (fax)

                                                   Tim Schulte (VA Bar No. 41881)
                                                   SHELLEY & SCHULTE, P.C.
                                                   2020 Monument Avenue
                                                   Richmond, VA 23220-2733
                                                   (804) 644-9700
                                                   (804) 278-9634 (fax)

                                                   *Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of July, 2013, I will cause the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

> Alexander Spotswood de Witt
> Brenner Evans & Millman PC
> 411 E Franklin St
> PO Box 470
> Richmond, VA 23218-0470
> adewitt@beylaw.com

> Theodore Ira Brenner
> Brenner Evans & Millman PC
> 411 E Franklin St
> PO Box 470
> Richmond, VA 23218-0470
> tbrenner@beylaw.com

And I hereby certify that I will mail the document by United States First Class Mail, postage prepaid, to the following non-filing user:

> Michael Jack Budow
> Budow & Noble, P.C.
> 7315 Wisconsin Avenue
> Suite 500 West, Air Rights Building
> Bethesda, MD 20814

> /s/ Michael G. Allen
> Michael G. Allen